# "EXHIBIT A"

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

<table>
<tr><td>MICHAEL COONEY<br><br><i>Plaintiff(s)</i></td><td>)<br>)<br>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td>v.<br><br>BUCK MOTORSPORTS PARK LLC<br>CH&N CONSTRUCTION INC.<br>CH&N SITE CONSTRUCTION INC.<br>CH&N SUPPLY CO.<br>BUCK MOTORSPORTS INC.<br><br><i>Defendant(s)</i></td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Civil Action No.    23-2346</td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

**CH&N CONSTRUCTION INC.**
322 N. Arch Street
Lancaster, PA 17603

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
ROBERT J. MONGELUZZI
SALTZ MONGELUZZI & BENDESKY P.C.
ONE LIBERTY PLACE
1650 MARKET STREET
52ND FLOOR

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____6/22/2023_____

*Dennis Taylor*
_____
*Signature of Clerk or Deputy Clerk*

**George Wylesol, Clerk of Court**
**U.S. District Court, Eastern District of PA**

JS 44 (Rev. 04/21)                        **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MICHAEL COONEY | BUCK MOTORSPORTS PARK LLC, BUCK MOTORSPORTS INC., CH&N CONSTRUCTION INC., |

(b) County of Residence of First Listed Plaintiff  **York, ME**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **LANCASTER**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
ROBERT J. MONGELUZZI, ESQUIRE
1650 Market St., 52nd Floor, Phila., PA 19103

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [X] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

Click here for: Nature of Suit Code Descriptions.

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [X] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332 - Diversity
Brief description of cause:
Struck by a mega truck

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [X] Yes  [ ] No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions)*:  N/A
JUDGE _____  DOCKET NUMBER _____

DATE  9/29/23
SIGNATURE OF ATTORNEY OF RECORD  *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 04/21)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint. Class Action.** Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**MICHAEL COONEY**
25B Weeks Road
Parsons Field, ME 04047

                       *Plaintiff,*

          v.

**BUCK MOTORSPORTS PARK LLC**
1195 River Road
Holtwood, PA 17532

   *And*

**BUCK MOTORSPORTS INC.**
250 Bollinger Road
Littlestown, PA 17340

   *And*

**CH&N CONSTRUCTION INC.**
322 N. Arch Street
Lancaster, PA 17603

   *And*

**CH&N SITE CONSTRUCTION INC.**
322 N. Arch Street
Lancaster, PA 17603

   *And*

**CH&N SUPPLY CO.**
322 N. Arch Street
Lancaster, PA 17603

                       *Defendants.*

**CIVIL ACTION**

**NO.**

**JURY TRIAL DEMANDED**

## COMPLAINT – CIVIL ACTION

1. Plaintiff, Michael Cooney, is an adult individual and citizen of the State of Maine, residing at 25B Weeks Road, Parsons Field, ME 04047.

2. Defendant, Buck Motorsports Park LLC is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 1195 River Road, Holtwood, PA 17532.

3. At all times relevant hereto, Defendant Buck Motorsports Park LLC was acting by and through its agents, servants, and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant Buck Motorsports Park LLC.

4. At all times relevant hereto, Defendant Buck Motorsports Park LLC purposely established significant contacts in Pennsylvania, has carried out and continues to carry out substantial, continuous and systematic business activities in Pennsylvania.

5. Defendant, Buck Motorsports Inc. is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 250 Bollinger Road, Littlestown, PA 17340.

6. At all times relevant hereto, Defendant Buck Motorsports Inc. was acting by and through its agents, servants, and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant Buck Motorsports Inc.

7. At all times relevant hereto, Defendant Buck Motorsports Inc. purposely established significant contacts in Pennsylvania, has carried out and continues to carry out substantial, continuous and systematic business activities in Pennsylvania.

8. Defendants, Buck Motorsports Park LLC and Buck Motorsports Inc. are hereinafter collectively referred to as the "Buck Motorsports Defendants."

9. At all relevant times, the Buck Motorsports Defendants owned, operated, managed, maintained, designed, planned, and otherwise controlled the motorsports facility located at 900 Lancaster Pike, Quarryville, PA 17566 (hereinafter referred to as "the Motor Park").

10. Defendant, CH&N Construction Inc. is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 322 N. Arch Street, Lancaster, PA 17603.

11. At all times relevant hereto, Defendant CH&N Construction Inc. was acting by and through its agents, servants, and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant CH&N Construction Inc.

12. At all times relevant hereto, Defendant CH&N Construction Inc. purposely established significant contacts in Pennsylvania, has carried out and continues to carry out substantial, continuous and systematic business activities in Pennsylvania.

13. Defendant, CH&N Site Construction Inc. is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 322 N. Arch Street, Lancaster, PA 17603.

14. At all times relevant hereto, Defendant CH&N Site Construction Inc. was acting by and through its agents, servants, and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant CH&N Site Construction Inc.

15. At all times relevant hereto, Defendant CH&N Site Construction Inc. purposely established significant contacts in Pennsylvania, has carried out and continues to carry out substantial, continuous and systematic business activities in Pennsylvania.

16. Defendant, CH&N Supply Co. is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 322 N. Arch Street, Lancaster, PA 17603.

17. At all times relevant hereto, Defendant CH&N Supply Co. was acting by and through its agents, servants, and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant CH&N Supply Co.

18. At all times relevant hereto, Defendant CH&N Supply Co. purposely established significant contacts in Pennsylvania, has carried out and continues to carry out substantial, continuous and systematic business activities in Pennsylvania.

19. Defendants CH&N Construction Inc., CH&N Site Construction Inc., and CH&N Supply Co. are hereinafter collectively referred to as the "CH&N Defendants."

20. At all relevant times, the CH&N Defendants planned, designed, constructed, and were otherwise responsible for creating the layout and safety features at the Motor Park, including the barriers, as described herein.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this action is between citizens of different states.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the events and/or actions and omissions giving rise to the claims occurred in this judicial district and because all Defendants regularly conduct business in this judicial district.

## OPERATIVE FACTS

23.     On April 23, 2023, Plaintiff Michael Cooney was a business invitee at the Motor Park, where he was observing a mega truck race event.

24.     The mega truck race event was held on a dirt track, which was owned and operated by the Buck Motorsports Defendants.

25.     The track was designed and constructed by the CH&N Defendants.

26.     At the time of the accident, Plaintiff was observing a Bad Frog mega truck complete its run down the track.

27.     The mega truck would drive from one end of the track to the other, after completing a jump over a dirt hill in the middle of the track.

28.     The mega truck was owned and operated by, upon information and belief, Bad Frog Enterprise LLC.

29.     At all relevant times, upon information and belief, Plaintiff was working as an employee and/or agent of Bad Frog Enterprise LLC.

30.     As Plaintiff was observing the mega truck drive down the Motor Park's track, he was standing behind a set of Jersey barriers, pictured below in their condition at the time of the accident:



31.     However, Defendants negligently and recklessly allowed an approximately 20-foot gap to exist between the barriers, as pictured above.

32.     At the time of the accident, at the end of its run down the track, the mega truck suddenly and without warning lost control drove directly through the 20-foot gap and crushed Plaintiff.

33.     Upon information and belief, the mega truck applied its brakes at the end of the run, but as a result of the negligent and reckless design and construction of the track by Defendants, the truck skidded and lost control.

34.     The initial portion of the accident sequence is depicted below as taken from a video of the accident:



35.     The mega truck slid through the open gap in the jersey barriers and crushed Plaintiff.

36.     As a result of the accident, Plaintiff suffered catastrophic personal injuries, as described in full below.

37.     He was taken emergently to Lancaster General Hospital, and then transferred to Penn State Hershey Medical Center for a higher level of care.

38.     At the time of the accident, Michael Cooney was only 41-years-old.

39.     At all relevant times, the Buck Motorsports Defendants controlled and/or were responsible for the operation of the Motor Park and were responsible for the safety of business invitees at the Motor Park, such as Plaintiff.

40.     At all relevant times, the Buck Motorsports Defendants maintained control over the safety of Motor Park.

41.     At all relevant times, the Buck Motorsports Defendants and the CH&N Defendants designed and constructed the Motor Park, including the Park's dirt track and the jersey barriers.

42.     At all relevant times, the Buck Motorsports Defendants and the CH&N Defendants were responsible for ensuring the safe design and construction of the Motor Park.

43.     At all relevant times, the Buck Motorsports Defendants and the CH&N Defendants were responsible for designing and constructing the Motor Park in such a way as to protect business invitees watching events at the Motor Park, such as Plaintiff.

44.     At all relevant times, the Buck Motorsports Defendants and the CH&N Defendants were responsible for designing and constructing the track surface and Jersey barriers in such a way as to protect business invitees watching events at the Motor Park, such as Plaintiff.

45.     Prior to the date of the accident, Defendants knew or should have known that business invitees at the Motor Park such as Plaintiff would regularly stand behind the Jersey barriers to watch events at the Motor Park.

46.     Prior to the date of the accident, Defendants knew or should have known that, because business invitees at the Motor Park such as Plaintiff would regularly stand behind the Jersey barriers to watch events at the Motor Park, the Motor Park needed to be designed, constructed, and operated in such a way as to protect business invitees standing behind the Jersey barriers, including Plaintiff.

47.     Prior to the date of the accident, Defendants knew or should have known that allowing a gap to exist between the Jersey barriers would allow mega trucks to drive directly at spectators, such as Plaintiff, and posed a foreseeable risk of catastrophic injury and/or death to such spectators.

48.     Prior to the date of the accident, Defendants knew or should have known that the track surface was not adequately and appropriately designed to allow mega trucks to safely stop, and that the track surface posed a foreseeable risk of catastrophic injury and/or death to spectators and business invitees such as Plaintiff.

49.     Despite this knowledge, Defendants failed to safely design, construct, operate, and manage the operation of the Motor Park.

50.     Despite this knowledge, Defendants failed to protect business invitee spectators at the Motor Park.

51.     Despite this knowledge, Defendants designed, constructed, and operated the Motor Park in a negligent and reckless fashion, including by inadequately installing and designing the track surface, and by allowing an approximately 20-foot gap to exist between the Jersey barriers, allowing mega trucks to drive directly at spectators like Plaintiff.

52.     Defendants had a duty to provide business invitees such as Plaintiff a safe place in which to observe events at the Motor Park. .

53.     Defendants breached these duties to Plaintiff.

54.     As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness and other liability-producing conduct of the Defendants, Plaintiff was forced to suffer catastrophic injuries, including but not limited to multiple blunt impact injuries, traumatic brain injury, subdural hematoma, a fractured hip, emergent transport to Penn State Hershey Medical Center for a higher level of care, VATS procedure, debridement surgeries, two medically induced comas, and other orthopedic, neurological, and psychological injuries, the full extent of which have yet to be determined.  He has in the past and may in the future require medicines, medical care and treatment, including skin grafting; he has in the past and may in the future continue to be

compelled to expend monies and incur further obligations for such medical care and treatment; he has in the past and may in the future continue to suffer agonizing aches, pains and mental anguish; he has in the past and may in the future continue to be disabled from performing his usual duties, occupations and avocations, all to his great loss and detriment.

a. As a direct and proximate result of the conduct of Defendants, has in the past required, continues to require, and may in the future require, medical treatment and care, and has in the past, continues presently, and may in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempt to alleviate and/or cure his condition.

b. As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness and other liability-producing conduct of Defendants, Plaintiff has in the past and continues to suffer pain, disfigurement, scarring, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, and other intangible losses.

c. As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness and other liability-producing conduct of Defendants, Plaintiff has been prevented and will be prevented in the future from performing his usual duties, activities, occupations and avocations and has suffered a loss of earnings and a loss of earning capacity.

55. Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff.

56.     Plaintiff avers that the injuries and damages alleged herein were caused solely by the acts of Defendants jointly and/or individually and/or through their joint and individual agents, servants, workmen and/or employees as hereinbefore and hereinafter set forth.

## COUNT I – NEGLIGENCE
## PLAINTIFF v. BUCK MOTORSPORTS DEFENDANTS

57.     Plaintiff hereby incorporates all preceding paragraphs by reference.

58.     The Buck Motorsports Defendants' negligent, careless, grossly negligent, and reckless conduct includes, but is not limited to:

a.  Failing to protect business invitees such as Plaintiff;

b.  Failing to prevent mega trucks from injuring business invitees such as Plaintiff;

c.  Allowing the Motor Park track and facility to exist in a condition that posed a risk of catastrophic injury to business invitees such as Plaintiff;

d.  Operating the Motor Park track and facility in such a way that business invitees such as Plaintiff were exposed to a risk of catastrophic injury;

e.  Allowing Plaintiff to be struck by a mega truck;

f.  Failing to safely and appropriately design and construct the Motor Park;

g.  Allowing an approximately 20-foot gap to exist in the Jersey barriers at the Motor Park;

h.  Installing and/or designing an inadequate and dangerous track surface;

i.  Negligently and recklessly designing, planning, constructing, and operating the safety features at the Motor Park, including but not limited to the Jersey barriers;

j.  Allowing business invitees to stand behind the Jersey barriers at the Motor Park;

k.  Failing to provide an alternate route for mega trucks to exit the course and/or finish their run on the track;

l.  Negligently and recklessly instructing the CH&N Defendants on how to construct and design the Motor Park's track;

m.  Failing to inspect and/or failing to adequately inspect the Motor Park and its safety features;

n.  Failing to test and/or failing to adequately test the Motor Park and its safety features;

o.  Failing to ensure that adequate safety features were in place to protect business invitees such as Plaintiff;

p.  Failing to properly train, supervise, manage, and oversee their employees;

q.  Failing to hire competent employees, safety inspectors, contractors, subcontractors, advisors, managers, equipment providers, material suppliers, and others to ensure that the Motor Park was free of hazards and was safe for business invitees such as Plaintiff;

r.  Failing to warn Plaintiff, a business invitee, of the peculiar, dangerous, and/or unsafe conditions existing upon the Motor Park premises

s.  exposing Plaintiff, a business invitee, to unreasonable danger by failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, training, supervision, measures and plans; and

t.  failing to properly supervise the planning, coordination, scheduling, sequencing and performance of the construction and design work of the Motor Park, including the work of all contractors, subcontractors, material suppliers and others.

59.     By reason of the carelessness, negligence, gross negligence, recklessness and other liability-producing conduct of the Buck Motorsports Defendants, as aforesaid, Plaintiff sustained catastrophic personal injuries and such further damages as alleged herein.

60.     By conducting themselves as set forth above, the Buck Motorsports Defendants' acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiff's catastrophic injuries.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, Buck Motorsports Park LLC, Buck Motorsports Inc., and demands of Defendants, jointly and/or severally, sums in excess of in an amount in excess of $75,000, together with costs, interest, punitive damages, and such other and further relief as this Honorable Court deems necessary and/or appropriate.

## COUNT II – NEGLIGENCE
## PLAINTIFF v. CH&N DEFENDANTS

61.     Plaintiff hereby incorporates all preceding paragraphs by reference.

62.     The CH&N Defendants' negligent, careless, grossly negligent, and reckless conduct includes, but is not limited to:

    a.  Failing to protect business invitees such as Plaintiff;

    b.  Failing to prevent mega trucks from injuring business invitees such as Plaintiff;

    c.  Allowing the Motor Park track and facility to exist in a condition that posed a risk of catastrophic injury to business invitees such as Plaintiff;

    d.  Allowing Plaintiff to be struck by a mega truck;

    e.  Failing to safely and appropriately design and construct the Motor Park;

    f.  Allowing an approximately 20-foot gap to exist in the Jersey barriers at the Motor Park;

g. Negligently and recklessly designing, planning, constructing, and operating the safety features at the Motor Park, including but not limited to the Jersey barriers;

h. Allowing business invitees to stand behind the Jersey barriers at the Motor Park;

i. Failing to provide an alternate route for mega trucks to exit the course and/or finish their run on the track;

j. Installing and/or designing an inadequate and dangerous track surface;

k. Failing to inspect and/or failing to adequately inspect the Motor Park and its safety features;

l. Failing to test and/or failing to adequately test the Motor Park and its safety features;

m. Failing to ensure that adequate safety features were in place to protect business invitees such as Plaintiff;

n. Failing to properly train, supervise, manage, and oversee their employees;

o. Failing to hire competent employees, safety inspectors, contractors, subcontractors, advisors, managers, equipment providers, material suppliers, and others to ensure that the Motor Park was free of hazards and was safe for business invitees such as Plaintiff; and

p. Failing to properly supervise the planning, coordination, scheduling, sequencing and performance of the construction and design work of the Motor Park, including the work of all contractors, subcontractors, material suppliers and others.

63.     By reason of the carelessness, negligence, gross negligence, recklessness and other liability-producing conduct of the CH&N Defendants, as aforesaid, Plaintiff sustained catastrophic personal injuries and such further damages as alleged herein.

64.     By conducting themselves as set forth above, the CH&N Defendants' acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiff's catastrophic injuries.


WHEREFORE, Plaintiff demands judgment in his favor and against Defendants, CH&N Construction Inc., CH&N Site Construction Inc., and CH&N Supply Co., and demands of Defendants, jointly and/or severally, sums in excess of in an amount in excess of $75,000, together with costs, interest, punitive damages, and such other and further relief as this Honorable Court deems necessary and/or appropriate.


                                    SALTZ MONGELUZZI BENDESKY, P.C.

                                    BY: /s/ Robert J. Mongeluzzi (9362)
                                         ROBERT J. MONGELUZZI, ESQUIRE
                                         JEFFREY P. GOODMAN, ESQUIRE
                                         AIDAN B. CARICKHOFF, ESQUIRE
                                         I.D. Nos. 36283/309433/330394
                                         One Liberty Place, 52nd Floor
                                         1650 Market Street
                                         Philadelphia, PA  19103
                                         (215) 496-8282
                                         Fax (215) 496-0999
                                         *Attorneys for Plaintiff*

Date: June 20, 2023

05/2023

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _25B Weeks Road, Parsons Field, ME 04047_

Address of Defendant: _1195 River Road, Holtwood, PA 17532; 250 Bollinger Road, Littlestown, PA 17532 and 322 N. Arch St., Lancaster, PA 17603_

Place of Accident, Incident or Transaction: _900 Lancaster Pike, Quarryville, PA 17566_

---

**RELATED CASE IF ANY:**                                    Date Terminated _____

Case Number: _____ Judge: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any now pending or within one year previously terminated action in this court except as note above.

DATE: _6/20/23_    _Attorney-at-Law (Must sign above)_    _36283_    _Attorney I.D. # (if applicable)_

---

Civil (Place a √ in one category only)

A. *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. All Other Federal Question Cases. *(Please specify):*_____

B. *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☒ 6. Other Personal Injury *(Please specify):* **Struck by mega truck**
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, _Robert J. Mongeluzzi_, counsel of record *or* pro se plaintiff, do hereby certify:

- ☒ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: _06/20/23_    _Attorney-at-Law (Sign here if applicable)_    _36283_    _Attorney ID # (if applicable)_

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)  The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)  In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)  The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)  Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)  Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.


American LegalNet, Inc.
www.FormsWorkFlow.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Michael Cooney                          :          CIVIL ACTION
                                        :
                                        :
                    v.                  :
Buck Motorsports Park, LLC, Buck Motorsports Inc.,  :
CH&N Construction Inc., CH&N Site Construction Inc.,  :     NO.   23-cv-02346
CH&N Supply Co., et al.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)          ( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

| 06/20/23 | Robert J. Mongeluzzi | Plaintiff, Michael Cooney |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-496-8282 | 215-496-0999 | rmongeluzzi@smbb.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02


American LegalNet, Inc.
www.FormsWorkFlow.com

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.


American LegalNet, Inc.
www.FormsWorkFlow.com

# "EXHIBIT B"

**ARGO PRO**

*Member Argo Group*

# Real Estate Developers PROtect[SM]
# Professional Liability Insurance Declarations

## NOTICE: THIS IS CLAIMS MADE AND REPORTED COVERAGE.
## PLEASE READ THE POLICY CAREFULLY.

| | | | |
|---|---|---|---|
| **Insurer:** | **Peleus Insurance Company**<br>8720 Stony Point Parkway<br>Suite 400<br>Richmond, VA 23235 | **Producer:** | Agentic Insurance, LLC<br>290 King of Prussia Rd, Bldg 2, #314<br>Radnor, PA 19087<br>5000011 |

**Policy Number:** 121 RE 0201030-02

Renewal of Policy Number: 121 RE 0201030-01

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

ITEM 1.  **NAMED INSURED** (Name and Mailing Address):
Charter Homes Building Company
322 N Arch St
Lancaster, PA 17603

ITEM 2.  **POLICY PERIOD:**  (a) Inception Date: 06/21/2023  (b) Expiration Date: 06/21/2024
Both dates at 12:01 a.m. at the Named Insureds Mailing Address shown in ITEM 1 above.

ITEM 3.  **COVERED REAL ESTATE DEVELOPMENT SERVICE:**
Real Estate Developers Professional Liability

ITEM 4.  **LIMIT OF LIABILITY AND DEDUCTIBLES:** INSURING AGREEMENTS

| Limit of Liability: Each **Claim** | Limit of Liability: Aggregate for all **Claims** | Deductible: Each **Claim** | Deductible: Aggregate |
|---|---|---|---|
| $3,000,000 | $3,000,000 | $75,000 | N/A |

**ITEM 5.    LIMITS OF LIABILITY AND DEDUCTIBLES:** SUPPLEMENTAL PAYMENTS

| Expense Event | Limit of Liability: Each **Expense Event** | Limit of Liability: Aggregate | Deductible: Each **Expense Event** |
|---|---|---|---|
| Supplementary **Cleanup Costs** Coverage | $25,000 | $25,000 | $0 |
| ADA, FHA and OSHA Legal Expense Reimbursement | $25,000 | $25,000 | $0 |
| Appearance at Proceedings | $10,000 | $50,000 | $0 |
| Subpoena Assistance | $15,000 | $25,000 | $0 |
| **Disciplinary Proceedings** | $25,000 | $100,000 | $0 |
| **Crisis Management Expenses** | $100,000 | $100,000 | $0 |

**ITEM 6.    PREMIUM**: ███████  + Surplus Lines Tax ███████ + Stamping Fee ██████

**ITEM 7.    EXTENDED REPORTING PERIOD OPTION(S):**

| 12 months at ███% of Full Annual Premium | 24 months at ███% of Full Annual Premium |
|---|---|
| 36 months at ███% of Full Annual Premium | |

**ITEM 8.    RETROACTIVE DATE:** 06/21/2017

**ITEM 9.    NOTICE TO THE INSURER:**

| CLAIMS OR POTENTIAL CLAIMS SEND TO: | ALL OTHER NOTICES SEND TO: |
|---|---|
| Argo Pro Claims<br>PO BOX 469012<br>San Antonio, TX 78246<br>Phone: (833) 240-4128<br><br>New Claims (FNOL):<br>ArgoProNewClaims@argogroupus.com<br>Existing Claims:<br>ArgoProClaimsMail@argogroupus.com | Argo Pro Underwriting<br>PO BOX 469012<br>San Antonio, TX 78246<br>Phone: (210) 321-8400 |

**ITEM 10.    POLICY FORM AND ENDORSEMENTS ATTACHED AT ISSUANCE:**

Please see DECSCH-0117 - Schedule of forms and endorsements for a complete list of forms.

**THESE DECLARATIONS, TOGETHER WITH THE PROFESSIONAL LIABILITY POLICY COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

PENNSYLVANIA
THE INSURER WHICH HAS ISSUED THIS INSURANCE IS NOT LICENSED BY THE PENNSYLVANIA INSURANCE DEPARTMENT AND IS SUBJECT TO LIMITED REGULATION. THIS INSURANCE IS NOT COVERED BY THE PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION.

Case 2:25-cv-01976-JS    Document 14-3    Filed 07/07/25    Page 27 of 231

# SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| REPRO1000-0322 | REAL ESTATE DEVELOPERS PROTECT PROFESSIONAL LIABILITY INSURANCE DECLARATIONS |
| REPRO1001-0322 | REAL ESTATE DEVELOPERS PROTECT PROFESSIONAL LIABILITY INSURANCE |
| ILP0246PA-0920 | PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL |
| U094-0415 | SERVICE OF SUIT |
| PR2057-1219 | BLANKET ADDITIONAL INSURED(S) ENDORSEMENT |
| REPRO5031-0322 | RETROACTIVE DATE APPLICABLE TO SPECIFIC PROFESSIONAL SERVICES ENDORSEMENT |
| PR2002-0117 | AMEND DEFINITION OF INSURED ENDORSEMENT |
| U1083-0921 | TERRORISM EXCLUSION |
| REPRO-4007-1119 | SPECIAL PURPOSE ENTITY ENDORSEMENT |
| REPRO-4009-0420 | AMEND DEFINITION OF REAL ESTATE DEVELOMENT SERVICES (REMOVE ACQUIRED BY THE INSURED) ENDORSEMENT |
| ILP001-0104 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS |
| PRIVACYNOTICE-0820 | NOTICE OF INSURANCE INFORMATION PRACTICES |
| SIGPIC-0817 | SIGNATURE PAGE |

# Real Estate Developers PROtect<sup>SM</sup>
# Professional Liability Insurance

### THIS IS CLAIMS MADE AND REPORTED COVERAGE.
### PLEASE READ THIS POLICY CAREFULLY.

NOTICE: THIS IS CLAIMS MADE AND REPORTED COVERAGE. SUBJECT TO ITS TERMS AND CONDITIONS, THIS POLICY ONLY AFFORDS COVERAGE FOR CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER IN WRITING DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE.

**DEFENSE WITHIN LIMITS: THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Words and phrases that appear in bold are defined and may be used in the singular or plural, as appropriate; please refer to Section III – Definitions.

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer, and subject to all of the terms and conditions of this policy (including all endorsements hereto), the Insurer agrees with the Insured to provide insurance as stated in this policy.**

## SECTION I – COVERAGES

A.  Insuring Agreements:

   1.  Professional Liability

   The **Insurer** agrees to pay on behalf of the **Insured**, all amounts in excess of the Deductible and up to the Limit of Liability that the **Insured** becomes legally obligated to pay as **Damages and Defense Costs** resulting from a **Claim** first made and reported in writing during the **Policy Period** or Extended Reporting Period, if applicable, arising out of a **Wrongful Act** committed before the end of the **Policy Period** and on or after the Retroactive Date, if any, shown in the Declarations.

   2.  Contractors Pollution Liability

   The **Insurer** agrees to pay on behalf of the **Insured**, all amounts in excess of the Deductible and up to the Limit of Liability that the **Insured** becomes legally obligated to pay as **Damages** and **Defense Costs** resulting from a **Claim** first made and reported in writing during the **Policy Period** or Extended Reporting Period, if applicable, arising out of a **Pollution Incident** first discovered during the **Policy Period** and on or after the Retroactive Date, if any, shown in the Declarations.

B.  Supplemental Payments

   All of these Supplemental Payments will be subject to the applicable Limit of Liability shown in Item 5 of the Declarations. The Supplemental Payments are in addition to the Aggregate Limit of Liability for all **Claims**.

   1.  **Crisis Management Expenses**

   The **Insurer** will reimburse the **Insureds** for any **Crisis Management Expenses** resulting from a **Crisis Management Event** that occurs during the **Policy Period**.

121 RE 0201030-02

2.  Appearance at Proceedings

The **Insurer** will pay for loss of earnings for the **Insured's** attendance, at the **Insurer's** written request, at a trial, hearing, arbitration or mediation proceeding involving a covered **Claim** against any **Insured**. The maximum amount the **Insurer** will pay for any one or series of trials, hearings, mediation or arbitration proceedings arising out of the same **Claim** will not exceed $500 per individual **Insured** for each day, or part thereof. The most the **Insurer** will pay under this subsection for each **Claim** is the Limit of Liability: Each **Expense Event** set forth on the Declarations. The most the **Insurer** will pay under this subsection for all **Claims** made during the **Policy Period** or Extended Reporting Period, if applicable, is the Limit of Liability: Aggregate set forth on the Declarations.

3.  **Disciplinary Proceedings**

    a.  If, during the **Policy Period**, a **Disciplinary Proceeding** is first brought against any **Insured**, the **Insurer** will reimburse the **Insured** for reasonable and necessary legal fees and expenses that the **Insured** incurs in the defense of such matter. Such legal fees and expenses do not include any fines, penalties or restitution paid by the **Insured** as part of or to resolve a **Disciplinary Proceeding**.

4.  Subpoena Assistance

    a.  If, during the **Policy Period**, an **Insured** first receives a subpoena for documents or testimony arising out of **Real Estate Development Services** performed by any **Insured**, and the **Insured** requests the **Insurer's** assistance in responding to such subpoena, the **Insurer** will reimburse the **Insured** for reasonable and necessary: legal fees and expenses incurred to provide the **Insured** advice regarding the production of documents; costs incurred by the **Insured** to produce any documents in response to the subpoena; and legal fees and expenses to prepare the **Insured** for sworn testimony including testimony at a hearing, trial or examination under oath; and to represent the **Insured** at the **Insured's** deposition;

       provided that:

       1.  the subpoena arises out of a civil lawsuit to which the **Insured** is not a party; and

       2.  the **Insured** has not been engaged to provide advice or testimony in connection with the civil lawsuit and the **Insured** has not provided such advice or testimony in the past.

    b.  Response to a subpoena as described above will not be considered a **Claim** or **Disciplinary Proceeding** under the policy and the coverage for any response to a subpoena is limited to that provided under this section.

5.  ADA, FHA and OSHA Legal Expense Reimbursement

    The **Insurer** will reimburse the **Insured** for legal fees and expenses incurred in responding to each regulatory or administrative action brought directly against the **Insured** by a government agency under the Americans with Disabilities Act of 1990 (ADA), the Fair Housing Act (FHA) or the Occupational Safety and Health Act (OSHA) provided that the regulatory or administrative action:

    a.  is first commenced during the **Policy Period**; and

    b.  arises out of the performance of **Real Estate Development Services** rendered on or after the Retroactive Date shown in the Declarations.

    The **Insurer** will not be responsible for the payment of any fines or penalties assessed.

## SECTION II – LIMITS OF LIABILITY AND DEDUCTIBLE

A.  Limits of Liability: SECTION I – COVERAGES, A. Insuring Agreements 1. Professional Liability and 2. Contractors Pollution Liability

    1.  Limit of Liability, Each **Claim** under Insuring Agreements A.1. and A.2.: The most the **Insurer** will pay for **Damages** and **Defense Costs** for Each **Claim** covered by this policy under Insuring

Agreements A.1. and A.2. is the amount shown for Limit of Liability: Each **Claim** in Item 4 of the Declarations.

2. Limit of Liability, Aggregate for all **Claims** under Insuring Agreements A.1. and A.2.: The most the **Insurer** will pay for **Damages** and **Defense Costs** for all **Claims** in the Aggregate covered by this policy under Insuring Agreements A.1. and A.2. is the amount shown for Limit of Liability: Aggregate for all **Claims** in Item 4 of the Declarations.

3. **Defense Costs** are part of and not in addition to the Limits of Liability. Payment of **Defense Costs** by the **Insurer** will reduce, and may exhaust, the Limits of Liability.

B. Limits of Liability: SECTION I – COVERAGES, B. Supplemental Payments

Supplemental Payments will be paid in addition to the Each **Claim** or Aggregate Limit of Liability, as applicable, shown in Item 4 of the Declarations.

1. Limits of Liability: **Crisis Management Expenses** – The most this **Insurer** will pay for **Crisis Management Expenses** covered under Supplemental Payments B.1. of this policy during the **Policy Period** resulting from each **Crisis Management Event** and in the Aggregate is the amount shown for **Crisis Management Expenses** in Item 5 of the Declarations.

2. Limits of Liability: Appearance at Proceedings: The most the **Insurer** will pay for each such Appearance at a Proceeding and in the Aggregate under Supplemental Payments B.2. of this policy during the **Policy Period** is the amount shown in Item 5 of the Declarations.

3. Limits of Liability: Each **Disciplinary Proceeding**: The most the **Insurer** will pay for each such **Disciplinary Proceeding** and in the Aggregate under Supplemental Payments B.3. of this policy during the **Policy Period** is the amount shown in Item 5 of the Declarations.

4. Limits of Liability: Subpoena Assistance: The most the **Insurer** will pay for costs for each response to a subpoena and in the Aggregate under Supplemental Payments B.4. of this policy is the amount shown in Item 5 of the Declarations.

5. Limits of Liability: ADA, FHA and OSHA Legal Expense Reimbursement: The most the **Insurer** will pay for costs for ADA, FHA and OSHA Legal Expense Reimbursement under Supplemental Payments B.5. of this policy during the **Policy Period** is the amount shown in Item 5 of the Declarations.

C. Deductible

1. Regarding the coverage provided by this policy under SECTION I – COVERAGES, A. Insuring Agreements 1. Professional Liability and 2. Contractors Pollution Liability, the Each **Claim** Deductible shown in Item 4 of the Declarations applies to each **Claim** and will be paid by the **Insured** as a condition precedent to payment of any **Damages** and **Defense Costs** by the **Insurer**. The **Insured** must pay the applicable Deductible for each **Claim** no later than 30 days after the **Insurer's** written request regardless of the number of **Claims** covered by this policy. Any Aggregate Deductible amount shown in Item 4 of the Declarations is the most the **Insured** will pay as a Deductible for all **Claims** covered by this policy.

2. Regarding the coverage provided by this policy under SECTION I – COVERAGES, B. Supplemental Coverages, the Each **Expense Event** Deductible shown in Item 5 of the Declarations applies respectively to each **Crisis Management Expense**, Appearance at Proceeding, **Disciplinary Proceeding**, response to a Subpoena, ADA, FHA, OSHA Legal Expense or Supplementary **Cleanup Costs** Coverage event and will be paid by the **Insured** as a condition precedent to payment of any amount by the **Insurer**. The **Insured** must pay the applicable Deductible for each **Expense Event** no later than 30 days after the **Insurer's** written request regardless of the number of **Expense Events** covered by this policy.

3. The **Insured's** Deductible obligation for each **Claim** will be reduced by 50%, subject to a maximum aggregate reduction of all Deductibles for all **Claims** of $25,000 if the **Insurer** agrees and the **Insured** consents to the final settlement of a **Claim** during a voluntary mediation. This reduction

==does not apply to any **Claim** resolved through court-mandated mediation or voluntary or involuntary arbitration.==

SECTION III – DEFINITIONS

A. **Bodily Injury** means physical injury, sickness, disease or death of any person.

B. **Claim** means any of the following arising from a **Wrongful Act**:

   1. a written demand received by any **Insured** for monetary, non-monetary or injunctive relief, including a written demand that the **Insured** toll or waive a statute of limitations;

   2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

   3. the institution of an arbitration, mediation, or other alternate dispute resolution proceeding against any **Insured**; or

   4. a **Privacy Breach Claim**

   5. a **Security Event Claim**; or

   6. a **Social Engineering Incident Claim**.

C. **Cleanup Costs** means expenses incurred in the investigation, evaluation, monitoring, testing, removal, containment, treatment, response, disposal, remediation, detoxification or neutralization of smoke, soot, fumes, acids, alkalis, toxic chemicals, asbestos, liquids or gases, waste materials or other irritants, contaminants or pollutants as a direct result of a **Pollution Incident**.

   **Cleanup Costs** do not include any expenses detailed in the preceding paragraph incurred after the cleanup is deemed to be complete upon final approval from the supervising governmental authority.

D. **Crisis Management Event** means an event that in the reasonable opinion of the **Named Insured** or a **Subsidiary** did cause or is reasonably likely to cause significant harm to the reputation of the **Named Insured** or a **Subsidiary**.

E. **Crisis Management Expenses** means reasonable and necessary expenses approved by the **Insurer** in its sole discretion, for a public relations firm to assist the **Named Insured** or any **Subsidiary** in mitigating reputational harm to the **Named Insured** or any **Subsidiary** caused by a **Crisis Management Event**. **Crisis Management Expenses** do not include the remuneration, salaries, overhead, or any fees or expenses incurred prior to the time that a **Crisis Management Event** is reported to the **Insurer**.

F. **Damages** means a monetary judgment or settlement that an **Insured** becomes legally obligated to pay as a result of a covered **Claim**, including punitive or exemplary damages where insurable under applicable law.

   1. **Damages** include:
      a. pre and post judgement interest on the entire amount of any judgment which accrues after the entry of the judgment and before the **Insurer** has paid or tendered or deposited in the Court that part of the judgment that does not exceed the policy limit; and
      b. as regards coverage provided under SECTION I – COVERAGES, A. Insuring Agreement 2. Contractors Pollution Liability, **Damages** includes **Cleanup Costs** for which the **Insured** becomes legally obligated to pay as the result of a **Claim** to which this insurance applies.

   2. **Damages** do not include:
      a. any fines, penalties, taxes or sanctions, whether imposed by law or otherwise or liquidated damages;
      b. the return, reduction or restitution of fees, costs, or expenses;
      c. amounts which are uninsurable under applicable law;

   d.  the cost of complying with any injunctive, declaratory, administrative, or other non-monetary relief;

   e.  fees, costs, and expenses paid, incurred, or charged by the **Insured**, no matter whether claimed as a restitution of specific funds, financial loss, mitigation expenses, or other non-cash consideration;

   f.  amounts paid or incurred by the **Insured** to replace, restore, or recreate the **Insured's** electronic data, computer software, computer hardware, or computer network;

   g.  amounts which constitute lost income to the **Insured** as a result of a **Privacy Breach** or **Security Event**; or

   h.  amounts paid or incurred by the **Insured** to inform clients of any **Security Event** or **Privacy Breach**.

G.  **Defense Costs** means:

   1.  reasonable and necessary fees, costs and expenses charged by any lawyer consented to or designated by the **Insurer** to defend any **Insured** against a **Claim**;

   2.  all other reasonable and necessary fees, costs and expenses resulting from the investigation, discovery, defense, settlement or appeal of a **Claim** as authorized by the **Insurer**; and

   3.  the cost of a bond or appeal bond, required as a result of a **Claim**, including bonds to release attachments, but only for bond amounts not exceeding the applicable Limit of Liability; however, the **Insurer** has no obligation to apply for, guarantee or furnish any such bond.

**Defense Costs** do not include the remuneration, salaries, overhead, fees or expenses of either the **Insured's** or the **Insurer's** regular employees or officials or any fees or expenses incurred prior to the time that a **Claim** is first made against any **Insured** and reported to the **Insurer**. **Defense Costs** will be paid first and will reduce, and may exhaust, the Limits of Liability shown in Items 4 and 5 of the Declarations.

H.  **Design Defect** means a negligent act, error or omission in the preparation of engineering or architectural designs, plans, specifications, calculations, surveys and studies and shall not include any actual or alleged negligence in the review of shop drawings and other submittals, issuance of change orders and clarifications, observation of construction, or review of contractor's or subcontractor's requests for payment.

I.  **Disciplinary Proceeding** means a proceeding before a disciplinary board or similar entity or official to determine violations of disciplinary rules or rules of professional conduct, professional misconduct or other matters relating to licensing and discipline. **Disciplinary Proceeding** does not include charges, investigations or actions filed with a regulatory agency or official, including, without limitation, the Securities and Exchange Commission, the U.S. Patent & Trademark Office or the Internal Revenue Service.

J.  **Expense Event** means any **Crisis Management Event**, appearance at a proceeding, **Disciplinary Proceeding**, response to a subpoena, ADA, FHA and OSHA Legal Expense Reimbursement, **CleanupCosts** for a **Pollution Event** that triggers coverage under Supplemental Payments B.1, B.2, B.3, B.4, or B.5.

K.  **Information Custodian** means any third party that possesses **Non-public Personal Information** or **Proprietary Business Information** on behalf of the **Named Insured** and which is required to maintain the confidentiality and integrity of that information by a written contract with the **Named Insured**.

L.  **Information System** means any electronic device, electronic and paper storage media, as well as any communications networks, including cloud or other multi-tenant storage models.

M.  **Insured** means:

   1.  the **Named Insured** and any **Subsidiary**;

   2.  any past, present or future owner, principal, officer, director, partner, stockholder, shareholder,

<mark>member, manager or employee of the **Named Insured** or any **Subsidiary** for **Real Estate Development Services** rendered on behalf of the **Named Insured** or any **Subsidiary**;</mark>

3. the estate, heirs, executors, administrators, assigns and legal representatives of each **Insured** in the event of the death, incapacity, insolvency or bankruptcy of any **Insured**, but only to the extent that such **Insured** would otherwise be provided coverage under this policy;

4. any **Insured's** legal spouse, including any natural person qualifying as a domestic partner under the provisions of any applicable state, federal or local law in the United States, but only with respect to **Damages** and **Defense Costs** resulting from **Real Estate Development Services** of the **Named Insured** or any **Subsidiary**;

5. <mark>all joint ventures entered into, but only for liability arising out of **Real Estate Development Services** performed by any **Insured** as a participant in a joint venture project; or,</mark>

6. any employee, intern, volunteer or independent contractor of the **Named Insured** or any **Subsidiary**, but only as respects **Real Estate Development Services** rendered on behalf of the **Named Insured** or **Subsidiary**.

N. **Insurer** means the insurance company issuing this policy as shown in the Declarations.

O. **Named Insured** means the person or entity designated in Item 1 of the Declarations and any **Predecessor** of such entity.

P. **Non-public Personal Information** means any of the following information, if not already publicly available:

1. social security number, driver's license or government issued identification number;

2. credit, debit, bank, credit union or brokerage account numbers, balances or account histories;

3. telephone numbers or telephone records;

4. medical records, health insurance identification numbers or other protected health information; or

5. any other non-public information that can be used to identify that individual as specified by a **Privacy Regulation**.

Q. **Personal Injury Offense** means:

1. false arrest, humiliation, mental anguish, emotional distress, unlawful detention, false imprisonment, wrongful entry, eviction or other invasion of private occupancy, abusive litigation, abuse of process or malicious prosecution;

2. the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of any individual's right to privacy; or

3. misrepresentation in advertising, infringement of copyright, trademark, service mark, trade dress or trade name.

R. **Policy Period** means the period from the inception date of this policy to the expiration date of this policy, as shown in Item 2 of the Declarations, or its earlier termination date, if any.

Any extension of the **Policy Period** will not result in an increase or reinstatement of the Limit of Liability.

S. **Pollution Incident** means an alleged or actual discharge, dispersal, release, seepage, migration or escape of smoke, soot, fumes, acids, alkalis, toxic chemicals, asbestos, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, arising from a **Wrongful Act** taking place on or after the Retroactive Date, if any, shown in the Declarations, that causes **Bodily Injury** or **Property Damage**

T. **Potential Claim** means:

1. any circumstance which might reasonably be expected to give rise to a **Claim** being made against any **Insured** under this policy; or

2. receipt of notice of a **Disciplinary Proceeding** or subpoena.

U. **Predecessor** means an individual or entity engaged in **Real Estate Development Services** whose financial assets and liabilities the **Named Insured** is the majority successor in interest.

V. **Privacy Breach** means any of the following which occurred on or after the Retroactive Date, if any, shown in Item 8 of the Declarations:

1. the alleged unauthorized alteration, collection, copying, disclosure, dissemination or viewing of **Non-public Personal Information** or **Proprietary Business Information** in any form, from any source, because of an **Insured's** failure to protect such information from unauthorized access or unauthorized use;

2. the alleged accidental release or loss of **Non-public Personal Information** or **Proprietary Business Information**;

3. the alleged wrongful collection use or sale of **Non-public Personal Information** or **Proprietary Business Information** in any form; and

4. an **Insured's** alleged failure to correct the **Non-public Personal Information** of a third party that is stored on the **Named Insured's Information System** once notified by the affected individual or that individual's legal counsel.

**Privacy Breach** includes the **Named Insured's** vicarious liability for the privacy breach of **Non-public Personal Information** or **Proprietary Business Information** in the care, custody and control of an **Information Custodian** to whom the **Named Insured** entrusted that information.

W. **Privacy Breach Claim** means a **Claim** brought by or on behalf of a third party seeking **Damages** and arising out of a **Privacy Breach** that occurred in the rendering of **Real Estate Development Services**.

X. **Privacy Regulation** means any current or future statute or regulation applying to the collection, dissemination or storage of **Non-public Personal Information** promulgated by a **Privacy Regulator** including, but not limited to, state breach notice laws, HIPAA, the Hi-Tech Act, the Federal Trade Commission (FTC) Red Flag rules, Gramm-Leach Bliley or the European Union (EU) Data Protection Act.

Y. **Privacy Regulator** means any local, state or federal government of the United States, any provincial or federal government in Canada, the European Union or a member state of the European Union.

Z. **Property Damage** means physical injury to tangible property, including all resulting loss of use of that property.

AA. **Proprietary Business Information** means business records, customer lists, trade secrets or any other non-public information entrusted to an **Insured** under a written contract to protect its confidentiality.

BB. **Real Estate Development Services** means the following services performed by or on behalf of any **Insured** in the course of improvement of real property acquired by the **Insured**, whether alone or as part of a partnership, joint venture, syndication, or other arrangement:

1. the construction of buildings or other structures on such real property, including: conceptual land planning; requesting and securing zoning changes; performing environmental studies; construction of horizontal infrastructure such as roads and utilities; property tear-down or re-development; creating capital expenditure projections; performing financial management and reporting; obtaining necessary capital, including giving market condition projections, promotion and advertising; determining surface and subsurface conditions; determining cultural and historic conditions; projecting LEED ratings; preparation, transmittal, and awarding of design and construction bid packages; management, coordination, and supervision of design and construction; and identification and obtaining of applicable permits, variances, consents, easements, and other rights;

2. services performed while acting as a real estate agent, title agent, notary public, mortgage broker, property manager, construction manager, or general contractor, if performed as part of the services

as a real estate developer for the same improvement of real property; and

3. any other services identified as **Real Estate Development Services** listed in Item 3 of the Declarations.

It is further understood that, regarding the coverage provided in this policy under Insuring Agreement A.1., **Real Estate Development Services** includes **Technology Services**.

CC. **Rectification Costs** means those sums actually incurred by the **Insured** which are reasonably necessary to remedy a **Design Defect**. **Rectification Costs** do not include any of the **Insured's** overhead or profit and does not include any mark-ups by the **Insured** of expenses paid to third parties.

DD. **Security Event** means any of the following arising from a **Wrongful Act** taking place on or after the Retroactive Date, if any, shown in Item 8 of the Declarations:

1. the **Insured's** inadvertent transmission of malicious computer code to a third party;

2. the failure to prevent the use of the **Named Insured's Information System** to harm a third party's **Information System** including the failure to prevent the use of the **Named Insured's Information System** to launch a denial of service attack;

3. the inability of the **Named Insured** or third party to access the **Named Insured's Information System** due to the failure to prevent a denial of service attack, damage from malicious computer code, unauthorized access to or unauthorized use of the **Named Insured's Information System**; or

4. the corruption, destruction or loss of electronic data held within the **Named Insured's Information System** as the direct result of malicious computer code, a denial of service attack or from unauthorized access to, or unauthorized use of, the **Named Insured's Information System.**

EE. **Security Event Claim** means a **Claim** brought by or on behalf of a third party seeking **Damages** and arising out of a **Security Event** that occurred in the rendering of **Real Estate Development Services**.

FF. **Social Engineering Incident** means the following taking place on or after the Retroactive Date, if any, shown in Item 8 of the Declarations an **Insured** having transferred, paid or delivered funds or data as a direct result of a fraudulent written instruction, electronic instruction (including e-mail or web-based instruction) or telephone instruction which is intended to mislead an Insured through misrepresentation of a material fact that is relied upon in good faith by such **Insured**.

GG. **Social Engineering Incident Claim** means a **Claim** brought by or on behalf of a third party seeking **Damages** and alleging a **Social Engineering Incident** that occurred in the rendering of **Real Estate Development Services**.

HH. **Subsidiary** means:

1. any entity in which more than 50% of the outstanding voting securities or voting rights representing the present right to vote for election of directors, officers, or any equivalent executives, is owned or controlled by the **Named Insured**, either directly or indirectly on or before the effective date of this policy;

2. any entity created or acquired by the **Named Insured** after the effective date of this policy, if the gross revenues of the created or acquired entity for the prior year are less than 50% of the annual gross revenues of the **Named Insured** as reflected in the **Named Insured's** most recent audited consolidated financial statement prior to such creation or acquisition; or

3. any entity created or acquired by the **Named Insured** after the effective date of this policy that does not fall within subsection 2. above, but such entity will be a **Subsidiary** only for either (i) a period of 30 days from the date such entity was created or acquired by the **Named Insured**; or (ii) until the end of the **Policy Period**, whichever occurs first.

Any entity which a financial institution is, including but not limited to any bank, insurance company, insurance agent/broker, securities broker/dealer, investment advisor, mutual fund or hedge fund is not

a **Subsidiary**.

**Subsidiary** also means any foundation or charitable trust controlled or directly sponsored by the **Named Insured**.

Provided, however, this policy will only apply to **Wrongful Acts** committed or allegedly committed after the entity becomes a **Subsidiary** and prior to the date such entity ceases to be a **Subsidiary**.

II. **Technology Products** means computer or telecommunications hardware or software, or related electronic product that you develop, create, manufacture, distribute, license, lease or sell to your clients and for whom **Real Estate Development Services** are rendered.

JJ. **Technology Services** means:

    1. information technology consulting;

    2. the administration, analysis, design, engineering, installation, integration, maintenance, management and programming of information systems or networks;

    3. the analysis, development, delivery, design and support of business application software;

    4. the design, hosting, maintenance, or programming of websites;

    5. the distributing, installing, maintaining, marketing, selling and training in the use of electronic or computer related hardware or software; and

    6. the assembly, design, development, distribution, installation, licensing, leasing, maintenance, manufacturing, ore repair of the **Insured's Technology Products**.

KK. **Wrongful Act** means any actual or alleged act, error, omission or breach of duty by any **Insured** in the rendering of or failure to render **Real Estate Development Services**. **Wrongful Act** also means an actual or alleged **Personal Injury Offense** by any **Insured** in the rendering of or failure to render **Real Estate Development Services**.

## SECTION IV – EXCLUSIONS

This policy does not apply to any **Claim**:

A. arising out of a **Wrongful Act**, **Privacy Breach**, **Security Event**, **Social Engineering Incident**, **Pollution Incident** or **Expense Event** occurring prior to the effective date of the first Real Estate Developers Professional Liability Insurance Policy issued by the **Insurer** to the **Named Insured** and continuously renewed and maintained if:

    1. any **Insured** gave notice to any prior insurer of any such actual **Claim** or **Potential Claim**, **Wrongful Act**, **Privacy Breach**, **Security Event**, **Social Engineering Incident**, **Expense Event** or **Pollution Incident**; or

    2. any **Insured** had a reasonable basis to believe that the **Insured** had committed a **Wrongful Act**, violated a disciplinary rule, or engaged in professional misconduct.

B. arising out of any actual or alleged intentional, criminal, dishonest, malicious or fraudulent act, error or omission by any **Insured** if such intentional, criminal, dishonest, malicious or fraudulent act, error or omission is established by a final adjudication in any judicial, administrative or alternative resolution proceeding.

This exclusion does not apply to any **Personal Injury Offense** that results from any **Real Estate Development Services** by any **Insured**; or

For purposes of this exclusion, the act of any **Insured** shall not be imputed to any other **Insureds** who were not aware of and did not participate in such act.

C. arising out of any **Insured's** services provided on behalf of or capacity as an officer, director, partner, owner, member, manager or employee of any corporation, partnership, association or any other business enterprise orcharitable organization of any kind or nature other than:

1. the **Named Insured**;

2. any entity other than the **Named Insured**:

   a. that is managed, or controlled by any **Insured**;

   b. in which any **Insured**, individually or collectively, has an ownership interest in excess of 49%; or

   c. which wholly or partly owns, operates or manages the **Named Insured**.

D. arising out of any actual or alleged violation or breach by any **Insured** of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, Telephone Consumer Protection Act (TCPA), Securities Act of 1933, Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act 18 USC Sections 1961 et seq., the Controlling the Assault of Non-Solicited Pornography and Marketing ACT (CAN-SPAM) of 2003, the Fair Credit Reporting Act (FCRA), Fair and Accurate Credit Transactions Act (FACTA), or amendments thereto of any of these, or any similar provision of any federal, state or local statute, regulation, ordinance or common law.

This exclusion does not apply if any **Insured** is deemed to be a fiduciary solely by reason of **Real Estate Development Services** rendered with respect to any employee benefit plan.

E. arising out of **Bodily Injury** or **Property Damage**.

This exclusion does not apply to **Bodily Injury** resulting from a **Personal Injury Offense** or to the extent that any such **Bodily Injury** or **Property Damage** results from any **Insured's** rendering of or failure to render **Real Estate Development Services**.

F. arising out of any actual or alleged liability assumed by any **Insured** under any written or oral contract or agreement, including, without limitation, any indemnification agreement, express warranties or guarantees provided that this exclusion does not apply to any liability that would have attached to any **Insured** in the absence of such contract or agreement and that is otherwise covered under the policy.

In a foreign jurisdiction where the **Insured's** liability to a client is predicated only on contractual liability, this Exclusion does not apply except to the extent that the **Insured** has agreed to pay consequential or liquidated damages.

G. made by or on behalf of any **Insured** against any other **Insured**. However, this exclusion does not apply to **Claims** brought by investors who have ownership in the developed property which is the subject of a **Claim** brought against the **Insured**.

H. arising out of infringement of patent or misappropriation of trade secret.

I. arising out of an actual or alleged violation of any anti-trust or price-fixing rule or regulation.

J. arising out of the design or manufacture of any goods or products which are sold or supplied by any **Insured** or by others under license from any **Insured**. This exclusion does not apply to software sold or supplied by the **Insured** to its client in connection with the **Insured's** provision of other **Real Estate Development Services** for that client.

K. arising out of any **Insured's** employment obligations, decisions, practices or policies as an employer, including but not limited to any **Claim** under worker's compensation, unemployment compensation, employee benefits, or disability benefits law or similar laws.

L. arising out of any actual or alleged discrimination, humiliation, harassment or misconduct, including but not limited to that which is based on an individual's race, religion, color, gender, sexual orientation, national origin, age, disability, or marital status by any past, present or future owner, principal, officer, director, partner, stockholder, shareholder, member, manager or employee of the **Named Insured** or any **Subsidiary** to any employee, prospective employee, or customer. This exclusion does not apply to otherwise covered **Claims** brought under the Americans with Disabilities Act, the Fair Housing Act, or any similar state or local law or ordinance.

M. arising out of any actual or alleged failure to procure and/or maintain adequate insurance or bonds. However, this exclusion will not apply to the **Insured's** services in the performance of property management.

N. arising out of any **Insured's** making any payment:

   1. without prior receipt of an architect's certificate, where such certificate is required as a condition of payment, or

   2. without prior receipt of appropriate waivers or releases of lien from the subcontractors involved, where work or materials have been provided by said subcontractors.

O. arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property.

P. arising out of the acquisition of property for resale or other arrangements to obtain monetary gain without making improvements to said property in the course of the **Insured's Real Estate Development Services**.

## SECTION V – COVERAGE EXTENSIONS

### A. EMERGENCY REMEDIATION COVERAGE

The **Insurer** will reimburse the **Insured** up to $250,000 for reasonable and necessary **Cleanup Costs** the **Insured** incurs to take immediate action without the prior consent of the **Insurer** in order to abate and/or respond to an imminent and substantial threat in connection with an actual or potential **Pollution Incident**, provided:

   1. the **Pollution Incident** results from the **Insured's** performance of or failure to perform **Real Estate Development Services** taking place on or after the Retroactive Date; and

   2. the **Pollution Incident** is first discovered by the **Insured** during the policy period and is reported to the **Insurer** in writing as soon as is possible after such discovery, but in any event no later than 10 business days after the **Insured** first discovers such **Pollution Incident**, or the end of the policy period, whichever is earliest.

The **Insurer** will only reimburse the **Insured** for **Cleanup Costs** under this Coverage Extension the **Insurer** deems reasonable and necessary to mitigate the **Pollution Incident** on an emergency basis.

The **Insured** must pay the deductible stated in the Declarations in connection with any payments the insurer makes under this subsection.

Covered **Cleanup Costs** incurred in excess of the $250,000 sublimit noted in this Section shall be treated in the same manner as other covered **Damages**. The **Insured's** payment of **Cleanup Costs** shall erode the Aggregate Limit of Liability for all **Claims**.

Any notice given to the **Insurer** under this subsection shall be deemed notice of a **Potential Claim**.

### B. RECTIFICATION COSTS COVERAGE

The **Insurer** will reimburse the **Insured** for **Rectification Costs** the **Insured** incurs provided that:

   1. the **Insured** provides written notice during the **Policy Period** for a request for reimbursement of **Rectification Costs** as soon as practicable and in accordance with SECTION VI – GENERAL CONDITIONS, paragraph B. Reporting and Notice subpart 6; and

   2. the **Insured** demonstrates to the **Insurer's** satisfaction that there is a **Design Defect** which is reasonably likely to give rise to a **Claim** covered under this policy; and

   3. the **Insured** provides the **Insurer** with the details of the rectification being considered to mitigate the potential liability arising out of such **Design Defect** and the estimated **Rectification Costs** to be incurred in connection with the action being considered, as soon as practicable but no later than 30 days after the expiration of the **Policy Period** and prior to incurring any **Rectification Costs**; and

4.  prior to incurring any **Rectification Costs** the **Insured** receives written consent from the **Insurer** to such **Rectification Costs**; and

5.  the **Rectification Costs** sought do not arise out of the same or similar **Rectification Costs** for which reimbursement expenses have been requested or paid.

In the event a **Claim** is made arising out of **Rectification Costs** which the **Insurer** has paid, then the **Insurer** may, at the **Insurer's** sole discretion, cease paying further **Rectification Costs**.

Such **Rectification Costs** will be reimbursed within 90 days of submission of a request for reimbursement of **Rectification Costs**.

The **Insured's** payment of **Rectification Costs** shall erode the Aggregate Limit of Liability for all **Claims**.

C.  EXTENDED REPORTING PERIODS

In the event this policy is cancelled or non-renewed by either the **Named Insured** or the **Insurer**, an **Insured** is entitled to the extensions of coverage shown in this Section.

1.  Automatic Extended Reporting Period

An Extended Reporting Period is automatically provided to the **Named Insured** without additional charge. This period starts at the end of the **Policy Period** and lasts for 60 days, or the date another policy for professional liability insurance applicable to the **Named Insured** takes effect, whichever occurs first.

a.  There will be no entitlement to this Automatic Extended Reporting Period if cancellation or non-renewal is due to any **Insured's** non-payment of premium or Deductible due, or failure to comply with the terms and conditions of the policy, or if the policy was issued based upon a misrepresentation by any **Insured**.

b.  This Automatic Extended Reporting Period will be subject to all the terms and conditions of this policy and will apply to **Claims** first made against any **Insured** during the Automatic Extended Reporting Period and reported to the **Insurer** during the Automatic Extended Reporting Period and that arise out of any **Wrongful Act** that occurred or is alleged to have occurred subsequent to the Retroactive Date, if any, shown on the Declarations and beforethe end of the **Policy Period**.

c.  This Automatic Extended Reporting Period does not in any way increase the Limits of Insurance of this policy.

d.  If any other policy of insurance in effect would apply to any **Claims** first made against the **Insured** during the Automatic Extended Reporting Period, then coverage provided under this Automatic Extended Reporting Period will apply as excess over such other insurance.

2.  Optional Extended Reporting Period

An Optional Extended Reporting Period is available to the **Named Insured**, but only by an endorsement and for an extra premium charge as shown in Item 7 of the Declarations.

a.  The **Named Insured** must give the **Insurer** a written request for the endorsement and pay any premium due within 60 days after the end of the **Policy Period**. The Optional Extended Reporting Period will not go into effect unless the **Named Insured** pays the additional premium promptly when due.

b.  The Optional Extended Reporting Period is non-cancellable and starts upon the expiration of the **Policy Period**.

c.  All premiums paid for the Optional Extended Reporting Period will be deemed fully earned and non-refundable as of the first day of the Optional Extended Reporting Period.

d.  There will be no entitlement to this Optional Extended Reporting Period if cancellation or non-renewal is due to any **Insured's** non-payment of premium or Deductible due, or failure to

121 RE 0201030-02

comply with the terms and conditions of the policy, or if the policy was issued based on a misrepresentation by any **Insured**.

e. This Optional Extended Reporting Period will be subject to all the terms and conditions of this policy and will apply to **Claims** first made against any **Insured** during the Optional Extended Reporting Period and reported to the **Insurer** during the Automatic Extended Reporting Period that arise out of any **Wrongful Act** that occurred or is alleged to have occurred subsequent to the Retroactive Date, if any, shown on the Declarations and before the end of the **Policy Period**.

f. The Optional Extended Reporting Period does not in any way increase the Limits of Insurance of this policy.

3. Nonpracticing Extended Reporting Period

If, during this **Policy Period**, any **Insured** permanently and totally retires or otherwise voluntarily ceases the practice of providing the **Real Estate Development Services** insured by this policy, and has been insured by a Professional Liability Insurance policy issued by the **Insurer** for at least the 7 consecutive years immediately preceding, and the **Insured** is at least 55 years of age, the **Insurer** will, subject to the provisions of paragraphs 1. and 2. above, issue a Nonpracticing Extended Reporting Period endorsement.

a. This Nonpracticing Extended Reporting Period is provided until such **Insured** resumes the **Real Estate Development Services** insured by this policy, or until the death of such **Insured** in which case paragraph 4.a below, will apply.

b. No additional premium will be charged for this coverage, nor will any premium be refunded.

The Nonpracticing Extended Reporting Period is subject to the conditions set forth in paragraph 1. and 2. above.

4. Death or Disability Extended Reporting Period

If during the **Policy Period,** any **Insured** dies from a cause other than suicide or becomes totally and permanently disabled, an extended reporting period is provided until the executor or administrator is discharged or until the disability ends.  However, the Death or Disability Extended Reporting Period will never be longer than seven years from the date of death or disability. No additional premium will be charged for this coverage, nor will any premium be refunded.

a. In the event of death, the **Insured's** estate must, no later than 60 days after the end of this **PolicyPeriod**, provide the **Insurer** with written notice that the extended reporting period is desired. This notice must include written proof of the date of death.

b. In the event the **Insured** becomes totally and permanently disabled, the **Insured** or the **Insured's** legal guardian must, no later than 60 days after the end of this **Policy Period**, provide the **Insurer**with written notice that the extended reporting period is desired. This notice must include written proof that the **Insured** is totally and permanently disabled, including the date the disability began, certified by the attending physician. The **Insured** agrees to submit to medical examination(s) by any physician(s) designated by the **Insurer**, if requested.

This extended reporting period is subject to the conditions set forth in paragraphs 1. and 2. above.

## SECTION VI – GENERAL CONDITIONS

A. Defense, Settlement and Cooperation

1. The **Insurer** has the right and duty to defend any **Insured** against any **Claim**, even if the allegations of such **Claim** are groundless, false or fraudulent.  The **Insurer** will designate, or, at the **Insurer's** sole discretion, approve counsel chosen by the **Insured** to defend the **Claim**.

This policy has provisions whereby the **Insurer** will pay on the **Insured's** behalf certain costs incurred as a result of defending a **Disciplinary Proceeding** or responding to a subpoena for

121 RE 0201030-02

documents or testimony; however the **Insurer** has no duty to defend the **Insured** in any such **Disciplinary Proceeding** or in connection with any such subpoena assistance as shown in SECTION I – COVERAGES, B. Supplemental Payments, Subpoena Assistance.

2. The **Insurer** has the right to make any investigation the **Insurer** deems necessary and, with the **Insured's** consent, make any settlement of any **Claim** covered by the terms of this policy.

3. The **Insured** will not, except at the **Insured's** own cost, make any payment, admit any liability, settle any **Claim**, assume any obligation or incur any expense, without the **Insurer's** prior written consent, such consent not to be unreasonably withheld.

4. If the applicable Limit of Liability shown in Items 4 and 5 of the Declarations are exhausted by the payment of **Damages** and **Defense Costs**, then all of the **Insurer's** obligations under this policy will be completely fulfilled and exhausted, and the **Insurer** will have no further obligations of any kind or nature whatsoever under this policy. If the applicable Limit of Liability shown in the Declarations is exhausted prior tosettlement or judgment of any **Claim**, the **Insurer** will have the right to withdraw from further investigation or defense by tendering control of such investigation or defense to the **Insured**, and the **Insured** agrees, as a condition to the issuance of this policy, to accept such tender.

5. The **Insured** must cooperate with the **Insurer** and assist the **Insurer** in investigating and defending any **Claim** or **Potential Claim** or investigating any event resulting in coverage under Insuring Agreement B: Supplemental Payments. Upon the **Insurer's** request, the **Insured** must submit to examination and interrogation by the **Insurer's** representatives, under oath if required, and the **Insured** must attend hearings, depositions and trials, and assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and other proceedings, as well as in the giving of a written statement or statements to the **Insurer's** representatives including investigating and coverage counsel, and meeting with such representatives for the purpose of investigating and defense, including the investigation of coverage issues or defense. The **Insured** must further cooperate with the **Insurer** and do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the **Insured** may have.

B. Reporting and Notice

1. Reporting of **Claims**

   If, during the **Policy Period** or any Extended Reporting Period, any **Claim** for a **Wrongful Act** is first made against any **Insured**, as a condition precedent to the **Insured's** right to coverage under this policy, the **Insured** must give the **Insurer** written notice of such **Claim** as soon as practicable, but in no event later than the later of 60 days after the expiration date or earlier termination date of this policy, or the expiration of any Extended Reporting Period, if applicable.

   Timely and sufficient notice of a **Claim** by one **Insured** will be deemed timely andsufficient notice for all of the **Insureds** involved in the **Claim**. Such notice must give full particulars of the **Claim**, including, but not limited to: a description of the **Claim** and **Wrongful Act**; the identity of the **Insured** and all potential claimants involved; a description of the injury or damages that resulted from such **Wrongful Act**; information on the time, place and nature of the **Wrongful Act**; and the manner in which the **Insured** first became aware of the **Claim**.

2. Reporting of **Potential Claims**

   If, during the **Policy Period**, any **Insured** first becomes aware of any **Potential Claim**, the **Insured** will give the **Insurer** written notice of such **Potential Claim** with full particulars as soonas practicable thereafter, but in any event before the end of the Policy Period. If such **Potential Claim** later becomes a **Claim** not otherwise excluded by this policy, such **Claim** will be treated as if the **Claim** had been first made during the **Policy Period**. Full particulars shall include, but are not limited to: a description of the **Potential Claim**; the identity of the **Insured** and all potential claimants involved; information on the time, place and nature of the **Potential Claim**; the manner

in which the **Insured** first became aware of such **Potential Claim**; and the reasons the **Insured** believe the **Potential Claim** is likely to result in a **Claim**.

3. Notice regarding **Crisis Management Expenses**

If, during the **Policy Period, a Crisis Management Event** occurs, then as a condition precedent to the **Insured's** right to coverage under this policy for **Crisis Management Expenses**, the **Insured** must give the **Insurer** written notice of such **Crisis Management Event** as soon as practicable, but in no event later than the end of the **Policy Period**.

Such notice must give full particulars of the **Crisis Management Event**, including, but not limited to: a description of the **Crisis Management Event**; the identity of the **Insured** and all potential claimants involved; and the manner in which the **Insured** first became aware of such **Crisis Management Event**.

4. Notice of **Disciplinary Proceedings** and SubpoenasIf, during the **Policy Period**:

   a. a **Disciplinary Proceeding** is first initiated against any **Insured** and covered by SECTION I – COVERAGES, B. Supplemental Payments, 3. Disciplinary Proceedings; or,

   b. any **Insured** first receives a subpoena covered by SECTION I – COVERAGES, B. Supplemental Payments, 4. Subpoena Assistance;

   then as a condition precedent to the **Insured's** right to coverage under this policy, the **Insured** must give the **Insurer** written notice of such **Disciplinary Proceeding** or subpoena as soon as practicable, but in no event later than the end of the **Policy Period**.

   Such notice must give full particulars of the **Disciplinary Proceeding** or subpoena, including, but not limited to: a description of the **Disciplinary Proceeding** or subpoena; the identity of the **Insured** and all potential claimants involved; and the manner in which the **Insured** first became aware of such **Disciplinary Proceeding** or subpoena.

5. Notice required for Emergency Remediation Coverage

If, during the **Policy Period**, a **Pollution Incident** occurs, then as a condition precedent to the **Insured's** right to coverage under this policy for Emergency Remediation Coverage for **Cleanup Costs** under SECTION IV – COVERAGE EXTENSIONS 1. Emergency Remediation Coverage, the **Insured** must immediately:

   a. record the specifics of the **Pollution Incident**, including how and when it took place, as well as details regarding the **Real Estate Development Service** provided;

   b. record a detailed description of the nature, scope and estimated amount of the **Cleanup Costs**; and

   c. notify the **Insurer** in writing as soon as practicable but in no event after the **Policy Period**.

6. Notice required for reimbursement of **Rectification Costs**

If, during the **Policy Period**, the **Insured** seeks reimbursement for **Rectification Costs** the **Insured** must immediately provide the **Insurer** in writing with:

   a. a detailed description of the need for reimbursement of **Rectification Costs**, including the details concerning the nature of the **Design Defect** and the potential harm arising from the **Design Defect**; and

   b. a detailed description of the rectification being considered to mitigate the potential liability arising out of such **Design Defect** as well as the nature, scope, and estimated amount of the **Rectification Costs**.

7. Notices

All written notices required herein must be sent to the **Insurer** at the **Insurer's** physical address or e-mail address shown in Item 9 of the Declarations.

C. Multiple Wrongful Acts, **Claims** or Claimants

Two or more **Claims** arising out of a single **Wrongful Act**, or any series of related **Wrongful Acts**, will be considered a single **Claim**. Each **Wrongful Act**, in a series of related **Wrongful Acts**, will be deemed to have occurred on the date of the first such **Wrongful Act.**

D. Organizational Changes

   1. If, during the **Policy Period**:

      a. the **Named Insured** or any **Subsidiary** are merged with, consolidated into or acquired by or with another entity such that the **Named Insured** is not the surviving entity; or

      b. a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official is appointed foror with respect to the **Named Insured** or any **Subsidiary**; then

      coverage under this policy will continue in full force and effect with respect to **Real Estate Development Services** rendered before such event, but coverage will cease with respect to **RealEstate Development Services** committed after such event. After any such event, this policy maynot be canceled by the **Named Insured** and the entire premium for this policy will be deemed fullyearned.

   2. If, during the **Policy Period**, the **Named Insured** or any **Subsidiary** merges, consolidates or acquires an entity whose gross revenues for the prior year are equal to or greater than 50% of the annual gross revenues of the **Named Insured** as reflected in the **Named Insured's** most recent consolidated financial statement prior to such merger, consolidation or acquisition, then no coverage will be afforded under this policy for any **Claim** involving such assets or entity unless the following conditions are met:

      a. The **Named Insured** provides written notice of such merger, consolidation creation, or acquisition to the **Insurer** within 60 days after the effective date of such merger, consolidation, creation or acquisition, or by the end of the **Policy Period**, whichever is earliest;

      b. The **Named Insured** provides the **Insurer** with such information as the **Insurer** may deem necessary;

      c. The **Named Insured** accepts any special terms, conditions, exclusions or additional premium charge as may be required; and

      d. The **Insurer**, at the **Insurer's** sole discretion, agrees to provide such coverage.

E. Other Insurance

This insurance will apply only as excess of the applicable Deductible amount shown in Items 4 and 5 of the Declarations as excess of the amount of any other valid and collectible insurance available to any **Insured** including, but not limited to, any Cyber liability coverage available under any other policy, whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is specifically written as excess insurance over the Limits of Liability provided in this policy.

F. Cancellation and Non-Renewal

   1. Cancellation

      a. The **Named Insured** may cancel this policy by mailing or delivering advance written notice to the **Insurer** at the **Insurer's** address shown in Item 9 of the Declarations, stating when cancellation will be effective. If the **Named Insured** cancels this policy, the **Insurer** will retain the customary short rate portion of the premium.

      b. The **Insurer** may cancel this policy by mailing written notice to the first **Named Insured** \ stating when, not less than 30 days thereafter (or such longer period of time as required by applicable law), such cancellation will be effective. If cancelled by the **Insurer**, earned premium will be computed pro rata.

c. However, if the **Insurer** cancels this policy because the **Named Insured** has failed to pay a premium or Deductible when due, the **Insurer** may cancel this policy by mailing written notice of cancellation to the first **Named Insured** stating when, not less than 10 days thereafter (or such longer period of time as required by applicable law), such cancellation will be effective. Such notice will apply to all of the **Insureds**.   If cancelled by the **Insurer**, earned premium will be computed pro rata.

2. Non-renewal

If the **Insurer** elects not to renew this policy, the **Insurer** will mail to the **Named Insured** written notice of non-renewal at least 60 days prior to the expiration date of this policy. If the notice is not given at least 60 days prior to the expiration date, the policy will continue in force until 60 days after the notice of intent not to renew is received by the **Insured**.

Notice of non-renewal will not be required if the **Named Insured** has obtained replacement coverage or have requested or agreed to non-renewal.

G. Subrogation

In the event of any payment under this policy, the **Insurer** will be subrogated to all the **Insured's** rights of recovery against any person or organization; provided that the **Insurer** will not exercise any rights of subrogation against any **Insureds** who did not commit the **Wrongful Act**.

The **Insured** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights in the name of any **Insured**.

Any amount recovered upon the exercise of such rights of subrogation will be applied as follows: first, to the repayment of expenses incurred in recovery by exercise of such subrogation rights; second, to **Damages** and **Defense Costs** paid by the **Insured** in excess of the limits of liability; third, to **Damages** and **Defense Costs** paid by the **Insurer**; fourth, to **Damages** and **Defense Costs** paid by the **Insured** in excess of the deductible amount; and last, to the repayment of any deductible amount paid by the **Insured**.

Notwithstanding the above, the **Insurer** hereby waives such subrogation rights against any **Insured** under this policy, and also against any client of the **Insured,** to the extent that the **Insured** had, prior to any **Claim** or circumstance that might reasonably be expected to be the basis of a **Claim**, a written agreement to waive such rights, provided that prior to such writing no **Insured** had a basis to believe that any matter asserted in such **Claim** or circumstance might reasonably be expected to be the basis of a **Claim**. In no event will any **Insured** waive any of its rights of subrogation after it has become aware of any **Claim**, or any circumstances that may give rise to a **Claim**, against any **Insured**.

H. Bankruptcy or Insolvency

Bankruptcy or insolvency of any **Insured** or of any **Insured's** estate will not relieve the **Insurer** of any of the **Insurer's** obligations or deprive the **Insurer** of any of the **Insurer's** rights under this policy.

I. Policy Territory

This policy applies to **Wrongful Acts** occurring anywhere in the world where legally permissible; however, no coverage will be available under this policy for any **Claim** brought or occurring in any country with which the United States of America does not have active diplomatic relations at the time such **Claim** is made.

All premiums, Limits of Liability, deductibles and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Damages** and **Defense Costs** under this policy is stated in a currency other than United States Dollars, payment under this policy will be made in United States Dollars at the rate of exchange on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Damages** and **Defense Costs** is due, respectively.

121 RE 0201030-02

J.   Assignment

Neither this policy nor any **Insured's** interest in this policy may be assigned without the **Insurer's** written consent.

K.   Liberalization

If the **Insurer** adopts any revision to this form that would broaden coverage under this policy without additional premium at any time during the **Policy Period**, the broadened coverage will immediately apply to this policy, except that it will not apply to **Claims** that were first made against any **Insured** prior to the effective date of such revision.

L.   Policy Changes

Notice to or knowledge possessed by any broker or other person acting on the **Insured's** behalf will not affect a waiver or change in any part of this policy or prevent or estop the **Insurer** from asserting any right(s) under this policy. This policy can only be altered, waived or changed by written endorsement or agreed to in writing by an authorized representative of the **Insurer**.

M.   Action Against the **Insurer**

No action can be brought against the **Insurer** unless, as a condition precedent, the **Insured** has fully complied with all the terms and conditions of this policy. Nothing contained in this policy gives any person or organization the right to join the **Insurer** as a party to any **Claim** to determine the **Insured's** liability.

N.   Waiver

The **Insurer's** failure to insist on strict compliance with any of the terms or conditions of this policy or the failure to exercise any right or privilege will not operate or be construed as a waiver of any subsequent breach or a waiver of any other terms, conditions, privileges or rights.

O.   Representations

By accepting this policy, all **Insureds** agree that all statements made and information furnished to the **Insurer** are true, accurate and complete, and that this policy has been issued in reliance upon the truth and accuracy of those representations, subject to all of the terms and conditions of this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

All Coverage Parts included in this policy are subject to the following condition.

Throughout this endorsement, the term **Named Insured** refers to the **Policyholder**, **Named Entity** or **Named Insured** shown in Item 1. of the Declarations.

Any Cancellation, Nonrenewal or similar provision(s) of this policy is/are deleted and replaced with the language below. If no such provisions exist, the language below is added:

A. Cancellation

   1. The first **Named Insured** shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

   2. Cancellation of policies in effect for less than 60 days

      The **Insurer** may cancel this policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least 30 days before the effective date of cancellation.

   3. Cancellation of policies in effect for 60 days or more

      If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy the **Insurer** issued, the **Insurer** may cancel this policy only for one or more of the following reasons:

      a.  The **Insured** has made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

      b.  The **Insured** has failed to pay a premium when due, whether the premium is payable directly to the **Insurer** or the **Insurer's** agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

      c.  A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the **Policy Period**. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

      d.  Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, will be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

      e.  Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

      f.  Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

      This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by the **Insurer**.

   4. The **Insurer** will mail or deliver the **Insurer's** notice to the first **Named Insured's** last mailing address known to the **Insurer**. Notice of cancellation will state the specific reasons for cancellation.

ILP0246PA-0920       Includes copyrighted material of Insurance Services Office, Inc.,       Page 1 of 2
with its permission.

5. Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

6. If this policy is cancelled, the **Insurer** will send the first **Named Insured** any premium refund due. If the **Insurer** cancels, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first **Named Insured** cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if the **Insurer** has not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. Nonrenewal

1. If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first **Named Insured** at least 60 days before the expiration date of the policy.

2. Any notice of nonrenewal will be mailed or delivered to the first **Named Insured's** last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

If service of process is to be made upon the Company by way of hand delivery or courier service, delivery should be made to the Company's principal place of business:

Claims Manager
  Colony Insurance Company,
  Colony Specialty Insurance Company, or
  Peleus Insurance Company
  8720 Stony Point Parkway, Suite 400
  Richmond, Virginia 23235

If service of process is to be made upon the Company by way of the U.S. Postal Service, the following mailing address should be used:

General Counsel
  Colony Insurance Company,
  Colony Specialty Insurance Company, or
  Peleus Insurance Company
  P.O. Box 469011
  San Antonio, Texas 78246

Where required by statute, regulation, or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**121 RE 0201030-02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED(S) ENDORSEMENT

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE

## SCHEDULE

Name of Individual or Entity:

Any individual or entity required to be added as an Additional Insured pursuant to a written contract with a **Named Insured** covered hereunder.

SECTION III – DEFINITIONS, the definition of **Insured** is amended by the addition of the following:

**Insured** also includes the individual or entity shown in the SCHEDULE above, but solely with respect to liability resulting from a **Wrongful Act** caused, or alleged to be caused, in whole or in part, by the **Insured** or by those acting on the **Insured's** behalf in the performance of the **Insured's Professional Services**.

There shall be no coverage for any individual or entity listed on the SCHEDULE for its independent **Wrongful Acts**.

Nothing herein shall serve to confer any rights or duties on any individual or entity listed on the SCHEDULE under this Policy, other than as provided herein.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

PR2057-1219                                                                                                     Page **1** of **1**

121 RE 0201030-02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RETROACTIVE DATE APPLICABLE TO SPECIFIC PROFESSIONAL SERVICES ENDORSEMENT

This endorsement modifies insurance provided under the following:

REAL ESTATE DEVELOPERS PROTECT$^{SM}$ PROFESSIONAL LIABILITY INSURANCE

## SCHEDULE

| Real Estate Development Service(s) | Retroactive Date |
|---|---|
| Real Estate Agent Broker Services | 02/10/2015 |
| Real Estate Development Services | 06/21/2017 |

Solely with respect to the **Real Estate Development Services** set forth in the SCHEDULE above, ITEM 8. **RETROACTIVE DATE** of the Declarations is deleted and replaced with the date opposite such scheduled **Real Estate Development Service**.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND DEFINITION OF INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE

SCHEDULE

| Individual/Entity | Retroactive Date |
|---|---|
| Cygnet Real Estate | 02/10/2015 |

The definition of **Insured** within SECTION III – DEFINITIONS is amended to add the following:

**Insured** means:

the individual or entity shown in the SCHEDULE above, but only with respect to **Claims** arising out of **Wrongful Acts** that first take place on or after the Retroactive Date, also shown in the SCHEDULE above.  If no Retroactive Date is shown in the SCHEDULE above, the Retroactive Date for such individual or entity will be the Retroactive Date shown in the Declarations.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

CONTRACTORS PROTECT PROFESSIONAL LIABILITY INSURANCE WITH CYBER COVERAGE
REAL ESTATE SERVICES PROTECT PROFESSIONAL LIABILITY INSURANCE
REAL ESTATE DEVELOPERS PROTECT PROFESSIONAL LIABILITY INSURANCE WITH CYBER
COVERAGE

A.  SECTION III - DEFINITIONS is amended by the addition of the following:

**Act of Terrorism** means an act, including but not limited to the use of force or violence and/or the threat thereof, by any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any portion of the public, in fear.

B.  SECTION IV - EXCLUSIONS is amended by the addition of the following:

This policy does not apply to any **Claim** or **Expense Event** arising out of any actual or alleged **Act of Terrorism**.  However, this exclusion applies only when one or more of the following are attributed to such act:

1.  The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2.  Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a.  Physical injury that involves a substantial risk of death; or

    b.  Protracted and obvious physical disfigurement; or

    c.  Protracted loss of or impairment of the function of a bodily member or organ; or

3.  The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4.  The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs B.**1.** and B.**2.** describe the thresholds used to measure the magnitude of an incident of an **Act of Terrorism** and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PURPOSE ENTITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Real Estate Developers PROtect℠ Professional Liability Insurance with Cyber Coverage**

In consideration of the payment of the premium for this Policy, it is understood and agreed that

I.      Definition **J. Insured** set forth in Section III - DEFINITIONS is amended to include:

      **Insured** also includes a **Special Purpose Entity**.

II.     Section III - DEFINITIONS is amended to include the following new definition:

      **Special Purpose Entity** means any entity:

    1.      in which a person who has a financial interest in the **Named Insured** also has a financial interest;

    2.      of which any person described in subpart 1. above has control or otherwise has the ability to direct the managerial decision at any time during the performance of the **Real Estate Development Services** giving rise to the claim; and

    3.      which is created for the purpose of owning and controlling a specific property for development.

      Provided always, the Retroactive Date applicable to each **Special Purpose Entity** will be the date such entity is established and not the date set forth on the Declarations.

All other terms, conditions and exclusions remain unchanged.


This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

121 RE 0201030-02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF REAL ESTATE DEVELOMENT SERVICES (REMOVE ACQUIRED BY THE INSURED) ENDORSEMENT

This Endorsement modifies the coverage provided under the following insurance policy:

**Real Estate Developers PROtect Professional Liability Insurance with Cyber Coverage**

In consideration of the payment of the premium, it is hereby understood and agreed that Section III – DEFINITIONS, Definition X. **Real Estate Development Services** is deleted and replaced with the following:

**Real Estate Development Services** means the following services performed by or on behalf of any **Insured** in the course of improvement of real property, whether alone or as part of a partnership, joint venture, syndication, or other arrangement:

1.  the construction or renovation of buildings or other structures on such real property, including: conceptual land planning; requesting and securing zoning changes; performing environmental studies; construction of horizontal infrastructure such as roads and utilities; property tear-down or re-development; creating capital expenditure projections; performing financial management and reporting; obtaining necessary capital, including giving market condition projections, promotion and advertising; determining surface and subsurface conditions; determining cultural and historic conditions; projecting LEED ratings; preparation, transmittal, and awarding of design and construction bid packages; management, coordination, and supervision of design and construction; and identification and obtaining of applicable permits, variances, consents, easements, and other rights;

2.  services performed while acting as a real estate agent, title agent, notary public, mortgage broker, property manager, construction manager, or general contractor, if performed as part of the services as a real estate developer for the same improvement of real property; and

3.  any other services identified as **Real Estate Development Services** listed in Item 3 of the Declarations.

It is further understood that, regarding the coverage provided in this policy under Insuring Agreement A.2, **Professional Service** includes **Technology Services.**

All other terms and conditions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

REPRO-4009-0420

Page 1 of 1

121 RE 0201030-02

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL P 001 01 04 © ISO Properties, Inc., 2004 **Page 1 of 1**

## Notice of Insurance Information Practices

Argo Group US, Inc., and each of its subsidiaries ("Argo Group") recognizes the importance of maintaining the privacy of our customers and their personal information. We take seriously the responsibility that accompanies our collection and use of your personal information. Argo Group protects the privacy and security of our customers and their personal information as required by applicable privacy and security laws.

This Notice of Insurance Information Practices ("Insurance Privacy Notice") provides notice of our information practices to all applicants, policyholders, and where applicable claimants, in connection with our insurance transactions. It supplements the privacy and security provisions contained in Argo Group's Global Privacy Notice (which is located at *www.argolimited.com/privacy-policy*).

This Insurance Privacy Notice applies to all companies and business produced or underwritten within Argo Group, and complies with the requirements of the Gramm-Leach-Bliley Act (GLBA), and any federal and state privacy and security laws and regulations applicable to insurance transactions. You are receiving this Insurance Privacy Notice with respect to your relationship with Argo Group* and one or more of the subsidiaries listed below.

### Information Collection and Use

To conveniently and effectively provide and service the insurance products we sell, we may collect and use your personal information, including information that may be considered nonpublic personal information, under applicable privacy and security laws. This personal information may include identifiers, financial and insurance underwriting information, financial and account information, and information considered protected classifications under applicable privacy and security laws. More information on the specific personal information we may collect and how we might use it is available in our Global Privacy Notice referenced above.

### Information Sharing and Disclosure

Applicable laws impose certain obligations upon third parties and organizations with which we share personal information. Accordingly, we prohibit the unauthorized disclosure of personal information, except as legally required or permitted.

Argo Group does not rent, sell or share your personal information with nonaffiliated third parties except that Argo Group may share personal information with nonaffiliated third parties to the extent necessary in furtherance of the applicable insurance transaction, including third party contractors. These third parties are prohibited from using the information for purposes other than performing services for Argo Group. Argo Group may disclose your information to third parties when obligated to do so by law and to investigate, prevent, or act regarding suspected or actual prohibited activities, including but not limited to fraud and situations involving the security of our operations and employees. In certain instances, you may share your information with a third party directly and that information may be subject to that party's applicable security and privacy policies.

Finally, Argo Group may transfer your personal information to a successor entity in connection with a corporate merger, consolidation, sale of all or a portion of its assets, bankruptcy, or other corporate change.

### Security

We implement technical and organizational security measures designed to secure and protect personal information. Please note, however, we cannot fully eliminate security risks associated with the storage and transmission of personal information.

To protect the confidentiality and integrity of your personal information, we limit access to personal information by only allowing authorized personnel to have access to such information. We maintain physical, electronic and procedural security protections to safeguard the nonpublic personal information in our records. Documents that contain an individual's personal information are appropriately destroyed or deleted before disposal; Argo Group maintains security measures to protect the loss, misuse and alteration of the information under our control. Our hardware infrastructure is housed in a controlled access facility that restricts access to authorized individuals. The network infrastructure is protected by a firewall and traffic is monitored and logged on the firewall and servers. Sensitive administrative activities are carried out over secure, encrypted links between our offices and hosting

(Page 53 of 55)

**121 RE 0201030-02**

facility. Administrative access is limited to authorized employees including specific remote administration protocols and IP addresses. All employees with access to personal information have been advised of Argo Group's security policies and practices and receive regular training regarding these policies and practices.

Any Argo Group employee who becomes aware of the inappropriate use or disclosure of your nonpublic personal information is expected and required to immediately report such behavior to Argo Group's Data Protection Officer.

## Contact Us

If you have any questions about this Insurance Privacy Notice, our Global Privacy Notice, or our privacy and security practices, please contact:

Data Protection Officer
privacy@argogroupus.com
Argo Group International Holdings Ltd.
P.O. Box 469011
San Antonio, TX 78246
800-470-7958


*Note: Argo Group is the parent of Argonaut Insurance Company; Argonaut-Midwest Insurance Company; Argonaut Great Central Insurance Company; ARIS Title Insurance Corporation; Colony Insurance Company; Colony Specialty Insurance Company; Peleus Insurance Company; Rockwood Casualty Insurance Company; Somerset Casualty Insurance Company; Central Insurance Management, Inc.; Alteris Insurance Services, Inc.; Trident Insurance Services, LLC; and Argonaut Management Services, Inc.  This Privacy Policy applies to all companies and business produced or underwritten within Argo Group.

121 RE 0201030-02

# SIGNATURE PAGE

IN WITNESS WHEREOF, the company issuing this policy has caused this policy to be signed by its President and its Secretary and countersigned (if required) on the Declarations page by a duly authorized representative of the company. This endorsement is executed by the company stated in the Declarations.

Peleus Insurance Company

**President**                    **Secretary**

SIGPIC 0817                    Argo Group                    Page 1 of 1

121 RE 0201030-02



# Risk Management & Contract Review Program

**For Architects, Engineers, Contractors, Real Estate Developers, and Miscellaneous Professional Liability**

## What's included?

➤ Access to risk management advice from attorneys.
➤ Contract review services provided by attorneys.*
➤ Recommendations of specific contract language.
➤ Explanation of terms in contract language.
➤ Suggested alternatives to contract language.
➤ Counsel on how to limit exposure of policyholders

## How do Policyholders receive assistance?

Policyholders can either call 1-857-313-3926 to reach an attorney or their insurance broker can email requests to their assigned Argo Pro underwriter. Include your policy number and the name of your firm as listed on your active policy.

## Examples of risk management and contract review

➤ Suggested wording surrounding scope of services.
➤ Recommendations for use of limitation of liability.
➤ Description of benefits/drawback to indemnification agreements and hold harmless clauses
➤ Explanation of how the Standard of Care would/could play a role in the event of a claim

Lewis Brisbois offers legal practice in more than 40 specialties, and a multitude of sub-specialties. Attorneys have broad knowledge, experience, and sensitivity to clients' unique needs. With over forty offices from Los Angeles to New York and Seattle to Miami, attorneys have fostered a diverse group of professionals ready to meet clients' needs.

*Insured is entitled to receive up to three contract reviews per policy period.

For more information on this Risk Management & Contract Review Program, please contact Argo Pro's Head of Architects & Engineers and Miscellaneous Professional Liability, Tom Bongi at thomas.bongi@argoprous.com.

# "EXHIBIT C"

**Declarations Page**

# Excess Liability Insurance

## Applicable Surplus Lines Notice

**The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is NOT covered by the Pennsylvania Insurance Guaranty Association.**

**Surplus Lines Broker:**          _____

**Surplus Lines License#**          _____

Policy Issuance Date:   July 18, 2023

Policy Issuance Office: Berkley Service Professionals, A Division of Berkley Managers Insurance Services, LLC (CA License No. 0H05115)

180 Glastonbury Blvd, Suite 402, Glastonbury, CT 06033

ZXE02170110 (02-17)                    REX9067782-0623 Charter Homes Building Company                    Page 1 of 3

**Declarations Page**

# Excess Liability Insurance

**CLAIMS MADE WARNING FOR DECLARATION: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).**

**PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Whenever printed in this Declarations Page, the boldface type terms shall have the same meanings as indicated in this Policy.

Issuing **Company**:   Nautilus Insurance Company, an Arizona Corporation

   7233 East Butherus Drive

   Scottsdale, AZ 85260

Policy Form: ZXE07160100 (07-16)                                      Policy Number: REX9067782-0623

Item 1.   Name and Address of **Insured**:

   Charter Homes Building Company
   322 N. Arch Street
   Lancaster, PA  17603

   PENNSYLVANIA
   THE INSURER WHICH HAS ISSUED THIS INSURANCE IS NOT LICENSED BY THE PENNSYLVANIA INSURANCE DEPARTMENT AND IS SUBJECT TO LIMITED REGULATION. THIS INSURANCE IS NOT COVERED BY THE PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION.

Item 2.   **Policy Period:**   From June 21, 2023 (inception date) to  June 21, 2024 (expiration date)

   *(Both dates at 12:01 a.m. Standard Time at the address of the Insured)*

Item 3.   Aggregate Limit of Liability for the **Policy Period** (inclusive of Costs of Defense):   $2,000,000

Item 4.   Premium:   ▮▮▮   + Surplus Lines Tax ▮▮▮ + Stamping Fee ▮▮▮

Item 5.   Endorsements attached:

| | | | |
|---|---|---|---|
| 1 | BSP01170001 | (01-17) | Fraud Notice |
| 2 | BSP01170008 | (01-17) | Privacy Notice |
| 3 | BSP07160003 | (07-16) | Claim and Circumstance Reporting Procedures |
| 4 | BSP07160006 | (07-16) | Important Notice To Policyholders |
| 5 | ZXE02220012 | (02-22) | Service of Suit - Pennsylvania |
| 6 | ZXE02220012 | (02-22) | Service of Suit - Pennsylvania |
| 7 | ZXE03190004 | (03-19) | In Witness Provision – Nautilus Insurance Company |
| 8 | ZXE07160201 | (07-16) | Trade and Economic Sanctions |
| 9 | ZXE07160202 | (07-16) | Minimum Earned Premium |

Item 6.   Notice of Claim or Circumstance to the **Insurer** shall be sent to:

   Berkley Service Professionals (C\O Berkley Alliance Managers)

   Address: 757 Third Avenue, 10th Floor,  New York, NY  10017

   Email: BAMClaims@berkleyalliance.com

   All other notices required to be given to the **Insurer** under this Policy shall be sent to:

   Berkley Service Professionals, A Division of

   Berkley Managers Insurance Services, LLC (C\O Berkley Alliance Managers)

   CA License Number: 0H05115

   Address: 180 Glastonbury Blvd, Suite 402, Glastonbury, CT  06033

Item 7.   Schedule of **Underlying Insurance**:

   A.   **Followed Policy**:

Policy Issuance Date:   July 18, 2023

Policy Issuance Office: Berkley Service Professionals, A Division of Berkley Managers Insurance Services, LLC (CA License No. 0H05115)

   180 Glastonbury Blvd, Suite 402, Glastonbury, CT 06033

ZXE02170110 (02-17)                    REX9067782-0623 Charter Homes Building Company                    Page 2 of 3

| | | | |
|---|---|---|---|
| Insurance Carrier: | Peleus Insurance Company | | |
| Policy Number: | 121 RE 0201030-02 | | |
| Policy Period: | From June 21, 2023 (inception date) to June 21, 2024 (expiration date) | | |
| Limit of Liability: | | | $3,000,000 |

B.   Underlying Excess Policy(ies):

| | | |
|---|---|---|
| Insurance Carrier: | Policy Number: | Limit of Liability: |
| Not Applicable | | |

Aggregate Underlying Limits of Liability:                                                    $3,000,000

By accepting this Policy, the **Insureds** and the **Insurer** agree that these Declarations, the completed and signed application (and its attachments), the Excess Insurance Policy and any written endorsements attached hereto constitute the entire contract between the **Insured** and the **Insurer**. This Policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

The **Insured** named in Item 1. of the Declarations shall act on behalf of all **Insureds** with respect to giving and receiving notices, paying premiums and receiving any premiums that may become due under this Policy.

The **Insurer** hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the **Insurer**.

Compliance with all surplus lines placement requirements, including stamping the **Policy** and advisement, collection and payment of any applicable surplus lines taxes and fees, is the responsibility of the broker.

## NOTE: SEE ATTACHED NOTICE FOR SURPLUS LINES DISCLOSURE NOTICE

_____                          July 18, 2023
                                                                   _____
Authorized Representative of the **Company**                        Date

Policy Issuance Date:   July 18, 2023
Policy Issuance Office: Berkley Service Professionals, A Division of Berkley Managers Insurance Services, LLC (CA License No. 0H05115)
                180 Glastonbury Blvd, Suite 402, Glastonbury, CT 06033

ZXE02170110 (02-17)                REX9067782-0623 Charter Homes Building Company                Page 3 of 3

# Nautilus Insurance Company

## <u>FRAUD NOTICE</u>

**Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.**

<u>NOTICE TO ALABAMA APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

<u>NOTICE TO ALASKA CLAIMANTS:</u>  A PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFAUD OR DECEIVE AN INSURANCE COMPANY FILES A CLAIM CONTAINING FALSE, INCOMPLETE OR MISLEADING INFORMATION MAY BE PROSECUTED UNDER STATE LAW.

<u>NOTICE TO ARIZONA CLAIMANTS:</u>  FOR YOUR PROTECTION ARIZONA LAW REQUIRES THAT THE FOLLOWING STATEMENT TO APPEAR ON THIS FORM.  ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

<u>NOTICE TO ARKANSAS APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

<u>NOTICE TO CALIFORNIA CLAIMANTS:</u>  FOR YOUR PROTECTION CALIFORNIA LAW REQUIRES THE FOLLOWING TO APPEAR ON THIS FORM.  ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDLENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFEMENT IN STATE PRISON.

<u>NOTICE TO COLORADO APPLICANTS, POLICYHOLDERS AND CLAIMANTS:</u> IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY.  PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

<u>NOTICE TO DELAWARE CLAIMANTS:</u>  ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

<u>NOTICE TO DISTRICT OF COLUMBIA APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/21/2023 | |

| | | |
|---|---|---|
| Policy Form: ZXE07160100 (07-16) | 33145-9067782-147951 | 1 - BSP01170001 (01-17) |

# Nautilus Insurance Company

<u>NOTICE TO APPLICANTS OF FLORIDA AND CLAIMANTS:</u> **ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.**

<u>NOTICE TO IDAHO CLAIMANTS:</u> **ANY PERSON WHO KNOWLING, AND WITH INTENT TO DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.**

<u>NOTICE TO INDIANA CLAIMANTS:</u> **A PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURER FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION COMMITS A FELONY.**

<u>NOTICE TO APPLICANTS OF KENTUCKY:</u> **ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.**

<u>NOTICE TO CLAIMANTS OF KENTUCKY:</u> **ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.**

<u>NOTICE TO LOUISIANA APPLICANTS AND CLAIMANTS:</u> **ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

<u>NOTICE TO MAINE APPLICANTS AND CLAIMANTS:</u> **IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

<u>NOTICE TO MARYLAND APPLICANTS AND CLAIMANTS:</u> **ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

<u>NOTICE TO MASSACHUSETTS APPLICANTS AND CLAIMANTS:</u> **IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

<u>NOTICE TO MINNESOTA CLAIMANTS:</u> **A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/21/2023 | |

Policy Form: ZXE07160100 (07-16)          33145-9067782-147951          1 - BSP01170001 (01-17)

# Nautilus Insurance Company

<u>NOTICE TO NEW HAMPSHIRE CLAIMANTS:</u> ANY PERSON WHO, WITH A PURPOSE TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS SUBJECT TO PROSECUTION AND PUNISHMENT FOR INSURANCE FRAUD, AS PROVIDED IN RSA 638.20.

<u>NOTICE TO APPLICANTS OF NEW JERSEY:</u> ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL PENALTIES.

<u>NOTICE TO NEW MEXICO APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWLINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

<u>NOTICE TO NEW YORK APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATEDVALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

<u>NOTICE TO OHIO APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

<u>NOTICE TO APPLICANTS, POLICYHOLDERS AND CLAIMANTS OF OKLAHOMA:</u> ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES ANY INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A FELONY AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

<u>NOTICE TO OREGON APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO MAY BE COMMITTING A FRAUDULENT INSURANCE ACT, WHICH MAY BE A CRIME AND MAY SUBJECT THE PERSON TO PENALTIES.

<u>NOTICE TO PENNSYLVANIA APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

<u>NOTICE TO RHODE ISLAND APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/21/2023 | |

Policy Form: ZXE07160100 (07-16)          33145-9067782-147951          1 - BSP01170001 (01-17)

# Nautilus Insurance Company

**NOTICE TO TENNESSEE APPLICANTS AND CLAIMANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

**NOTICE TO VIRGINIA APPLICANTS AND CLAIMANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

**NOTICE TO WASHINGTON APPLICANTS AND CLAIMANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

**NOTICE TO WEST VIRGINIA APPLICANTS AND CLAIMANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/21/2023 | |

Policy Form: ZXE07160100 (07-16)         33145-9067782-147951         1 - BSP01170001 (01-17)

# Nautilus Insurance Company

## W. R. Berkley Corporation
## Notice of Privacy Policies

For additional information about our Privacy Policies and how we collect, use, and share personal information, and to make a consumer request, please see our online Privacy Policy at:  https://www.berkley.com/privacy

If you would like to receive a paper copy of this Notice and/or our Privacy Policies, please contact us at either nic_regulatory@nautilus-ins.com or 480-509-6627.

## Notice of Personal Information Collected
## (Pursuant to the California Consumer Privacy Act (CCPA))

This notice applies only to information received and collected by W. R. Berkley Corporation ("Berkley"), its affiliates and subsidiaries from residents of the state of California.

In this notice, when we refer to "we", "us" or "our", it means Nautilus Insurance Group or one or more other operating units of W. R. Berkley Corporation ("Berkley operating units").

When we refer to "you" and "your" in this notice, we mean a resident of the state of California whose personal information we may collect. More information about W. R. Berkley Corporation and Berkley operating units can be found on https://www.berkley.com/our-business/operating-units.

Below is a table showing the categories of personal information that one or more of the Berkley operating units collect in the course of performing insurance services and how it is used.  Not every Berkley operating unit collects every category of personal information or uses it in all the ways listed below.

[continued on next page]

---

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |

| Effective Date of This Endorsement | Authorized Representative |
|---|---|
| 06/21/2023 | |

Policy Form: ZXE07160100 (07-16)        33156-9067782-147951        2 - BSP01170008 (01-17)

(Page 10 of 55)

# Nautilus Insurance Company

| Personal Information Category | How it is Used |
|---|---|
| **Identifiers**<br>(such as name, address, social security #, driver's license #, etc.)<br><br>**Other Sensitive Information under California Law**<br>*(Examples: physical description, financial information, medical information, etc.)*<br><br>**Characteristics of protected classifications under California or federal law**<br>*(Examples: race, sex, color, religion, national origin, marital status, etc.)*<br><br>**Biometric information**<br>*(Examples: fingerprints, keystroke patterns, gait patterns, sleep/health data, etc.)*<br><br>**Geolocation Data**<br>*(Information to identify physical location)*<br><br>**Audio, electronic, visual, thermal, olfactory, or similar information.**<br>*(Examples: audio and video recordings)*<br><br>**Professional or employment-related information.**<br>*(Example: job history)*<br><br>**Education information**<br>(information not publicly available as defined under federal law) | To perform insurance services for policyholders/beneficiaries/claimants; maintain and improve quality of services; security; prevent fraud and improper use; internal research; identify and repair errors; comply with laws and regulations. |
| **Commercial information**<br>*(Examples: records of personal property, products, and services purchased or obtained, etc.)* | To perform insurance services for policyholders/beneficiaries/claimants; security; prevent fraud and improper use; internal research; collections; comply with laws and regulations. |
| **Internet or other electronic network activity information**<br>*(Examples: browsing/search history, visitor's interaction with a website, etc.)* | To perform insurance services for policyholders/beneficiaries/claimants; maintain and improve quality of services; security; prevent fraud and improper use; internal research; identify and repair errors; comply with laws and regulations. |

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>Charter Homes Building Company | Policy Number<br>REX9067782-0623 |
|---|---|
| Effective Date of This Endorsement<br>06/21/2023 | Authorized Representative |

Policy Form: ZXE07160100 (07-16)     33156-9067782-147951     2 - BSP01170008 (01-17)

# Nautilus Insurance Company

| Inferences drawn from any of the other categories of information. (use of any of the above categories to create a profile about a consumer) | To perform insurance services for policyholders/ beneficiaries/claimants; maintain and improve quality of services; security; prevent fraud and improper use; internal research; identify and repair errors; comply with laws and regulations. |
|---|---|

This notice was updated on January 8, 2020

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured Charter Homes Building Company | Policy Number REX9067782-0623 |
|---|---|
| Effective Date of This Endorsement 06/21/2023 | Authorized Representative |

| Policy Form: ZXE07160100 (07-16) | 33156-9067782-147951 | 2 - BSP01170008 (01-17) |
|---|---|---|

# Nautilus Insurance Company

## CLAIM OR CIRCUMSTANCE REPORTING PROCEDURES

In the event of an incident which may result in a claim, an actual claim or your receipt of suit papers, please follow the following guidelines:

**NOTICE OF EACH INCIDENT, CLAIM OR SUIT SHOULD BE IMMEDIATELY REPORTED TO:**

Berkley Service Professionals
(C\O Berkley Alliance Managers)
757 Third Avenue
10th Floor
New York, NY 10017
844-895-9735
BAMClaims@BerkleyAlliance.com

**TO ENABLE US TO RESPOND MORE QUICKLY AND EFFICIENTLY**, please use our dedicated **E-mail** address at BAMClaims@BerkleyAlliance.com for reporting your notices, and please include any pertinent details of the claim. The E-mail box is set-up with an auto-reply message so that you receive immediate confirmation that the loss notice has been received. Reporting via E-mail is the preferred method of reporting.

When reporting a Claim or Potential Claim, please be sure to include:

- Your Name, Address, Phone Number and Email Address
- Your Policy Number and the Policy Period
- A written narrative of the circumstances surrounding the Claim or Potential Claim
- Dates of the Claim or Potential Claim
- Names of the persons involved
- Identity of anticipated or possible claimants
- Details of any underlying claim, including current status and the amount in controversy or relief demanded
- Any letters of demand or any legal paper which you have received regarding the claim

All notices must be reported as required by your Policy to avoid problems regarding timely notice.

Please provide your insurance agent or broker a copy of all claim and circumstance notices and correspondence sent to Berkley Service Professionals.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/21/2023 | |

Policy Form: ZXE07160100 (07-16)      33148-9067782-147951      3 - BSP07160003 (07-16)

# Nautilus Insurance Company

## IMPORTANT SURPLUS LINES DISCLOSURE NOTICE TO POLICYHOLDERS

- The insurance policy you have purchased is being issued by an insurer that is not licensed by your state. These companies are called "Non-Admitted" or "Surplus Lines" Insurance Companies.

- The Insurance Company is not subject to the financial solvency regulation and enforcement which applies to licensed insurers.

- The Insurance Company does not participate in any of the Insurance Guaranty Funds that may exist in your state. Therefore, these Funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.

- Your State Insurance Department maintains a list of eligible Surplus Lines Insurance Companies approved by the Insurance Commissioner. Ask your agent or broker if the insurer is on that list.

- For additional information about the insurer, you should ask questions of your insurance agent, broker for "Surplus Lines" broker or contact your state Insurance Department.

- If you, as the applicant, required that the insurance policy you have purchased be bound immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this **Policy** within five days of receiving this disclosure. If you cancel coverage during that five-day period, the premium will be prorated and any broker fee charged for this insurance will be returned to you.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |

| Effective Date of This Endorsement | Authorized Representative |
|---|---|
| 06/21/2023 | |

| | | |
|---|---|---|
| Policy Form: ZXE07160100 (07-16) | 33151-9067782-147951 | 4 - BSP07160006 (07-16) |

(Page 14 of 55)

# Nautilus Insurance Company

## SERVICE OF SUIT - PENNSYLVANIA

It is agreed that in the event of the failure of the Insurer(s) or Underwriter(s) herein to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriter(s) herein, at the request of the **Insured** (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. It is further agreed that in any such action instituted against any one of them upon this contract, Insurer(s) or Underwriter(s) will abide by the final decision of such court or of any appellate court in the event of an appeal.

Nothing herein shall foreclose, limit, or constitute a waiver of, any of the Insurer's or Underwriter's rights to select a forum or court, including any of the federal courts of the United States.  This includes any right to commence an action in or remove or transfer an action to the United States District Court or any other court of competent jurisdiction, as permitted by law.

Service of process shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure). When making service of process by mail, such process shall be mailed to John Briggs, or his nominee, at Nautilus Insurance Company, 7233 East Butherus Drive, Scottsdale, Arizona 85260. The above-named is authorized and directed to accept service of process on behalf of the Insurer(s) or Underwriter(s) in any such action or upon the request of the **Insured** (or reinsured) to give a written undertaking to the **Insured** (or reinsured) that it or they will enter a general appearance for the Insurer(s) or Underwriter(s) in the event such an action shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provisions therefor, the Insurer(s) or Underwriter(s) hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom any lawful process may be served in any action, suit or proceeding instituted by or on behalf of the **Insured** (or reinsured) or any beneficiary hereunder arising out of his contract of insurance (or reinsurance), and hereby designates the above-named as the person on whom such process or a true copy thereof shall be served.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/21/2023 | |

Policy Form: ZXE07160100 (07-16)        39794-9067782-147951        5 - ZXE02220012 (02-22)

# Nautilus Insurance Company

## SERVICE OF SUIT - PENNSYLVANIA

It is agreed that in the event of the failure of the Insurer(s) or Underwriter(s) herein to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriter(s) herein, at the request of the **Insured** (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. It is further agreed that in any such action instituted against any one of them upon this contract, Insurer(s) or Underwriter(s) will abide by the final decision of such court or of any appellate court in the event of an appeal.

Nothing herein shall foreclose, limit, or constitute a waiver of, any of the Insurer's or Underwriter's rights to select a forum or court, including any of the federal courts of the United States.  This includes any right to commence an action in or remove or transfer an action to the United States District Court or any other court of competent jurisdiction, as permitted by law.

Service of process shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure). When making service of process by mail, such process shall be mailed to John Briggs, or his nominee, at Nautilus Insurance Company, 7233 East Butherus Drive, Scottsdale, Arizona 85260. The above-named is authorized and directed to accept service of process on behalf of the Insurer(s) or Underwriter(s) in any such action or upon the request of the **Insured** (or reinsured) to give a written undertaking to the **Insured** (or reinsured) that it or they will enter a general appearance for the Insurer(s) or Underwriter(s) in the event such an action shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provisions therefor, the Insurer(s) or Underwriter(s) hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom any lawful process may be served in any action, suit or proceeding instituted by or on behalf of the **Insured** (or reinsured) or any beneficiary hereunder arising out of his contract of insurance (or reinsurance), and hereby designates the above-named as the person on whom such process or a true copy thereof shall be served.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |
| Effective Date of This Endorsement 06/21/2023 | Authorized Representative |

Policy Form: ZXE07160100 (07-16)          39794-9067782-147951          6 - ZXE02220012 (02-22)

# Nautilus Insurance Company

## IN WITNESS PROVISION – NAUTILUS INSURANCE COMPANY

IN WITNESS WHEREOF, the **Company**, an Arizona Corporation, has caused this **Policy** to be executed and attested, and, if required by state law, this **Policy** shall not be valid unless countersigned by our authorized representative.

_Philip S. Welt_

Secretary

President and CEO

Administrative Office:
7233 East Butherus Drive, Scottsdale, Arizona 85260
(480) 509-6627

Service Office:
Berkley Service Professionals, A Division of Berkley Managers Insurance Services, LLC
CA License Number: 0H05115
180 Glastonbury Blvd, 4th Floor, Suite 402, Glastonbury, CT 06033
Email: mplsubmissions@berkleysp.com

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |
| Effective Date of This Endorsement | Authorized Representative |
| 06/21/2023 | |

Policy Form: ZXE07160100 (07-16)          34414-9067782-147951          7 - ZXE03190004 (03-19)

# Nautilus Insurance Company

Page 1 of 1

---

## TRADE AND ECONOMIC SANCTIONS

This Policy does not provide coverage for **Insureds**, transactions or that part of loss, including damages and/or costs of defense that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |
| Effective Date of This Endorsement 06/21/2023 | Authorized Representative |

Policy Form: ZXE07160100 (07-16)  33358-9067782-147951  8 - ZXE07160201 (07-16)

# Nautilus Insurance Company

Page 1 of 1

## MINIMUM EARNED PREMIUM

In consideration of the premium paid for this Policy, section **IV.** of this Policy is amended by the addition of the following:

**IV.** ■% of the premium stated in Item 4. of the Declarations shall be earned as of 06/21/2023.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Charter Homes Building Company | REX9067782-0623 |

| Effective Date of This Endorsement | Authorized Representative |
|---|---|
| 06/21/2023 | |

Policy Form: ZXE07160100 (07-16)          33360-9067782-147951          9 - ZXE07160202 (07-16)

## Excess Liability Insurance Policy

### CLAIMS MADE NOTICE FOR POLICY

NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).

### PLEASE READ AND REVIEW THE POLICY CAREFULLY.

In consideration of the payment of the premium, in reliance on all statements in the application for this Policy and the **Followed Policy** and all other information provided to the **Insurer**, and subject to all provisions of this Policy, the **Insurer** and **Insureds** agree as follows:

## I. Insuring Agreement

This Policy provides excess coverage over the **Underlying Insurance** during the **Policy Period**. Coverage hereunder attaches only after the **Underlying Insurance** has been exhausted by payments for losses and shall then apply in conformance with the provisions of the **Followed Policy** at its inception, except for premium, limit of liability and as otherwise specifically set forth in this Policy and any attached endorsements. In no event shall this Policy grant coverage other than that which is provided by the **Underlying Insurance**.

## II. Extended Reporting Period

If the **Insureds** purchase an extended reporting period under the **Followed Policy**, then the **Insureds** shall have the right to purchase an extension of this Policy in conformance with the terms, conditions and limitations of the extended reporting period of the **Followed Policy**. The right to purchase this Extended Reporting Period is contingent upon payment of an additional premium which will be calculated as a percentage of the full annual premium for this Policy. The additional percentage of premium charged for the Extended Reporting Period under the **Followed Policy** will be used as the percentage of the annual premium charged for purchasing the Extended Reporting Period under this Policy. There is no separate or additional Limit of Liability for this Extended Reporting Period.

## III. Definitions

Whenever printed in boldface type, and whether in the singular or plural form in this Policy, the following terms shall have the meanings indicated below.

A. **Followed Policy** means the policy listed in Item 7. A. of the Declarations.

B. **Insured** means those persons or entities insured under the **Followed Policy**.

C. **Insurer** means the entity issuing this Policy as listed on the Declarations Page.

D. **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this Policy.

E. **Underlying Insurance** means all policies scheduled in Item 7. of the Declarations.

## IV. Additional Policy Terms

Refer to attached endorsements, if applicable.

## V. Limit of Liability

The Limit of Liability stated in Item 3. of the Declarations is the maximum limit of the **Insurer's** liability for all losses under this Policy. Costs of defense are not payable by the **Insurer** in addition to the Limit of Liability. The Limit of Liability available to pay damages or settlements shall be reduced, and may be exhausted by, amounts incurred as costs of defense.

## VI. Maintenance of Underlying Insurance

A. The **Underlying Insurance** shall be maintained in full effect during the **Policy Period**, except for any reduction of the limits of liability available under the **Underlying Insurance** solely by reason of payment of losses thereunder. Failure to comply with the foregoing shall not invalidate this coverage, but the **Insurer** shall not be liable to a greater extent than if this condition had been complied with. To the extent that the **Underlying Insurance** is not maintained in full effect during the **Policy Period**, then the **Insured** shall be deemed to retain any loss for the amount of the limit of liability of the **Underlying Insurance** which is not maintained. A condition of this coverage is that the **Insurer** be notified in writing, as soon as practicable, of any cancellation or alteration of any provision of the **Underlying Insurance**.

B. If the limits of liability of the **Underlying Insurance** are depleted solely as the result of actual payment of losses thereunder by the applicable insurers, this Policy shall, subject to the **Insurer's** Limit of Liability and to the other terms of this Policy, continue to apply to losses as excess insurance over the amount of insurance remaining under the **Underlying Insurance**. If the limits of liability of the **Underlying Insurance** are exhausted solely as a result of payment of losses thereunder, subject to this Policy's provisions the remaining Limit of Liability available under this Policy shall continue for subsequent losses as primary insurance and any retention specified in the **Followed Policy** shall be imposed under this Policy as to each claim made; otherwise no retention shall be imposed under this Policy.

C. This Policy only provides coverage excess of the **Underlying Insurance**. This Policy does not cover any loss not covered by the **Underlying Insurance** except and to the extent that such loss is not paid under the **Underlying Insurance** solely by reason of the reduction or exhaustion of the available **Underlying Insurance** through payment of loss thereunder. If the insurer issuing any of the **Underlying Insurance** fails to pay loss in connection with any claim covered thereunder as a result of the insolvency, bankruptcy, or liquidation of such insurer, then the **Insureds** shall be deemed to be self-insured for the amount of the limit of liability of such **Underlying Insurance** issued by such insurer which is not paid as a result of such insolvency, bankruptcy or liquidation.

## VII. Notices / Claims

The **Insureds** shall, as a condition precedent to their rights under this Policy, notify the **Insurer** of any claim, at the **Insurer's** address stated on the Declarations, in the same manner required by the provisions of the **Followed Policy**. The **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require. The **Insurer** may, at its sole discretion, participate in the investigation, settlement or defense of any claim against any of the **Insureds** even if the **Underlying Insurance** has not been exhausted.

The **Insured** shall not admit liability for or settle any claim or incur costs of defense, which are reasonably likely to involve the Limit of Liability of this Policy, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld.

# "EXHIBIT D"

Case 2:25-cv-01976-JS　　Document 14-3　　Filed 07/07/25　　Page 81 of 231



# CH+N SITE CONSTRUCTION - Trademark Details

*Status:* 702 - Section 8 & 15-Accepted And Acknowledged

**Serial Number**

86051643

**Registration Number**

4521245

**Word Mark**

CH+N SITE CONSTRUCTION

**Status**

**702** - Section 8 & 15-Accepted And Acknowledged

**Status Date**

2019-06-21

**Filing Date**

2013-08-29

**Registration Number**

4521245

**Registration Date**

2014-04-29

**Mark Drawing**

**4000** - Standard character mark Typeset

## Published for Opposition Date

2014-02-11

## Attorney Name

Michael A. Doctrow

## Law Office Assigned Location Code

L60

## Employee Name

RICHARDS, LESLIE L

# Statements

## Disclaimer with Predetermined Text

"SITE CONSTRUCTION"

## Goods and Services

Construction services, namely, concrete paving, site clearing, excavation, pad preparation, grading, and asphalt paving services

## Pseudo Mark

CHARTER HOMES PLUS N CONSTRUCTION

# Classification Information

## International Class

**037** - Building construction; repair; installation services. - Building construction; repair; installation services.

## US Class Codes

100, 103, 106

## Class Status Code

**6** - Active

**Class Status Date**

2013-09-09

**Primary Code**

037

**First Use Anywhere Date**

2013-04-00

**First Use In Commerce Date**

2013-04-00

# Current Trademark Owners

**Party Name**

Charter Homes Building Company

**Party Type**

**30** - Original Registrant

**Legal Entity Type**

**03** - Corporation

**Address**

*Please log in with your Justia account to see this address.*

# Trademark Owner History

**Party Name**

Charter Homes Building Company

**Party Type**

**30** - Original Registrant

**Legal Entity Type**

**03** - Corporation

**Address**
*Please log in with your Justia account to see this address.*

**Party Name**
Charter Homes Building Company

**Party Type**
**20** - Owner at Publication

**Legal Entity Type**
**03** - Corporation

**Address**
*Please log in with your Justia account to see this address.*

**Party Name**
Charter Homes Building Company

**Party Type**
**10** - Original Applicant

**Legal Entity Type**
**03** - Corporation

**Address**
*Please log in with your Justia account to see this address.*

# Correspondences

**Name**
MICHAEL A. DOCTROW

**Address**
*Please log in with your Justia account to see this address.*

# Prior Registrations

Case 2:25-cv-01976-JS   Document 14-3   Filed 07/07/25   Page 85 of 231

| Relationship Type | Reel Number |
|---|---|
| Prior Registration | 3327552 |
| Prior Registration | 3452483 |

# Trademark Events

| Event Date | Event Description |
|---|---|
| 2013-09-02 | NEW APPLICATION ENTERED IN TRAM |
| 2013-09-09 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM |
| 2013-09-10 | NOTICE OF PSEUDO MARK E-MAILED |
| 2013-12-12 | ASSIGNED TO EXAMINER |
| 2013-12-20 | EXAMINERS AMENDMENT -WRITTEN |
| 2013-12-20 | EXAMINERS AMENDMENT E-MAILED |
| 2013-12-20 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED |
| 2013-12-20 | ASSIGNED TO LIE |
| 2013-12-20 | EXAMINER'S AMENDMENT ENTERED |
| 2013-12-23 | APPROVED FOR PUB - PRINCIPAL REGISTER |
| 2014-01-06 | LAW OFFICE PUBLICATION REVIEW COMPLETED |
| 2014-01-22 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED |
| 2014-02-11 | PUBLISHED FOR OPPOSITION |
| 2014-02-11 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED |
| 2014-04-29 | REGISTERED-PRINCIPAL REGISTER |
| 2019-04-29 | COURTESY REMINDER - SEC. 8 (6-YR) E-MAILED |
| 2019-05-13 | TEAS SECTION 8 & 15 RECEIVED |
| 2019-06-21 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL |
| 2019-06-21 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. |
| 2019-06-21 | NOTICE OF ACCEPTANCE OF SEC. 8 & 15 - E-MAILED |

# "EXHIBIT E"





## CHARTER HOMES BUILDING COMPANY (1068207)    ✕

**File Annual Report**    **Request Certificate**

| | |
|---|---|
| Initial Filing Date | 01/17/1989 |
| Status | Active |
| Formed In | PENNSYLVANIA |
| Filing Type | Domestic Business Corporation |
| Filing Subtype | Business |
| Annual Report Due Date | 06/30/2025 |
| Registered Office | 322 N Arch St. Lancaster, PA 17603 County: Lancaster |
| Officers | President ROBERT P BOWMAN 1190 DILLERVILLE RD LANCASTER PA 17601-3110 |
| | Secretary ROBERT P BOWMAN 1190 DILLERVILLE RD LANCASTER PA 17601-3110 |
| | Treasurer ROBERT P BOWMAN 1190 DILLERVILLE RD LANCASTER PA 17601-3110 |

**View History**    **Request Access**

33196036.1

# "EXHIBIT F"

MAY 1 5 2024

 ARGO PRO
*Member Argo Group*

May 8, 2024

<u>*Via Email and Certified Mail Return Receipt Requested:*</u>
Mr. Jason Grupe
Chief Financial Officer
Charter Homes Building Company
322 N Arch St
Lancaster, PA 17603
jgrupe@charterhomes.com

|  |  |  |
|---|---|---|
| Re: | Claim No.: | **L-300-1046266** |
|  | Policy No.: | **121 RE 0201030-02** |
|  | Named Insured: | **Charter Homes Building Company** |
|  | Purported Insureds: | **CH&N Construction, Inc., CH&N Site Construction, Inc. and CH&N Supply Co.** |
|  | <u>Claimant:</u> | <u>**Michael Cooney**</u> |

Dear Mr. Grupe:

We write to follow up on Peleus' letters of August 16, 2023, October 18, 2023, January 19, 2024, February 1, 2024, and April 4, 2024 which requested information necessary for Peleus to evaluate potential coverage for this Claim. This will confirm Peleus' receipt of your correspondence of December 7, 2023, April 10, 2024 and April 11, 2024 which provided information responsive to Peleus' requests.

Now that Peleus has reviewed the information provided, we write to supplement Peleus' letters of August 16, 2023 and January 19, 2024, and to update Peleus' coverage position.  Peleus will not reiterate what is set forth in its prior correspondence regarding this matter.  Rather, to the extent appropriate, Peleus incorporates its prior letters herein by reference.  Accordingly, the coverage position set forth in this letter will supersede the position set forth by Peleus in the August 16, 2023 and January 19, 2024 letters and any prior correspondence concerning this matter.  Briefly, based upon the information provided with your correspondence of December 7, 2023, April 10, 2024 and April 11, 2024, Peleus Policy No. 121 RE 0201030-02 provides no coverage to CH&N Construction, Inc., CH&N Site Construction, Inc. and/or CH&N Supply Co. for the allegations asserted in *Michael Cooney v. Buck Motorsports Park, LLC, CH&N Construction, Inc., CH&N Site Construction, Inc., CH&N Supply Co. and Buck Motorsports, Inc.*, C.A. No. 23-2346 ("<u>Cooney</u> Complaint"), as the matter falls outside the scope of the Insuring Agreements.  As will be further explained below, Peleus' position is that, based on the documents and information provided, CH&N Construction, Inc., CH&N Site Construction, Inc. and CH&N Supply Co. do not fall within the definition of "Insured" under Peleus Policy No. 121 RE 0201030-02.  As we previously advised, the Peleus Policy provides no coverage for any entity that does not qualify as an "Insured."  Peleus has no duty to defend against any matter to which this insurance does not apply.

**Accordingly, this letter is intended as a formal denial of coverage for CH&N Construction, Inc., CH&N Site Construction, Inc. and CH&N Supply Co. in this matter under Policy No. 121 RE 0201030-02.  We specifically understand that CH&N Construction, Inc., CH&N Site Construction, Inc. and CH&N Supply Co. are currently being defended against this claim by its General Liability carrier, Acuity.  We urge each**

**Mailing Address:** PO Box 469012
San Antonio, TX  78246

Mr. Jason Grupe
May 8, 2024
Page 2 of 5

of these entities to also notify any other insurer(s) that may provide coverage for this Claim as soon as possible and to take all actions to protect their respective interests in defending this Claim, including tendering their defenses to any and all entities that may owe contractual or common law indemnification.

Once you have had an opportunity to review this letter, we would be pleased to discuss any aspect of this matter with you in further detail.

**POLICY INFORMATION AND COVERAGE POSITION**

As you are aware, Peleus Insurance Company ("Peleus" or "Peleus") issued Real Estate Developers PROtect℠ Professional Liability Insurance Policy No. 121 RE 0201030-02 ("Policy" or "Peleus Policy") to Named Insured Charter Homes Building Company (**"Named Insured"** or **"Insured¹"**) for the policy period from June 21, 2023 to June 21, 2024 ("Policy" or "Peleus Policy"). The Retroactive Date of the Policy is June 21, 2017.

The limits of liability are $3 million each **Claim** and $3 million in the aggregate, subject to a $75,000 deductible each **Claim**. **Defense Costs**, including fees, costs and expenses charged by any lawyer designated by Peleus to defend any **Insured**, are paid within the limits of liability, and not in addition to those limits. Section II.C.1 in the Policy provides, in relevant part, that payment of the deductible is a condition precedent to payment of any **Damages** or **Defense Costs** by Peleus, and must be paid within 30 days of Peleus' written request.

As was set forth in our prior correspondence, we call your attention to Section III – Definitions of the Peleus Policy which provides, in relevant part:

### SECTION III – DEFINITIONS

O. **Named Insured** means the person or entity designated in Item 1 of the Declarations and any **Predecessor** of such entity.

Item 1 of the Peleus Policy identifies the **Named Insured** as "Charter Homes Building Company".

L. **Insured** means:

1. [Charter Homes Building Company] and any **Subsidiary**;
2. any past, present or future owner, principal, officer, director, partner, stockholder, shareholder, member, manager or employee of [Charter Homes Building Company] or any Subsidiary, but only while performing **Professional Services** on behalf of [Charter Homes Building Company] or any **Subsidiary**;

\*\*\*

5. all joint ventures entered into, but only for liability arising out of **Real Estate Development Services** performed by any **Insured** as a participant in a joint venture project; or,

---

¹ Words and phrases in bold font have specific meanings as defined by the Policy. We refer you to the Policy with respect to any definitions that are not quoted herein.

Mr. Jason Grupe
May 8, 2024
Page 3 of 5

     6.    any employee, intern, volunteer or independent contractor of [Charter Homes Building Company] or any **Subsidiary**, but only as respects **Real Estate Development Services** rendered on behalf of [Charter Homes Building Company] or any **Subsidiary**.

II. **Subsidiary** means:

1. any entity in which more than 50% of the outstanding voting securities or voting rights representing the present right to vote for election of directors, officers, or any equivalent executives, is owned or controlled by [Charter Homes Building Company], either directly or indirectly on or before [June 21, 2023];
2. any entity created or acquired by [Charter Homes Building Company] after [June 21, 2023], if the gross revenues of the created or acquired entity for the prior year are less than 50% of the annual gross revenues of [Charter Homes Building Company] as reflected in [Charter Homes Building Company]'s most recent audited consolidated financial statement prior to such creation or acquisition; or
3. any entity created or acquired by [Charter Homes Building Company] after [June 21, 2023] that does not fall within subsection 2. above, but such entity will be a **Subsidiary** only for either: (i) a period of 30 days from the date such entity was created or acquired by [Charter Homes Building Company]; or (ii) until [June 21, 2024], whichever occurs first.

\*\*\*

Provided, however, this policy will only apply to **Wrongful Acts** committed or allegedly Committed after the date an entity becomes a **Subsidiary** and prior to the date such entity ceases to be a **Subsidiary**.

By operation of the "SPECIAL PURPOSE ENTITY ENDORSEMENT," Definition **J. Insured** set forth in Section III - DEFINITIONS is amended to include...a **Special Purpose Entity** which is further defined to mean any entity:

1. in which a person who has a financial interest in [Charter Homes Building Company] also has a financial interest;
2. of which any person described in subpart 1. above has control or otherwise has the ability to direct the managerial decision at any time during the performance of the **Real Estate Development Services** giving rise to the claim; and
3. which is created for the purpose of owning and controlling a specific property for development.

Provided always, the **Retroactive Date** applicable to each **Special Purpose Entity** will be the date such entity is established and not the date set forth on the Declarations.

Mr. Jason Grupe
May 8, 2024
Page 4 of 5

By operation of the "BLANKET ADDITIONAL INSURED(S) ENDORSEMENT," under SECTION III – DEFINITIONS, the definition of **Insured** is further amended by the addition of the following:

> **Insured** also includes the individual or entity shown in the SCHEDULE above, but solely with respect to liability resulting from a **Wrongful Act** caused, or alleged to be caused, in whole or in part, by the **Insured** or by those acting on the **Insured**'s behalf in the performance of the **Insured**'s **Professional Services**.
>
> There shall be no coverage for any individual or entity listed on the SCHEDULE for its independent **Wrongful Acts**.
>
> Nothing herein shall serve to confer any rights or duties on any individual or entity listed on the SCHEDULE under this Policy, other than as provided herein.

The Name of Individual or Entity identified in the Schedule is:

> Any individual or entity required to be added as an Additional Insured pursuant to a written contract with [Charter Homes Building Company] covered hereunder.

The <u>Cooney</u> Complaint was not filed against Charter Homes Building Company, nor does it allege any wrongdoing by Charter Homes Building Company. Based on the information provided to Peleus, we understand that none of the defendant entities, CH&N Construction, Inc., CH&N Site Construction, Inc. and CH&N Supply Co., qualify as "Insureds" as defined under the Policy because:

1. None of these entities is a joint venture and none of these entities was performing **Real Estate Development Services** as a participant in a joint venture project with respect to this Motor Park;
2. None of these entities is a past, present or future owner, principal, officer, director, partner, stockholder, shareholder, member, manager or employee of Charter Homes Building Company or any **Subsidiary**;
3. None of these entities were performing or rendering **Professional Services** at the Buck Motorsports Park on behalf of Charter Homes Building Company or any **Subsidiary**;
4. None of these above-listed entities is a **Subsidiary** of Charter Homes Building Company;
5. None of these above-listed entities is a **Special Purpose Entity** as defined;
6. None of these above-listed entities is a past, present or future owner, stockholder, shareholder or member of Charter Homes Building Company or any **Subsidiary**;
7. At the time of the conduct alleged in the Complaint, none of the above-listed entities was an independent contractor of Charter Homes Building Company or any **Subsidiary**; and/or
8. Charter Homes Building Company was not required by a covered contract to add any of these entities as an Additional Insured.

**The Policy provides no coverage for any entity that does not qualify as an "Insured".**

Pursuant to the terms of the Peleus Policy, Peleus continues to reserve all rights and defense that are or may be available to it under the Policy and applicable law and equity. Peleus reserves the right to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon the provisions, terms, exclusions, endorsements, and/or definitions found in the Policy and/or additional



Mr. Jason Grupe
May 8, 2024
Page 5 of 5

facts that may come to Peleus' attention. Nothing stated herein and no further action taken by Peleus or on its behalf should be construed as a waiver of any of its rights under the Policy.

Once you have had an opportunity to review this letter, we would be pleased to discuss any aspect of this matter further with you or anyone else on behalf of CH&N Construction, Inc., CH&N Site Construction, Inc. and CH&N Supply Co. Also, should any of these entities disagree with Peleus' conclusion, Peleus will gladly consider any additional documents, information and/or legal authority you provide to the undersigned.

Sincerely,

*Victoria Schaffer*

Victoria Schaffer
Senior Technical Claims Specialist
Argo Pro Claims
victoria.schaffer@argogroupus.com

cc:

      Susan D. Ritchey, CIC, CRM
      sritchey@horstinsurance.com

      Greg Quinn
      gquinn@one80.com

# "EXHIBIT G"



Acuity, A Mutual Insurance Company

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

## Renewal Declarations

First Named Insured and Address:

CHARTER HOMES BUILDING COMPANY
322 N ARCH ST
LANCASTER PA 17603

Agency Name and Number:

HORST INSURANCE
7735-AB

Policy Number:  X53010

| Policy Period: | Effective Date: | 10-01-22 |
| | Expiration Date: | 10-01-23 |

In return for the payment of the premium and subject to all the terms of the policy, we agree to provide the insurance coverage as stated in the policy.

12:01 A.M. standard time at your mailing address shown in the declarations

**This policy is nonparticipating with regard to paying dividends to·the policyholder.**

### COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART

| Form Number | Form Title | Premium |
| --- | --- | --- |
| CG-0001R (12-11) | Commercial General Liability Coverage Form . . . . . . . . . . . . . . . . . . . . . . .$ | |
| CG-2147F (12-07) | Employment - Related Practices Exclusion . . . . . . . . . . . . . . . . . . . . . . . . | |
| IL-0017F (11-98) | Common Policy Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| IL-0021F (03-14) | Nuclear Energy Liability Exclusion - Broad Form . . . . . . . . . . . . . . . . . . . | |
| IL-7012 (01-18) | Asbestos Exclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CG-2167F (12-04) | Fungi or Bacteria Exclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CG-2292F (12-07) | Snow Plow Operations Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| IL-0246F (03-14) | Pennsylvania Changes - Cancellation and Nonrenewal . . . . . . . . . . . . . . . | |
| IL-0120R (03-14) | Pennsylvania Changes - Defense Costs . . . . . . . . . . . . . . . . . . . . . . . . . | |
| IL-7092 (02-11) | Amendment to Definition of Occurrence . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CG-0068F (05-09) | Recording and Distribution of Material or Info in Violation of Law Exclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CG-7301 (12-19) | Acuity Enhancements - General Liability . . . . . . . . . . . . . . . . . . . . . . . . | 36,092.00 |
| IL-7002 (10-90) | Notice of Cancellation Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CG-2010F (04-13) | Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Org . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 675.00 |
| CG-2037F (04-13) | Additional Insured - Owners, Lessees or Contractors - Completed Operations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 600.00 |
| CG-2187R (01-15) | Conditional Exclusion of Terrorism (Relating to Disposition of Federal Act) | |
| CG-2033R (06-13) | Additional Insured - Owners, Lessees or Contractors - Automatic Status . | 1,500.00 |
| CG-7277 (06-13) | Additional Insured - Completed Ops Auto Status (Owners, Lessees or Contractors) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 350.00 |
| CG-2106F (05-14) | Exclusion-Access of Confidential or Personal Info/Data with Limited BI  . . | |
| CG-2109F (06-15) | Exclusion - Unmanned Aircraft . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CG-2011F (04-13) | Additional Insured - Managers or Lessors of Premises . . . . . . . . . . . . . . | 50.00 |
| CG-2616F (04-13) | Pennsylvania Changes - Pesticide Applicator - Limited Pollution Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 100.00 |

**Acuity File - 001**

Page 2
Policy Number:     X53010
Effective Date:     10-01-22

| Form Number | Form Title | Premium |
|---|---|---|
| CG-2417F (10-01) | Contractual Liability-Railroads | 550.00 |
| CG-0300F (01-96) | Deductible Liability Insurance | |
| CG-2001R (04-13) | Primary and Noncontributory - Other Insurance Condition | |
| IL-8000 (01-90) | Manuscript Endorsement | |
| CG-7321 (01-15) | Cap on Losses from Certified Acts of Terrorism | 7,217.00 |
| CG-7323 (01-15) | Exclusion of Punitive Damages Related to a Certified Act of Terrorism | |
| IL-7082 (12-20) | Disclosure Pursuant to Terrorism Risk Insurance Act | |
| IL-7149 (07-20) | Cyber Suite Coverage | 308.00 |
| IL-7151 (07-20) | Cyber Suite Schedule | |
| IL-7164 (07-20) | Pennsylvania Changes - Cyber Suite Coverage | |
| CG-7278 (08-19) | Exclusion - Habitational Exterior Finish Systems | |

**Advance Endorsement Premium** .......................................$  **47,442.00**

## PREMIUM SUMMARY

Advance Schedule Premium ...............................................$  721,831.00

Advance Endorsement Premium ..........................................  47,442.00

**Total Advance Premium** ...............................................$  **769,273.00**

The Total Advance Premium shown above is based on the exposures you told us you would have when this coverage part began. We will audit this coverage part in accordance with Section IV - Conditions, item 5 Premium Audit at the close of the audit period.

## LIMITS OF INSURANCE

General Aggregate Limit (Other Than Products-Completed Operations) ...............$  3,000,000

Products-Completed Operations Aggregate Limit ..................................  3,000,000

Personal and Advertising Injury Limit (Any One Person or Organization) ..............  1,000,000

Each Occurrence Limit .......................................................  1,000,000

Damage to Premises Rented to You Limit (Any One Premises) .....................  500,000

Medical Expense Limit (Any One Person) ......................................  10,000

Acuity Enhancements - General Liability .................................... See CG-7301

## SCHEDULE OF LIABILITY CLASSIFICATIONS

CG-7000(12-08)

Page 3
Policy Number: X53010
Effective Date: 10-01-22

| Unit No. | Classification Description | Class Code | Premium Basis[1] | | Rates Premises | Products | Advance Premium |
|---|---|---|---|---|---|---|---|
| 001 | Real Estate Development Property - Products - completed operations for this classification are subject to the General Aggregate Limit | 47051 | 2 | AC | 17.140 | Included | $ 34.00 |
| | Damage to Premises Rented to You | | | | | | 68.00 |
| 002 | Carpentry-Construction of Residential Property Not Exceeding 3 Stories in Height | 91340 | 276,500 | PA | 31.005 | 17.771 | 13,487.00 |
| 003 | Contractors-Executive Supervisors or Executive Superintendents - Products - completed operations for this classification are subject to the General Aggregate Limit | 91580 | 2,811,000 | PA | 39.926 | Included | 112,232.00 |
| 004 | Contractors-Subcontracted Work-In Connection With Building Construction, Reconstruction, Repair or Erection - 1 or 2 Family Dwellings | 91583 | 92,000,000 | TC | 1.292 | 2.281 | 328,716.00 |
| 005 | Excavation | 94007 | 2,056,601 | PA | 52.537 | 11.494 | 131,687.00 |
| 006 | Grading of Land | 95410 | 3,084,901 | PA | 21.158 | 6.602 | 85,637.00 |
| 008 | Real Estate Development Property - Products - completed operations for this classification are subject to the General Aggregate Limit | 47051 | 13 | AC | 17.140 | Included | 223.00 |
| 009 | Real Estate Development Property - Products - completed operations for this classification are subject to the General Aggregate Limit | 47051 | 171 | AC | 17.140 | Included | 2,931.00 |
| 010 | Real Estate Development Property - Products - completed operations for this classification are subject to the General Aggregate Limit | 47051 | 61 | AC | 17.140 | Included | 1,046.00 |
| 011 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 1,600 | AR | 49.666 | Included | 79.00 |
| 012 | Dwellings - 1 Family - Lessor's Risk Only - Products - completed operations for this classification are subject to the General Aggregate Limit | 63010 | 1 | DW | 95.600 | Included | 96.00 |
| 013 | Real Estate Development Property - Products - completed operations for this classification are subject to the General Aggregate Limit | 47051 | 13 | AC | 17.140 | Included | 223.00 |

CG-7000(12-08)

SO 01 09/16/22
**Acuity File - 003**

Page 4
Policy Number:    X53010
Effective Date:    10-01-22

| Unit No. | Classification Description | Class Code | Premium Basis[1] | | Rates Premises | Products | Advance Premium |
|---|---|---|---|---|---|---|---|
| 014 | Dwellings - 1 Family - Lessor's Risk Only - Products - completed operations for this classification are subject to the General Aggregate Limit | 63010 | 13 | DW | 95.600 | Included | 1,243.00 |
| 015 | Real Estate Development Property - Products - completed operations for this classification are subject to the General Aggregate Limit | 47051 | 18 | AC | 17.140 | Included | 309.00 |
| 016 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 1,505 | AR | 49.666 | Included | 75.00 |
| | Damage to Premises Rented to You | | | | | | 90.00 |
| 017 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 3,048 | AR | 49.666 | Included | 151.00 |
| | Damage to Premises Rented to You | | | | | | 93.00 |
| 018 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 700 | AR | 49.666 | Included | 35.00 |
| 019 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 1,408 | AR | 49.666 | Included | 70.00 |
| 020 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 1,002 | AR | 49.666 | Included | 50.00 |

CG-7000(12-08)

SO 01 09/16/22

**Acuity File - 004**

| Unit No. | Classification Description | Class Code | Premium Basis[1] | | Rates Premises | Products | Advance Premium |
|---|---|---|---|---|---|---|---|
| 021 | Snow and Ice Removal - Contractor | 99310 | 51,500 | PA | 16.708 | 83.777 | 5,175.00 |
| 022 | Apartment Buildings - Products - Completed Operations for this classification are subject to the General Aggregate Limit. | 60010 | 3 | UN | 53.111 | Included | 159.00 |
| 023 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 2,406 | AR | 49.666 | Included | 119.00 |
| | Damage to Premises Rented to You | | | | | | 135.00 |
| 024 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 1,710 | AR | 49.666 | Included | 85.00 |
| | Damage to Premises Rented to You | | | | | | 135.00 |
| 025 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 1,476 | AR | 49.666 | Included | 73.00 |
| | Damage to Premises Rented to You | | | | | | 135.00 |
| 026 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 1,476 | AR | 49.666 | Included | 73.00 |
| 027 | Real Estate Development Property - Products - completed operations for this classification are subject to the General Aggregate Limit | 47051 | 4 | AC | 17.140 | Included | 69.00 |
| | Damage to Premises Rented to You | | | | | | 90.00 |

| Unit No. | Classification Description | Class Code | Premium Basis[1] | | Rates Premises | Products | Advance Premium |
|---|---|---|---|---|---|---|---|
| 028 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 2,016 | AR | 49.666 | Included | 100.00 |
| 029 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 1,000 | AR | 49.666 | Included | 50.00 |
| | Damage to Premises Rented to You | | | | | | 85.00 |
| 030 | Carpentry-Construction of Residential Property Not Exceeding 3 Stories in Height | 91340 | If Any | PA | 31.005 | 17.771 | |
| | Damage to Premises Rented to You | | | | | | 85.00 |
| 031 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 2,000 | AR | 49.666 | Included | 99.00 |
| | Damage to Premises Rented to You | | | | | | 75.00 |
| 032 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 7,684 | AR | 49.666 | Included | 382.00 |
| | Damage to Premises Rented to You | | | | | | 75.00 |
| 033 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 500 | AR | 49.666 | Included | 25.00 |
| | Damage to Premises Rented to You | | | | | | 85.00 |

CG-7000(12-08)

| Unit No. | Classification Description | Class Code | Premium Basis[1] | | Rates Premises | Products | Advance Premium |
|---|---|---|---|---|---|---|---|
| 034 | Water Mains or Connection Construction | 99946 | 600,628 | PA | 33.014 | 6.005 | 23,436.00 |
| 035 | Dwellings - 1 Family - Lessor's Risk Only - Products - completed operations for this classification are subject to the General Aggregate Limit | 63010 | 1 | DW | 95.600 | Included | 96.00 |
| 036 | Dwellings - 1 Family - Lessor's Risk Only - Products - completed operations for this classification are subject to the General Aggregate Limit | 63010 | 1 | DW | 95.600 | Included | 96.00 |
| 037 | Dwellings - 1 Family - Lessor's Risk Only - Products - completed operations for this classification are subject to the General Aggregate Limit | 63010 | 1 | DW | 95.600 | Included | 96.00 |
| 038 | Dwellings - 1 Family - Lessor's Risk Only - Products - completed operations for this classification are subject to the General Aggregate Limit | 63010 | 1 | DW | 95.600 | Included | 96.00 |
| 039 | Dwellings - 1 Family - Lessor's Risk Only - Products - completed operations for this classification are subject to the General Aggregate Limit | 63010 | 1 | DW | 95.600 | Included | 96.00 |
| 040 | Dwellings - 1 Family - Lessor's Risk Only - Products - completed operations for this classification are subject to the General Aggregate Limit | 63010 | 1 | DW | 95.600 | Included | 96.00 |
| 041 | Model Homes - Products - completed operations for this classification are subject to the General Aggregate Limit | 46362 | 1 | UN | 548.337 | Included | 548.00 |
| | Damage to Premises Rented to You | | | | | | 93.00 |
| 042 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 3,000 | AR | 49.666 | Included | 149.00 |
| | Damage to Premises Rented to You | | | | | | 288.00 |
| 043 | Real Estate Development Property - Products - completed operations for this classification are subject to the General Aggregate Limit | 47051 | 23 | AC | 17.140 | Included | 394.00 |

CG-7000(12-08)

Page 8
Policy Number: X53010
Effective Date: 10-01-22

| Unit No. | Classification Description | Class Code | Premium Basis[1] | | Rates Premises | Products | Advance Premium |
|---|---|---|---|---|---|---|---|
| 044 | Model Homes - Products - completed operations for this classification are subject to the General Aggregate Limit | 46362 | 1 | UN | 548.337 | Included | 548.00 |
| | Damage to Premises Rented to You | | | | | | 288.00 |
| 045 | Stone Crushing | 59481 | 2,500,000 | GS | 1.112 | .269 | 3,453.00 |
| 046 | Real Estate Development Property - Products - completed operations for this classification are subject to the General Aggregate Limit | 47051 | 5 | AC | 17.140 | Included | 86.00 |
| 047 | Model Homes - Products - completed operations for this classification are subject to the General Aggregate Limit | 46362 | 1 | UN | 1225.865 | Included | 1,226.00 |
| | Damage to Premises Rented to You | | | | | | 120.00 |
| 048 | Buildings or Premises - Bank or Office - NOC (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61226 | 970 | AR | 401.923 | Included | 390.00 |
| 049 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 5,972 | AR | 111.103 | Included | 664.00 |
| 050 | Carpentry-Construction of Residential Property Not Exceeding 3 Stories in Height | 91340 | If Any | PA | 31.005 | 17.771 | |
| 051 | Carpentry-Construction of Residential Property Not Exceeding 3 Stories in Height | 91340 | If Any | PA | 31.005 | 17.771 | |
| 052 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 1,949 | AR | 49.666 | Included | 97.00 |
| 053 | Apartment Buildings - Products - Completed Operations for this classification are subject to the General Aggregate Limit. | 60010 | 4 | UN | 53.111 | Included | 212.00 |
| 054 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For | 61217 | 1,000 | AR | 49.666 | Included | 50.00 |

SO 01 09/16/22

Acuity File - 008

Page 9
Policy Number:        X53010
Effective Date:       10-01-22

| Unit No. | Classification Description | Class Code | Premium Basis[1] | | Rates Premises | Products | Advance Premium |
|---|---|---|---|---|---|---|---|
| | Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | | | | | | |
| 055 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 5,791 | AR | 49.666 | Included | 288.00 |
| 056 | Apartment Buildings - Products - Completed Operations for this classification are subject to the General Aggregate Limit. | 60010 | 3 | UN | 53.111 | Included | 159.00 |
| 057 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 2,572 | AR | 49.666 | Included | 128.00 |
| 058 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 9,000 | AR | 49.666 | Included | 447.00 |
| 059 | Museums (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 46426 | 2,000 | AR | 123.448 | Included | 247.00 |
| 060 | Museums (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 46426 | 1,000 | AR | 123.448 | Included | 123.00 |
| 061 | Apartment Buildings - Products - Completed Operations for this classification are subject to the General Aggregate Limit. | 60010 | 4 | UN | 81.533 | Included | 326.00 |
| 062 | Buildings or Premises-Bank or Office -Mercantile or Mfg-Maintained by the Insured-Lessor's Risk Only (For Profit) - Products - completed operations for this classification are subject to the General Aggregate Limit | 61217 | 2,474 | AR | 76.366 | Included | 189.00 |

SO 01 09/16/22
Acuity File - 009

| Unit No. | Classification Description | Class Code | Premium Basis[1] | | Rates Premises | Rates Products | Advance Premium |
|---|---|---|---|---|---|---|---|
| 063 | Apartment Buildings - Products - Completed Operations for this classification are subject to the General Aggregate Limit. | 60010 | 4 | UN | 81.533 | Included | 326.00 |
| | Damage to Premises Rented to You | | | | | | 548.00 |
| 064 | Model Homes - Products - completed operations for this classification are subject to the General Aggregate Limit | 46362 | 1 | UN | 548.337 | Included | 548.00 |

**Advance Schedule Premium** ........................................... $   **721,831.00**

[1] AC = Acre - Rates Apply Per Unit
PA = Payroll - Rates Apply Per 1,000
TC = Total Cost - Rates Apply Per 1,000
AR = Area/Square Feet - Rates Apply Per 1,000
DW = Dwelling - Rates Apply Per Unit
UN = Units - Rates Apply Per Unit
GS = Gross Sales - Rates Apply Per 1,000

**AUDIT PERIOD**

Annual

**FIRST NAMED INSURED IS:**

ORGANIZATION OTHER THAN PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY

**ADDITIONAL NAMED INSUREDS**

WHO IS AN INSURED (Section II) includes the following Additional Named Insureds:

VILLAGE HOME BUILDERS INC
STONEBRIDGE BUILDERS INC
STONEBRIDGE RESIDENTIAL LLC
CHARTER HOMES AT DARTMOUTH GREEN INC
CHARTER HOMES AT MILL CREEK INC
CHARTER HOMES AT STONE CREEK INC
CHARTER HOMES AT VERSANT INC
CHARTER HOMES AT SOMERSET INC
CHARTER HOMES AT WESTWOOD GLEN INC
CHARTER HOMES AT LANCASTER INC
CHARTER HOMES AT HARRISBURG INC
CHARTER HOMES AT YORK INC
CHARTER HOMES AT CHANTICLEER INC
CHARTER HOMES AT GRANDVIEW INC

CG-7000(12-08)

Page 11
Policy Number:        X53010
Effective Date:       10-01-22

CHARTER HOMES VERDANDA INC
CHARTER HOMES AT WEST CREEK INC
CHARTER HOMES AT THE PRESERVE INC
CHARTER HOMES AT SAGE HILL INC
CHARTER HOMES AT STRASBURG INC
CHARTER HOMES AT SPRINGWOOD INC
CHARTER HOMES AT FLORIN HILL INC
CHARTER HOMES AT WINSLETT INC
CHARTER HOMES AT WESTWOOD GREEN INC
CHARTER HOMES AT THE LAKES INC
HEMPFIELD VALLEY PARTNERSHIP
BAY PROPERTIES LP
BLC PROPERTIES LP
CHARTER PROPERTIES
CYGNET PARTNERS LP
CYGNET DEVELOPMENT LLC
CHARTER COMMUNITIES LLC
GREENFIELD COMMUNITIES LLC
CHARTER PROPERTIES LLC
CHARTER HOMES DEVELOPMENT CO
RESERVE PARTNERS INC
CHARTER MATERIAL COMPANY
THE STONE BRIDGE PARTNERSHIP
CSB PARTNERS LP
CSB GENERAL LLC
THE PRESERVE AT HAMPDEN
THE FLORIN HILL PARTNERSHIP
CH&N SUPPLY CO
CHARTER COLORS
CHARTER HOMES AT WALDEN INC
CFH GENERAL LLC
JUI INC
CHARTER LAND EXCHANGE LLC
CYGNET MORTGAGE LLC
CHARTER HOMES BUILDING CO T/A MILL CREEK GENERAL STORE
CHARTER HOMES AT EVERGREEN INC
CFH PARTNERS LP
HAMPTON CHASE LP
REGENT SETTLEMENTS LP
CHARTER HOMES AT FAIR HILL INC
CHARTER EXCAVATION
CH&N CONSTRUCTION
CYGNET REAL ESTATE INC
CYGNET REAL ESTATE
CHARTER HOMES & NEIGHBORHOODS
CHARTER HOMES AT HERSHEY INC
REGENT HOME MORTGAGE LLC
CHARTER HOMES AT KENDALE INC
BOWDES LLC
BOW FH INVESTORS LP
RB FHI LLC
CHARTER HOMES AT SPRING HILL INC
CH&N CONSTRUCTION INC
EATON MORTGAGE LLC
CHARTER HOMES AT ARCONA INC
CHARTER HOMES AT CROSSROADS INC

CG-7000(12-08)

Page 12
Policy Number:    X53010
Effective Date:    10-01-22

CHARTER HOMES AT MERIDIAN INC
CDH GENERAL LLC
CDH PARTNERS LP
CHAL LLC
ARCONA LAND COMPANY
CHARTER LAND EXCHANGE LP
CHARTER HOMES AT MANCHESTER INC
CHARTER HOMES AT HIGHLANDS INC
CHARTER HOMES AT FAIRMONT INC
CHARTER HOMES AT HIGHPOINT INC
CHARTER HOMES AT LAUREL HILL INC
WALDEN CROSSROADS PROPERTIES LP
WCP PARTNERS LP
WCP GP LLC
WCP PARTNERS GP LLC
CHARTER HOMES AT ARCADIA INC
CHARTER HOMES DEVELOPMENT VII INC
CHARTER HOMES DEVELOPMENT VIII INC
CHARTER HOMES AT WHISPERING PINES INC FKA CHARTER HOMES
CHARTER HOMES AT CALVERT HILL INC
CHARTER HOMES AT WEST WINDING INC
CHARTER HOMES AT THE POINT INC
CH&N SITE CONSTRUCTION INC
CHARTER HOMES AT WOODSIDE INC
CHARTER HOMES AT SUMMIT INC
CHARTER HOMES DEVELOPMENT PROPERTIES XVIII INC
CHARTER HOMES AT CRESCENT INC
CHARTER HOMES DEVELOPMENT PROPERTIES XX INC
CHARTER HOMES DEVELOPMENT PROPERTIES XXI INC
CHARTER HOMES DEVELOPMENT PROPERTIES XXII INC
CHARTER HOMES AT ARCONA STRAND INC
HUNDINGTON INVESTMENTS LLC
GRANDVIEW LANE PROPERTIES LP
GL PARTNERSHIP LP
GLP GP LLC
GL PARTNERS GP LLC
CHARTER HOMES AT WOODBRIDGE INC
CHARTER HOMES AT ELMHURST INC
CH&N EXCAVATION
ARCONA STRAND LLC
CHARTER HOMES AT HASTINGS INC
CP MANAGEMENT SERVICES INC
ARCONA ROAD PROPERTIES LP
ARP PARTNERS LP
ARP GP LLC
ARP PARTNERS GP LLC
ROCHESTER ROAD INVESTMENT COMPANY
MRP9.3 LLC
CHARTER HOMES AT BELMONT INC
COLLIER LAND INVESTMENT COMPANY INC
ARCONA ROAD PROPERTIES II LP
ARP PARTNERS II LP
ARP PARTNERS II GP LLC
ARP II GP LLC
CH+N GENERAL CONSTRUCTION
HASTINGS PROPERTIES I LP

CG-7000(12-08)

SO 01 09/16/22
**Acuity File - 012**

Page 13
Policy Number:          X53010
Effective Date:         10-01-22

HP I GP LLC
CHARTER HOMES AT MEEDER INC
HP PARTNERS I LP
HP PARTNERS I GP LLC
ROCHESTER ROAD PROPERTIES I LP
RRP I GP LLC
RRP PARTNERS I LP
RRP PARTNERS I GP LLC
ARCONA COMMONS PROPERTIES I LP
ACP I GP LLC
ACP PARTNERS I LP
ACP PARTNERS I GPLLC
IDEA COFFEE ARCONA LLC
ARS PARTNERS LP
AR PARTNERS GP LLC
CYGNET PROPERTIES
CP MANAGEMENT INC
MEEDER PROPERTIES I LP
MP PARTNERS I LP
MP I GP LLC
MP PARTNERS I GP LLC
SCP GP LLC
SCP PARTNERS LP
SCP PARTNERS GP LLC
SITE CONSTRUCTION PROPERTIES LP
CYGNET GENERAL CONSTRUCTION LLC
CHARTER HOMES AT TATTERSALL INC
CHARTER HOMES AT RIVERBEND INC
TATTERSALL NEIGHBORHOOD ASSOCIATION INC
ALL PRIOR NAMES OR NAME VERSIONS OF ANY
ADDITIONAL NAMED INSURED ENTITIES LISTED
RIVERBEND NEIGHBORHOOD ASSOCIATION INC
CYGNET PARTNERS II LP
CP II GP LLC
CP PARTNERS II LP
CP PARTNERS II GP LLC
CHARTER HOMES DEVELOPMENT PROPERTIES XXIII INC
CHARTER HOMES DEVELOPMENT PROPERTIES XXIV INC
CHARTER HOMES DEVELOPMENT PROPERTIES XXV INC
CHARTER HOMES DEVELOPMENT PROPERTIES XXVI INC
CHARTER HOMES DEVELOPMENT PROPERTIES XXVII INC
ARCONA PROPERTIES I LP
AP I GP LLC
AP PARTNERS I LP
AP PARTNERS I GP LLC
HASTINGS PROPERTIES II LP
HP PARTNERS II LP
HP PARTNERS II GP LLC
HP II GP LLC
CRESCENT STRAND PARTNERS LLC
CS BOW PARTNERS LLC
CRESCENT NEIGHBORHOOD ASSOCIATION INC

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:**

CG-7000(12-08)

Page 14
Policy Number:      X53010
Effective Date:     10-01-22

811 N PRINCE ST
LANCASTER, PA 17603

1190 DILLERVILLE RD
LANCASTER, PA 17601

OLD BALTIMORE PIKE
YORK, PA 17403

WOODS DR
MECHANICSBURG, PA 17050

FLORIN HILL PROJECT
MOUNT JOY, PA 17552

ROUTES 283 & 772
MANHEIM, PA 17545

1550 SYLVAN RD
LANCASTER, PA 17601

BELLA VISTA
MECHANICSBURG, PA 17050

SOUTHPOINT MDWS
MECHANICSBURG, PA 17050

DEER RUN
HERSHEY, PA 17033

112-118 WALDEN WAY
MECHANICSBURG, PA 17050

5 LARK DR
YORK HAVEN, PA 17370

121-129 WALDEN WAY
MECHANICSBURG, PA 17050

121 WALDEN WAY
MECHANICSBURG, PA 17050

128 WALDEN WAY
MECHANICSBURG, PA 17050

132 WALDEN WAY
MECHANICSBURG, PA 17050

36 ERICK RD
LANCASTER, PA 17601

MARIBEL LN
YORK, PA 17403

BUTTERFLY DR
MECHANICSBURG, PA 17055

LISBURN RD
MECHANICSBURG, PA 17055

100-106 WALDEN WAY
MECHANICSBURG, PA 17050

142-148 WALDEN WAY
MECHANICSBURG, PA 17050

111-117 WALDEN WAY
MECHANICSBURG, PA 17050

SO 01 09/16/22
Acuity File - 014

Page 15
Policy Number:        X53010
Effective Date:       10-01-22

101-107 WALDEN WAY
MECHANICSBURG, PA 17050

CHARLAN BLVD LAKESIDE CROSSING
MOUNT JOY, PA 17552

1422-1436 SAXTON WAY
MECHANICSBURG, PA 17055

1400-1414 SAXTON WAY
MECHANICSBURG, PA 17055

124 MERCHANT AVE
MOUNT JOY, PA 17552

1303-1318 SAXTON WAY
MECHANICSBURG, PA 17055

1330-1349 SAXTON WAY
MECHANICSBURG, PA 17055

1322-1327 SAXTON WAY
MECHANICSBURG, PA 17055

1428 BENTON WAY
MECHANICSBURG, PA 17055

1420 ROSE LN
MECHANICSBURG, PA 17055

1420 ANN LN
MECHANICSBURG, PA 17055

1414 ANN LN
MECHANICSBURG, PA 17055

1408 ANN LN
MECHANICSBURG, PA 17055

1402 ANN LN
MECHANICSBURG, PA 17055

92 EDRIS LN
MECHANICSBURG, PA 17050

FUTURE HASTINGS NEIGHBORHOOD
SOUTH FAYETTE TWP, PA 15064

1434 MOLLYS RUN
MECHANICSBURG, PA 17055

PARCEL D MEEDER
CRANBERRY TWP, PA 16066

1502 ORION RD
BRIDGEVILLE, PA 15017

2000 MEREDITH DR APT 2102
PITTSBURGH, PA 15205

1595 MAYVIEW RD
BRIDGEVILLE, PA 15017

11 ABRASO ST
LANCASTER, PA 17601

322 N ARCH ST
LANCASTER, PA 17603

Page 16
Policy Number:        X53010
Effective Date:       10-01-22

1430A & 1430B MARKET HOUSE LN
MECHANICSBURG, PA 17055

1440 MARKET HOUSE LN
MECHANICSBURG, PA 17055

20515 ROUTE 19
CRANBERRY TWP, PA 16066

301 TILLARY LN
CRANBERRY TWP, PA 16066

305A & 305B TILLARY LN
CRANBERRY TWP, PA 16066

113 VALMERE PATH
YORK, PA 17403

LONGFIELD ST
MECHANICSBURG, PA 17055

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## Index of Policy Provisions

Page

**SECTION I - COVERAGES**............................................2
    Coverage A - Bodily Injury and Property............2
    Damage Liability
    Coverage B - Personal and Advertising.............6
    Injury Liability
    Coverage C - Medical Payments........................8
    Supplementary Payments - Coverages A..........9
    and B

**SECTION II - WHO IS AN INSURED**........................10

**SECTION III - LIMITS OF INSURANCE**..................11

Page

**SECTION IV - COMMERCIAL GENERAL**...............11
**LIABILITY CONDITIONS**
    Bankruptcy........................................................ 11
    Duties in the Event of Occurrence, .................11
    Offense, Claim or Suit
    Legal Action Against Us.................................. 12
    Other Insurance.................................................12
    Premium Audit...................................................13
    Representations............................................... 13
    Separation of Insureds.................................... 13
    Transfer of Rights of Recovery Against ..........13
    Others to Us
    When We Do Not Renew................................ 13

**SECTION V - DEFINITIONS**.....................................13

Acuity File - 017

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is an Insured.

Other words and phrases that appear in italics have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury* or *property damage* to which this insurance does not apply. We may at our discretion investigate any *occurrence* and settle any claim or *suit* that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to *bodily injury* and *property damage* only if:

      (1) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory;*

      (2) The *bodily injury* or *property damage* occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under paragraph 1 of Section II - Who Is An Insured and no *employee* authorized by you to give or receive notice of an *occurrence* or claim, knew that the *bodily injury* or *property damage* had occurred, in whole or in part. If such a listed insured or authorized *em-*

      *ployee* knew, prior to the policy period, that the *bodily injury* or *property damage* occurred, then any continuation, change or resumption of such *bodily injury* or *property damage* during or after the policy period will be deemed to have been known prior to the policy period.

   c. *Bodily injury* or *property damage* which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under paragraph 1 of Section II - Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim, includes any continuation, change or resumption of that *bodily injury* or *property damage* after the end of the policy period.

   d. *Bodily injury* or *property damage* will be deemed to have been known to have occurred at the earliest time when any insured listed under paragraph 1 of Section II - Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim:

      (1) Reports all, or any part, of the *bodily injury* or *property damage* to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the *bodily injury* or *property damage;* or

      (3) Becomes aware by any other means that *bodily injury* or *property damage* has occurred or has begun to occur.

   e. Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury.*

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      *Bodily injury* or *property damage* expected or intended from the standpoint of the insured. This exclusion does not apply to

Acuity File - 018

*bodily injury* resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

*Bodily injury* or *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an *insured contract,* provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an *insured contract,* reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of *bodily injury* or *property damage* provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same *insured contract;* and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

*Bodily injury* or *property damage* for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

*Bodily Injury* to:

(1) An *employee* of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that *employee* as a consequence of paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an *insured contract.*

**f. Pollution**

(1) *Bodily injury* or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants:*

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) *Bodily injury* if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) *Bodily injury* or *property damage* for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) *Bodily injury* or *property damage* arising out of heat, smoke or fumes from a *hostile fire;*

Acuity File - 019

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the *pollutants* are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) *Bodily injury* or *property damage* arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of *mobile equipment* or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the *bodily injury* or *property damage* arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) *Bodily injury* or *property damage* sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with op-erations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) *Bodily injury* or *property damage* arising out of heat, smoke or fumes from a *hostile fire;*

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of *pollutants.*

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of *pollutants;* or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of *pollutants.*

However, this paragraph does not apply to liability for damages because of *property damage* that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or *suit* by or on behalf of a governmental authority.

g. **Aircraft, Auto or Watercraft**

*Bodily injury* or *property damage* arising out of the ownership, maintenance, use or entrustment to others of any aircraft, *auto* or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and *loading or unloading.*

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the *occurrence* which caused the *bodily injury* or *property damage* involved the ownership, maintenance, use or entrustment to others of any aircraft, *auto* or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

Acuity File - 020

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an *auto* on, or on the ways next to, premises you own or rent, provided the *auto* is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any *insured contract* for the ownership, maintenance or use of aircraft or watercraft; or

(5) *Bodily injury* or *property damage* arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of *mobile equipment* if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) The operation of any of the machinery or equipment listed in paragraph f(2) or f(3) of the definition of *mobile equipment.*

**h.  Mobile Equipment**

*Bodily injury* or *property damage* arising out of:

(1) The transportation of *mobile equipment* by an *auto* owned or operated by or rented or loaned to any insured; or

(2) The use of *mobile equipment* in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i.  War**

*Bodily injury* or *property damage,* however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.  Damage to Property**

*Property damage* to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organiza-

tion or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the *property damage* arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the *property damage* arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because *your work* was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to *property damage* (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are *your work* and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to *property damage* included in the *products-completed operations hazard.*

**k.  Damage to Your Product**

*Property damage* to *your product* arising out of it or any part of it.

**l.  Damage to Your Work**

*Property damage* to *your work* arising out of it or any part of it and included in the *products-completed operations hazard.*

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**

*Property damage* to *impaired property* or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or

Acuity File - 021

dangerous condition in *your product* or *your work;* or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to *your product* or *your work* after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) *Your product;*

(2) *Your work;* or

(3) *Impaired property;*

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal and Advertising Injury**

*Bodily injury* arising out of *personal and advertising injury.*

**p. Lead**

*Bodily injury* or *property damage* arising out of the actual, alleged or threatened ingestion, inhalation, absorption, exposure or presence of lead in any form or from any source.

Coverage also does not apply to any loss, cost, expense, fine or penalty arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, dispose of or in any way respond to or assess the effects of lead in any form; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, disposing of or in any way responding to or assessing the effects of lead in any form.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**r. Distribution of Material in Violation of Statutes**

*Bodily injury* or *property damage* arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions c through n and p do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits of Insurance.

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *personal and advertising injury* to which this insurance does not apply. We may at our discretion investigate any offense and settle any claim or *suit* that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums

Acuity File - 022

or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

**b.** This insurance applies to *personal and advertising injury* caused by an offense arising out of your business, but only if the offense was committed in the *coverage territory* during the policy period.

### 2. Exclusions

This insurance does not apply to:

#### a. Knowing Violation of Rights of Another

*Personal and advertising injury* caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury.*

#### b. Material Published with Knowledge of Falsity

*Personal and advertising injury* arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

#### c. Material Published Prior to Policy Period

*Personal and advertising injury* arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

#### d. Criminal Acts

*Personal and advertising injury* arising out of a criminal act committed by or at the direction of any insured.

#### e. Contractual Liability

*Personal and advertising injury* for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

#### f. Breach of Contract

*Personal and advertising injury* arising out of a breach of contract, except an implied contract to use another's advertising idea in your *advertisement.*

#### g. Quality or Performance of Goods - Failure to Conform to Statements

*Personal and advertising injury* arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your *advertisement.*

#### h. Wrong Description of Prices

*Personal and advertising injury* arising out of the wrong description of the price of goods, products or services stated in your *advertisement.*

#### i. Infringement of Copyright, Patent, Trademark or Trade Secret

*Personal and advertising injury* arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your *advertisement.*

However, this exclusion does not apply to infringement, in your *advertisement,* of copyright, trade dress or slogan.

#### j. Insureds in Media and Internet Type Business

*Personal and advertising injury* committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting.

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to paragraphs 14a, b and c of *personal and advertising injury* under the Definitions Section; or

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

#### k. Electronic Chatrooms or Bulletin Boards

*Personal and advertising injury* arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

#### l. Unauthorized Use of Another's Name or Product

*Personal and advertising injury* arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

#### m. Pollution

*Personal and advertising injury* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants* at any time.

#### n. Pollution-Related

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up,

Acuity File - 023

remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of *pollutants;* or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of *pollutants.*

### o. Lead

*Personal and advertising injury* arising out of the actual, alleged or threatened ingestion, inhalation, absorption, exposure or presence of lead in any form or from any source.

Coverage also does not apply to any loss, cost, expense, fine or penalty arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, dispose of or in any way respond to or assess the effects of lead in any form; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, disposing of or in any way responding to or assessing the effects of lead in any form.

### p. War

*Personal and advertising injury,* however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### q. Distribution of Material in Violation of Statutes

*Personal and advertising injury* arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C - MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for *bodily injury* caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the *coverage territory* and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for *bodily injury:*

a. **Any insured.**

To any insured, except *volunteer workers.*

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation and Similar Laws**

To a person, whether or not an *employee* of any insured, if benefits for the *bodily injury* are payable or must be provided under a workers' compensation or disability

Acuity File - 024

benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the *products-completed operations hazard.*

**g. Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any *suit* against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or *suit,* including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All court costs taxed against the insured in the *suit.* However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

   These payments will not reduce the Limits of Insurance.

2. If we defend an insured against a *suit* and an indemnitee of the insured is also named as a party to the *suit,* we will defend that indemnitee if all of the following conditions are met:

   **a.** The *suit* against the indemnitee seeks dam-

ages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an *insured contract;*

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same *insured contract;*

**d.** The allegations in the *suit* and the information we know about the *occurrence* are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such *suit* and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

   (1) Agrees in writing to:

   (a) Cooperate with us in the investigation, settlement or defense of the *suit;*

   (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the *suit;*

   (c) Notify any other insurer whose coverage is available to the indemnitee; and

   (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

   (a) Obtain records and other information related to the *suit;* and

   (b) Conduct and control the defense of the indemnitee in such *suit.*

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2b(2) of Section I - Coverage A - Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for *bodily injury* and *property damage* and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the ap-

Acuity File - 025

plicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement

described in paragraph f above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your *executive officers* and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your *volunteer workers* only while performing duties related to the conduct of your business, or your *employees,* other than either your *executive officers* (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these *employees* or *volunteer workers* are insureds for:

      (1) *Bodily injury* or *personal and advertising injury:*

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-*employee* in the course of his or her employment or performing duties related to the conduct of your business, or to your other *volunteer workers* while performing duties related to the conduct of

your business.

         (b) To the spouse, child, parent, brother or sister of that co-*employee* or *volunteer worker* as a consequence of paragraph (a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) *Property damage* to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your *employees,* or *volunteer workers,* any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your *employee*) or *volunteer worker* or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

Acuity File - 026

b. Coverage A does not apply to *bodily injury* or *property damage* that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to *personal and advertising injury* arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or *suits* brought; or

   c. Persons or organizations making claims or bringing *suits.*

2. The General Aggregate Limit is the most we will pay for:

   a. The sum of:

      (1) Medical expenses under Coverage C; and

      (2) Damages under Coverage A, except damages because of *bodily injury* or *property damage* included in the *products-completed operations hazard.*

   With respect to the above items, the General Aggregate Limit applies separately to:

   (1) Each location owned by or rented to you. A location is a premises involving the same or connecting lots, or a premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad, and

   (2) Each of your projects away from a location owned by or rented to you; or

   b. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of *bodily injury* and *property damage* included in the *products-completed operations hazard,*

4. Subject to paragraph 2 above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all *personal and advertising injury* sustained by any one person or organization.

5. Subject to paragraph 2 or 3 above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C;

   because of all *bodily injury* and *property damage* arising out of any one *occurrence.*

6. Subject to paragraph 5 above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of *property damage* to any one premises, while rented to you for a period of 7 or fewer consecutive days or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to paragraph 5 above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of *bodily injury* sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

   a. You must see to it that we are notified as soon as practicable of an *occurrence* or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the *occurrence*

   or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the *occurrence* or offense.

   b. If a claim is made or *suit* is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or *suit* and the date received; and

      (2) Notify us as soon as practicable.

Acuity File - 027

You must see to it that we receive written notice of the claim or *suit* as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or *suit;*

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the *suit;* and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a *suit* asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when paragraph b below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph c below.

b. **Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for *your work;*

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for *property damage* to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, *autos* or watercraft to the extent not subject to Exclusion g of Section I - Coverage A - Bodily Injury and Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any *suit* if any other insurer has a duty to defend the insured against that *suit.* If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all of the other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Acuity File - 028

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the First Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the First Named Insured.

c. The First Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the First Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or *suit* is brought.

**8. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring *suit* or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the First Named Insured shown in the Declarations, written notice of nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. *"Advertisement"* means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. *"Auto"* means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, *auto* does not include *mobile equipment.*

3. *"Bodily injury"* means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. *"Coverage territory"* means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places not included in paragraph a above; or

Acuity File - 029

c. All other parts of the world if the injury or damage arises out of:

   (1) Goods or products made or sold by you in the territory described in paragraph a above;

   (2) The activities of a person whose home is in the territory described in paragraph a above, but is away for a short time on your business; or

   (3) *Personal and advertising injury* offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a *suit* on the merits, in the territory described in paragraph a above or in a settlement we agree to.

5. *"Employee"* includes a *leased worker. Employee* does not include a *temporary worker.*

6. *"Executive officer"* means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. *"Hostile fire"* means one which becomes uncontrollable or breaks out from where it was intended to be.

8. *"Impaired property"* means tangible property, other than *your product* or *your work,* that cannot be used or is less useful because:

   a. It incorporates *your product* or *your work* that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of *your product* or *your work* or your fulfilling the terms of the contract or agreement.

9. *"Insured contract"* means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an *insured contract;*

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement; or

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for *bodily injury* or *property damage* to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for *bodily injury* or *property damage* arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

       (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

       (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. *"Leased worker"* means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. *Leased worker* does not include a *temporary worker.*

11. *"Loading or unloading"* means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or *auto;*

    b. While it is in or on an aircraft, watercraft or *auto;* or

    c. While it is being moved from an aircraft, watercraft or *auto* to the place where it is finally delivered;

but *loading or unloading* does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or *auto.*

12. *"Mobile equipment"* means any of the following

Acuity File - 030

types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler-treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers.

e. Vehicles not described in paragraph a, b, c or d above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers.

f. Vehicles not described in paragraph a, b, c, or d above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not *mobile equipment* but will be considered *autos:*

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning.

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, *mobile equipment* does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered *autos.*

13. *"Occurrence"* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. *"Personal and advertising injury"* means injury, including consequential *bodily injury,* arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your *advertisement;* or

g. Infringing upon another's copyright, trade dress or slogan in your *advertisement.*

15. *"Pollutants"* means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

16. *"Products-completed operations hazard:"*

a. Includes all *bodily injury* and *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work* except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, *your work* will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include *bodily injury* or *property*

Acuity File - 031

*damage* arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the *loading or unloading* of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. *"Property damage"* means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. *"Suit"* means a civil proceeding in which damages because of *bodily injury, property damage or personal and advertising injury* to which this insurance applies are alleged. *Suit* includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. *"Temporary worker"* means a person who is furnished to you to substitute for a permanent *employee* on leave or to meet seasonal or short-term workload conditions.

20. *"Volunteer worker"* means a person who is not your *employee,* and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. *"Your product:"*

a. Means:

(1) Any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product;* and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. *"Your work:"*

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work;* and

(2) The providing of or failure to provide warnings or instructions.

Acuity File - 032

RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

CG-0068F(5-09)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion r of paragraph 2 Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

r. Recording And Distribution Of Material Or Information In Violation Of Law

*Bodily injury* or *property damage* arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

B. Exclusion q of paragraph 2 Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

q. Recording And Distribution Of Material Or Information In Violation Of Law

*Personal and advertising injury* arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Acuity File - 033

POLICY NUMBER: X53010

DEDUCTIBLE LIABILITY INSURANCE                                    CG-0300F(1-96)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

1. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule as applicable to such coverages.

2. You may select a deductible amount on either a per claim or a per *occurrence* basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule. The deductible amount stated in the Schedule applies as follows:

a. Per Claim Basis - If the deductible amount indicated in the Schedule is on a per claim basis, that deductible applies as follows:

(1) Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of *bodily injury;*

(2) Under Property Damage Liability Coverage, to all damages sustained by any one person because of *property damage;* or

(3) Under Bodily Injury Liability and Property Damage Liability Coverage combined, to all damages sustained by any one person because of:

(a) *Bodily injury;*

(b) *Property damage*; or

(c) *Bodily injury* and *property damage* combined;

as the result of any one *occurrence.*

If damages are claimed for care, loss of services or death resulting at any time from *bodily injury,* a separate deductible amount will be applied to each person making a claim for such damages.

With respect to *property damage,* person includes an organization.

b. Per Occurrence Basis - If the deductible amount indicated in the Schedule is on a per *occurrence* basis, that deductible amount applies as follows:

(1) Under Bodily Injury Liability Coverage, to all damages because of *bodily injury;*

(2) Under Property Damage Liability Coverage, to all damages because of *property damage;* or

(3) Under Bodily Injury Liability and Property Damage Liability Coverage combined, to all damages because of:

(a) *Bodily injury;*

(b) *Property damage*; or

(c) *Bodily injury* and *property damage* combined;

as the result of any one *occurrence,* regardless of the number of persons or organizations who sustain damages because of that *occurrence.*

With respect to *property damage,* person includes an organization.

3. The terms of this insurance, including those with respect to:

a. Our right and duty to defend the insured against any *suits* seeking those damages; and

b. Your duties in the event of an *occurrence,* claim or *suit;*

apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or *suit* and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

SCHEDULE

| Applicable Coverage | Amount and Basis of Deductible | |
| --- | --- | --- |
| | (per claim) | (per occurrence) |
| PROPERTY DAMAGE LIABILITY | $5,000 | |

Acuity File - 034

## PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION          CG-2001R(4-13)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

RESIDENTIAL CARE FACILITY LIABILITY COVERAGE PART

The following is added to the Other Insurance Condition and supersedes any provision to the contrary:

Primary And Noncontributory Insurance

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

(1) The additional insured is a Named Insured under such other insurance; and

(2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

Acuity File - 035

POLICY NUMBER: X53010

ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION

CG-2010F(4-13)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for *bodily injury, property damage* or *personal and advertising injury* caused, in whole or in part, by:

   a. Your acts or omissions; or

   b. The acts or omissions of those acting on your behalf;

   in the performance of your ongoing operations for the additional insured(s) at the location(s) designated below.

   However:

   a. The insurance afforded to such additional insured only applies to the extent permitted by law; and

   b. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

2. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to *bodily injury* or *property damage* occurring after:

a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

b. That portion of *your work* out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

3. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

a. Required by the contract or agreement; or

b. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

SCHEDULE

| Name of Additional Insured Person(s) or Organization(s) (Name and Address) | Location(s) of Covered Operations |
|---|---|
| QEI CONSTRUCTION GROUP LLC 3003 N FRONT ST # 201 HARRISBURG PA 17110 | PROJECT: 5 E POINTE DR BIRDSBORO PA 19508 |
| STRASBURG COMMONS, A PLANNED COMMUNITY& BOYD WILSON PROP MGMT 600 OLDE HICKORY RD STE 100 LANCASTER PA 17601 | MAINTENANCE FOR STASBURG COMMONS |
| HIGH CONSTRUCTION COMPANY 1853 WILLIAM PENN WAY LANCASTER PA 17601 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| REITNOUER HOLDINGS LLC 4001 READING CREST AVE READING PA 19605 | PROJECT: 5 E POINTE DR BIRDSBORO PA 19508 |
| WALDEN NEIGHBORHOOD ASSOC INC & BOYD WILSON PROP MGMT 600 OLDE HICKORY RD STE 100 LANCASTER PA 17601 | MAINTENANCE FOR WALDEN NEIGHBORHOOD ASSOCIATION |

Acuity File - 036

| Name of Additional Insured Person(s) or Organization(s) (Name and Address) | Location(s) of Covered Operations |
|---|---|
| NORFOLK SOUTHERN RAILWAY CO C/O DIRECTOR RISK MANAGEMENT 3 COMMERCIAL PL NORFOLK VA 23510 | BORING & INSTALLATION OF 10 INCH PVC SANITARY SEWER PIPE |
| HIGH CONNECTOR LLC 1853 WILLIAM PENN WAY LANCASTER PA 17601 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| GREENFIELD ARCHITECTS LTD 1853 WILLIAM PENN WAY LANCASTER PA 17601 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| CITY OF LANCASTER 120 N DUKE ST LANCASTER PA 17602 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| ARRO CONSULTING INC 270 GRANITE RUN DR LANCASTER PA 17601 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| PENNSYLVANIA DEPART OF TRANSPORTATION PO BOX 3025 HARRISBURG PA 17105 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| PITTSBURGH HISTORY & LANDMARKS FOUNDATION 100 W STATION SQUARE DR 450 PITTSBURGH PA 15219 | OPERATIONS AT MEEDER FARMHOUSE AND BARN |

Acuity File - 037

POLICY NUMBER: X53010

ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES                    CG-2011F(4-13)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

    This insurance does not apply to:

    a. Any *occurrence* which takes place after you cease to be a tenant in that premises.

    b. Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

    However:

    a. The insurance afforded to such additional insured only applies to the extent permitted by law; and

    b. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

2. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

    If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    a. Required by the contract or agreement; or

    b. Available under the applicable Limits of Insurance shown in the Declarations;

    whichever is less.

    This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

SCHEDULE

| Name of Person(s) or Organization(s)<br>(Name and Address) | Designation of Premises<br>(Part Leased to You) |
| --- | --- |
| WATERFORD NEVILLEWOOD<br>PO BOX 498067<br>CINCINNATTI OH 45249 | 10201 CLUB HOUSE RD<br>PRESTO PA 15142 |
| JEFFREY D MOHLER &<br>RACHEL N MOHLER<br>1007 STONEMANOR DR<br>LANCASTER PA 17603 | 2938 COLUMBIA AVE STE 802<br>LANCASTER PA 17603 |
| 36 ERICK ROAD LANCASTER<br>PA LLC<br>47-49 LINCOLN HWY<br>KEARNY NJ 07032 | ALL LOCATIONS IN COVERAGE<br>TERRITORY |
| T A NGUYEN LLC<br>322 N ARCH ST<br>LANCASTER PA 17603 | 322 N ARCH ST<br>LANCASTER, PA 17603 |

Acuity File - 038

ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTO-MATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

CG-2033R(6-13)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Section II - Who Is An Insured is amended to include as an additional insured:

   a. Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and

   b. Any other person or organization you are required to add as an additional insured under the contract or agreement described in paragraph a above.

   Such person or organization is an additional insured only with respect to liability for *bodily injury, property damage* or *personal and advertising injury* caused, in whole or in part, by:

   a. Your acts or omissions; or

   b. The acts or omissions of those acting on your behalf;

   in the performance of your ongoing operations for the additional insured.

   However the insurance afforded to such additional insured:

   a. Only applies to the extent permitted by law; and

   b. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

   A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

2. With respect to the insurance afforded these additional insureds, the following additional exclusions apply:

   This insurance does not apply to:

   a. *Bodily injury, property damage* or *personal and advertising injury* arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

   (1) The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (2) Supervisory, inspection, architectural or engineering activities.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the *occurrence* which caused the *bodily injury* or *property damage* involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

   b. *Bodily injury* or *property damage* occurring after:

   (1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   (2) That portion of *your work* out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

3. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

   The most we will pay on behalf of the additional insured is the amount of insurance:

   a. Required by the contract or agreement you have entered into with the additional insured; or

   b. Available under the applicable Limits of Insurance shown in the Declarations;

   whichever is less.

   This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Acuity File - 039

POLICY NUMBER: X53010

ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS -       CG-2037F(4-13)
COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

1. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for *bodily injury* or *property damage* caused, in whole or in part, by *your work* at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the *products-completed operations hazard*.

   However:

   a. The insurance afforded to such additional insured only applies to the extent permitted by law; and

   b. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

2. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

   If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

   a. Required by the contract or agreement; or

   b. Available under the applicable Limits of Insurance shown in the Declarations;

   whichever is less.

   This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

SCHEDULE

| Name of Additional Insured Person(s) or Organization(s) (Name and Address) | Location and Description of Completed Operations |
| --- | --- |
| QEI CONSTRUCTION GROUP LLC<br>3003 N FRONT ST # 201<br>HARRISBURG PA 17110 | PROJECT: 5 E POINTE DR<br>BIRDSBORO PA 19508 |
| STRASBURG COMMONS, A PLANNED COMMUNITY& BOYD WILSON PROP MGMT<br>600 OLDE HICKORY RD STE 100<br>LANCASTER PA 17601 | MAINTENANCE FOR STASBURG COMMONS |
| HIGH CONSTRUCTION COMPANY<br>1853 WILLIAM PENN WAY<br>LANCASTER PA 17601 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| REITNOUER HOLDINGS LLC<br>4001 READING CREST AVE<br>READING PA 19605 | PROJECT: 5 E POINTE DR<br>BIRDSBORO PA 19508 |
| WALDEN NEIGHBORHOOD ASSOC INC<br>& BOYD WILSON PROP MGMT<br>600 OLDE HICKORY RD STE 100<br>LANCASTER PA 17601 | MAINTENANCE FOR WALDEN NEIGHBORHOOD ASSOCIATION |
| HIGH CONNECTOR LLC<br>1853 WILLIAM PENN WAY<br>LANCASTER PA 17601 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| GREENFIELD ARCHITECTS LTD<br>1853 WILLIAM PENN WAY<br>LANCASTER PA 17601 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| CITY OF LANCASTER<br>120 N DUKE ST<br>LANCASTER PA 17602 | EXCAVATION WORK FOR HIGH CONSTRUCTION |
| ARRO CONSULTING INC<br>270 GRANITE RUN DR<br>LANCASTER PA 17601 | EXCAVATION WORK FOR HIGH CONSTRUCTION |

CG-2037F(4-13)         Includes copyrighted material of Insurance Services Office, Inc., with its permission.         Page 1 of 2

**Acuity File - 040**

Name of Additional Insured
Person(s) or Organization(s)
(Name and Address)

Location and Description of Completed Operations

PENNSYLVANIA DEPART OF
TRANSPORTATION
PO BOX 3025
HARRISBURG PA 17105

EXCAVATION WORK FOR HIGH CONSTRUCTION

**Acuity File - 041**

EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

CG-2106F(5-14)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  Exclusion 2q of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

2.  Exclusions

This insurance does not apply to:

q.  Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in paragraph (1) or (2) above.

However, unless paragraph (1) above applies, this exclusion does not apply to

damages because of *bodily injury.*

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B.  The following is added to paragraph 2 Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

2.  Exclusions

This insurance does not apply to:

Access Or Disclosure Of Confidential Or Personal Information

*Personal and advertising injury* arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Acuity File - 042

EXCLUSION - UNMANNED AIRCRAFT

CG-2109F(6-15)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion 2g Aircraft, Auto Or Watercraft under Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

g. Aircraft, Auto Or Watercraft

(1) Unmanned Aircraft

*Bodily injury* or *property damage* arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an *unmanned aircraft*. Use includes operation and *loading or unloading*.

This paragraph g(1) applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the *occurrence* which caused the *bodily injury* or *property damage* involved the ownership, maintenance, use or entrustment to others of any aircraft that is an *unmanned aircraft*.

(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft

*Bodily injury* or *property damage* arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than *unmanned aircraft*), *auto* or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and *loading or unloading*.

This paragraph g(2) applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the *occurrence* which caused the *bodily injury* or *property damage* involved the ownership, maintenance, use or entrustment to others of any aircraft (other than *unmanned aircraft*), *auto* or watercraft that is owned or operated by or rented or loaned to any insured.

This paragraph g(2) does not apply to:

(a) A watercraft while ashore on premises you own or rent;

(b) A watercraft you do not own that is:

(i) Less than 26 feet long; and

(ii) Not being used to carry persons or property for a charge;

(c) Parking an *auto* on, or on the ways next to, premises you own or rent, provided the *auto* is not owned by or rented or loaned to you or the insured;

(d) Liability assumed under any *insured contract* for the ownership, maintenance or use of aircraft or watercraft; or

(e) *Bodily injury* or *property damage* arising out of:

(i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of *mobile equipment* if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(ii) The operation of any of the machinery or equipment listed in paragraph f(2) or f(3) of the definition of *mobile equipment*.

B. The following exclusion is added to paragraph 2 Exclusions of Coverage B - Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Unmanned Aircraft

*Personal and advertising injury* arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an *unmanned aircraft*. Use includes operation and *loading or unloading*.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the *personal and advertising injury* involved the ownership, maintenance, use or entrust-

Acuity File - 043

ment to others of any aircraft that is an *unmanned aircraft.*

This exclusion does not apply to:

(1) The use of another's advertising idea in your *advertisement;* or

(2) Infringing upon another's copyright, trade dress or slogan in your *advertisement.*

C. The following definition is added to the Definitions section:

*"Unmanned aircraft"* means an aircraft that is not:

(1) Designed;

(2) Manufactured; or

(3) Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

**Acuity File - 044**

EMPLOYMENT-RELATED PRACTICES EXCLUSION

CG-2147F(12-07)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. The following exclusion is added to paragraph 2 Exclusions, of Section I - Coverage A - Bodily Injury and Property Damage Liability:

This insurance does not apply to:

*Bodily injury* to:

a. A person arising out of any:

   (1) Refusal to employ that person;

   (2) Termination of that person's employment; or

   (3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

b. The spouse, child, parent, brother or sister of that person as a consequence of *bodily injury* to that person at whom any of the employment-related practices described in paragraphs (1), (2) or (3) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in paragraphs (1), (2) or (3) above occurs before employment, during employment or after employment of that person.

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

2. The following exclusion is added to paragraph 2 Exclusions of Section I - Coverage B - Personal and Advertising Injury Liability:

This insurance does not apply to:

*Personal and advertising injury* to:

a. A person arising out of any:

   (1) Refusal to employ that person;

   (2) Termination of that person's employment; or

   (3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

b. The spouse, child, parent, brother or sister of that person as a consequence of *personal and advertising injury* to that person at whom any of the employment-related practices described in paragraphs (1), (2) or (3) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in paragraphs (1), (2) or (3) above occurs before employment, during employment or after employment of that person.

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Acuity File - 045

FUNGI OR BACTERIA EXCLUSION     CG-2167F(12-04)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

1.  The following exclusion is added to Paragraph 2, Exclusions of Section I - Coverage A - Bodily Injury and Property Damage Liability:

    Fungi or Bacteria

    a.  *Bodily injury* or *property damage* which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    b.  Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.

    This exclusion does not apply to any *fungi* or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

2.  The following exclusion is added to Paragraph 2, Exclusions of Section I - Coverage B - Personal and Advertising Injury Liability:

    Fungi or Bacteria

    a.  *Personal and advertising injury* which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

    b.  Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.

3.  The following definition is added to the Definitions Section:

    *"Fungi"* means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Acuity File - 046

CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)                    CG-2187R(1-15)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

LIQUOR LIABILITY COVERAGE PART

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

POLLUTION LIABILITY COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

RAILROAD PROTECTIVE LIABILITY COVERAGE PART

A. Applicability Of The Provisions Of This Endorsement

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

(1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

(2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

(3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

a. Supersede any terrorism endorse-

ment already endorsed to this policy that addresses *certified acts of terrorism* and/or *other acts of terrorism*, but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses *certified acts of terrorism* and/or *other acts of terrorism*, will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are shown in italics:

1. *"Terrorism"* means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, reli-

Acuity File - 047

gious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. *"Any injury or damage"* means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to *bodily injury, property damage, personal and advertising injury, injury* or *environmental damage* as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for *any injury or damage* caused directly or indirectly by *terrorism,* including action in hindering or defending against an actual or expected incident of *terrorism. Any injury or damage* is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of *terrorism*:

1. The *terrorism* is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the *terrorism* was to release such material; or

3. The *terrorism* is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the *terrorism* was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determin-

ing whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the *terrorism* and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of *terrorism* which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C5 or C6 are exceeded.

With respect to this Exclusion, Paragraphs C5 and C6 describe the threshold used to measure the magnitude of an incident of *terrorism* and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of *terrorism,* there is no coverage under this Coverage Part or Policy.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Acuity File - 048

SNOW PLOW OPERATIONS COVERAGE

CG-2292F(12-07)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Within the *products-completed operations hazard,*

Exclusion g under Section I - Coverage A - Bodily Injury And Property Damage Liability does not apply to any *auto* used for snow plow operations.

CG-2292F(12-07)    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 1 of 1

Acuity File - 049

POLICY NUMBER: X53010

CONTRACTUAL LIABILITY - RAILROADS                                                    CG-2417F(10-01)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of *insured contract* in the Definitions section is replaced by the following:

9.  *"Insured Contract"* means:

    a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an *insured contract;*

    b.  A sidetrack agreement;

    c.  Any easement or license agreement;

    d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.  An elevator maintenance agreement;

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for *bodily injury* or *property damage* to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f does not include that part of any contract or agreement:

    (1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

    (2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in paragraph (1) above and supervisory, inspection, architectural or engineering activities.

## SCHEDULE

| Scheduled Railroad (Name and Address) | Designated Job Site |
|---|---|
| PITTSBURGH & OH CTR RAILROAD C/O GENNESSEE & WY RAILROAD SRVS 13901 SUTTON PARK DR S 160 JACKSONVILLE FL 32224 | INSTALLATION OF NEW SANITARY SEWER MAIN WITHIN THE RAILROAD RIGHT-OF-WAY AT THE CHARTER HOMES HASTING PROJECT. APPROX ADDRESS WOULD BE 1612 MAYVIEW RD BRIDGEVILLE PA 15017 |
| NORFOLK SOUTHERN CORP & ITS SUBSIDIARIES 650 W PEACHTREE ST NW ATLANTA GA 30308 | CX0004757 IMPROVE THE ROSSMOYNE RD DOT 592207P AT-GRADE CROSSING IN THE VICINITY OF RAILWAY MILEPOST LG-6.16 AT OR NEAR LOWER ALLEN TWP CUMBERLAND COUNTY PENNSYLVANIA |

Acuity File - 050

PENNSYLVANIA CHANGES - PESTICIDE APPLICATOR - LIMITED POLLUTION COVERAGE

CG-2616F(4-13)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to the use of pesticides, paragraph (1)(d) of Exclusion f of Section I - Coverage A - Bodily Injury And Property Damage Liability does not apply if:

1. You are certified, or your *employees* performing operations are certified or registered by a federal or state agency to use pesticides.

2. Your noncertified or nonregistered *employees* are performing operations under the instruction and control of a certified applicator who is physically present at any premises, site or location at which such operations are being performed.

The term pesticide, as defined in the Pennsylvania Pesticide Control Act of 1973, means any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest, and any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant.

Acuity File - 051

ADDITIONAL INSURED - COMPLETED OPERATIONS AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU (OWNERS, LESSEES OR CONTRACTORS)

CG-7277(6-13)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

1. Section II - Who Is An Insured is amended to include as an additional insured:

   a. Any person(s) or organization(s) for whom you have performed operations if you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as additional insured on your policy for completed operations; and

   b. Any other person(s) or organization(s) you are required to add as an additional insured under the contract or agreement described in paragraph a above.

   Such person or organization is an additional insured only with respect to liability included in the *products-completed operations hazard* for *bodily injury* or *property damage* caused, in whole or in part, by *your work* performed for that additional insured at the location designated and described in the contract or agreement.

   However:

   a. The insurance afforded to such additional insured only applies to the extent permitted by law; and

   b. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

2. This insurance does not apply to:

   a. *Bodily injury* or *property damage* which occurs prior to the execution of the contract or agreement described in item 1; or

   b. *Bodily injury* or *property damage* that occurs after the time period during which the contract or agreement described in item 1 requires you to add such person or organization onto your policy as an additional insured for completed operations; or

   c. *Bodily injury* or *property damage* arising out of the rendering of, or the failure to render, any professional, architectural, engineering or surveying services, including:

      (1) The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (2) Supervisory, inspection, architectural or engineering activities.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the *occurrence* which caused the *bodily injury* or *property damage* involved the rendering of or the failure to render any professional services by or for you.

3. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

   If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

   a. Required by the contract or agreement; or

   b. Available under the applicable Limits of Insurance shown in the Declarations;

   whichever is less.

   This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Acuity File - 052

**EXCLUSION - HABITATIONAL EXTERIOR INSULATION FINISH SYSTEMS**

CG-7278(8-19)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

1. The following exclusion is added:

This insurance does not apply to *bodily injury* or *property damage* included .in the *products-completed operations hazard* or to *personal and advertising injury* arising out of:

   a. The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction or replacement of an *exterior insulation and finish system* or any part thereof;

   b. The application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealant in connection with an *exterior insulation and finish system;*

   c. Any method or procedure used to correct problems with an installed or partially installed *exterior insulation and finish system;* or

   d. Any work or operations performed on or to an *exterior insulation and finish system* or any component thereof or on or to a building or structure to which an *exterior insulation and finish system* attaches that results, directly or indirectly, in the intrusion of water or moisture, including any resulting fungus, mold, mildew, virus or bacteria and any mycotoxins, spores, scents or byproducts thereof, into or on any part of the building or structure on which you performed such work or operations.

This exclusion applies only if the *exterior insulation and finish system* is or was attached to a building or structure used solely for *habitational* purposes.

This exclusion applies to *bodily injury, property damage,* or *personal and advertising injury:*

   a. Arising out of work or operations, as described in 1 above, whether performed by you or on your behalf.

   b. For which you assume liability in a contract or agreement, regardless of whether such contract or agreement is an *insured contract.*

2. The following is added to Section V - Definitions:

   a. An *"Exterior insulation and finish system"* (EIFS) is a non-load bearing, exterior wall cladding system that consists of an insulation board attached either adhesively or mechanically, or both, to the substrate; an integrally reinforced base coat; and a textured protective finish coat. It includes, but is not limited to, synthetic stucco or a similar system that is an exterior cladding or finish system used on a building or structure consisting of:

      (1) A rigid or semi-rigid insulation board made of expanded polystyrene or other materials or a rigid or semi-rigid substrate;

      (2) The adhesive and/or mechanical fasteners used to attach the insulation board to substrate or the substrate to the structure including any water-durable exterior wall substrate;

      (3) A reinforced or unreinforced base coat or mesh;

      (4) A finish coat providing surface texture to which color may be added; and

      (5) Any flashing, caulking or sealant used with the system for any purpose.

   b. *"Habitational"* means single or multifamily housing, including apartments, condominiums, townhouses or planned unit developments.

Acuity File - 053

**ACUITY ENHANCEMENTS - GENERAL LIABILITY**

CG-7301(12-19)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A. Extended Non-Owned Watercraft**

Exclusion g Exception (2)(a) of Coverage A - Bodily Injury and Property Damage Liability is replaced by the following:

(a) Less than 51 feet long; and

**B. Increased Bail Bond Amount**

The limit shown in paragraph 1b of Supplementary Payments - Coverages A and B is increased to $1,000.

**C. Increased Reasonable Expenses Incurred by the Insured**

The limit shown in paragraph 1d of Supplementary Payments - Coverages A and B is increased to $350.

**D. Newly Acquired Organizations**

Item 3a of Section II - Who Is An Insured is replaced by the following:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**E. Tenants Legal Liability**

Paragraphs (1), (3) and (4) of the Damage to Property Exclusion under Section I - Coverages do not apply to *property damage* (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 8 or more consecutive days.

The most we will pay under this coverage for damages because of *property damage* to any one premises is $10,000. A $250 deductible applies.

**F. Knowledge of Claim or Suit**

The following is added to paragraph 2, Duties in the Event of Occurrence, Offense, Claim or Suit of Section IV - Commercial General Liability Conditions:

Knowledge of an *occurrence,* claim or *suit* by your agent, servant or *employee* shall not in itself constitute knowledge of the Named Insured unless an officer of the Named Insured has received such notice from the agent, servant or *employee.*

**G. Unintentional Failure to Disclose Hazard**

The following is added to the Representations Condition under Section IV - Commercial General Liability Conditions:

Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this policy based solely on such failure.

**H. Waiver of Subrogation for Written Contracts**

The following is added to the Transfer of Rights of Recovery Against Others to Us Condition under Section IV - Commercial General Liability Conditions:

We waive any right of recovery we may have against a person or organization because of payments we make for injury or damage arising out of your ongoing operations or *your work* done under a contract with that person or organization and included in the *products-completed operations hazard.*

The waiver applies only to:

**1.** Any person or organization with whom you have a written contract or agreement in which you are required to waive rights of recovery under this policy. Such contract or agreement must have been executed prior to the *occurrence* causing injury or damage; and

**2.** Any other person or organization you are required to add as an additional insured under the contract or agreement described in paragraph 1 above.

**I. Liberalization**

The following is added to Section IV - Commercial General Liability Conditions:

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**J. Broadened Bodily Injury**

The Definition of *Bodily Injury* is amended to include mental anguish.

**K. Electronic Data Liability**

**1.** Exclusion 2q of Coverage A - Bodily Injury And Property Damage Liability in Section I - Coverages is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial

Acuity File - 054

information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate *electronic data* that does not result from physical injury to tangible property.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in paragraph (1) or (2) above.

However, unless paragraph (1) above applies, this exclusion does not apply to damages because of *bodily injury*.

2. The following paragraph is added to Section III - Limits of Insurance:

Subject to paragraph 5 above, $10,000 is the most we will pay under Coverage A for *property damage* because of all loss of *electronic data* arising out of any one *occurrence*.

3. The following definition is added to Section V - Definitions:

*"Electronic data"* means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and application software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

4. For the purposes of this coverage, the definition of *"property damage"* in Section V - Definitions is replaced by the following:

*"Property damage"* means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it; or

c. Loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate *electronic data*, resulting from physical injury to tangible property. All such loss of *electronic data*

shall be deemed to occur at the time of the *occurrence* that caused it.

For the purposes of this coverage, *electronic data* is not tangible property.

L. **Employee Benefits Liability Coverage**

1. The following is added to Section I - Coverages:

**Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this coverage applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages to which this coverage does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any *claim* or *suit* that may result. But:

(1) The amount we will pay for damages is limited as described in paragraph 5 of this coverage; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This coverage applies to damages only if:

(1) The act, error or omission, is negligently committed in the *administration* of your *employee benefit program;*

(2) The act, error or omission, did not take place before the original inception date of this coverage nor after the end of the policy period; and

(3) A *claim* for damages, because of an act, error or omission, is first made against any insured, in accordance with paragraph c below, during the policy period or an Extended Reporting Period we provide under paragraph 6 of this coverage.

c. A *claim* seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such *claim* is

Acuity File - 055

received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with paragraph a above.

A *claim* received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All *claims* for damages made by an *employee* because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such *employee's* dependents and beneficiaries, will be deemed to have been made at the time the first of those *claims* is made against any insured.

### Exclusions

This coverage does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

*Bodily injury, property damage* or *personal and advertising injury*.

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the *employee benefit program*.

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any *claim* based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the *employee benefit program.*

**f. Workers' Compensation And Similar Laws**

Any *claim* arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any *claim* for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**2.** For the purposes of the coverage provided:

**a.** All references to Supplementary Payments - Coverages A and B are replaced by Supplementary Payments - Coverages A, B and Employee Benefits Liability.

**b.** Paragraphs 1b and 2 of the Supplementary Payments provision do not apply.

**3.** For the purposes of the coverage provided, paragraphs 2 and 3 of Section II - Who Is An Insured are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your *employees* who is or was authorized to administer your *employee benefit program.*

**b.** Any persons, organizations or *employees* having proper temporary authorization to administer your *employee benefit program* if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as

   Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Acuity File - 056

such. That representative will have all your rights and duties under this coverage.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

    a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

4. For the purposes of the coverage provided, Section III - Limits Of Insurance is replaced by the following:

**Limits Of Insurance**

    a. The Limits of Insurance shown in d below and the rules below fix the most we will pay regardless of the number of:

        (1) Insureds;

        (2) *Claims* made or *suits* brought;

        (3) Persons or organizations making *claims* or bringing *suits;*

        (4) Acts, errors or omissions; or

        (5) Benefits included in your *employee benefit program.*

    b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the *administration* of your *employee benefit program.*

    c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one *employee,* including damages sustained by such *employee's* dependents and beneficiaries, as a result of:

        (1) An act, error or omission; or

        (2) A series of related acts, errors or omissions

    negligently committed in the *administration* of your *employee benefit program.*

    However, the amount paid under this coverage shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any

plan included in the *employee benefit program.*

    d. Limits of Insurance

    Each Employee Limit: $250,000

    Aggregate Limit: $250,000

The Limits of Insurance of this coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this coverage is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**Deductible**

    a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in e below as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

    b. The deductible amount stated in e below applies to all damages sustained by any one *employee,* including such *employee's* dependents and beneficiaries, because of all acts, errors or omissions to which this coverage applies.

    c. The terms of this coverage, including those with respect to:

        (1) Our right and duty to defend any *suits* seeking those damages; and

        (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or *claim*

    apply irrespective of the application of the deductible amount.

    d. We may pay any part or all of the deductible amount to effect settlement of any *claim* or *suit* and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

    e. Deductible

    Each Employee Deductible: $1,000

5. For the purposes of the coverage provided, Conditions 2 and 4 of Section IV - Conditions are replaced by the following:

    **2. Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

**Acuity File - 057**

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a *claim*. To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a *claim* is made or *suit* is brought against any insured, you must:

(1) Immediately record the specifics of the *claim* or *suit* and the date received; and

(2) Notify us as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the *claim* or *suit;*

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the *claim* or defense against the *suit;* and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this coverage may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

e. The requirements to notify us can be satisfied by notifying our agent. Notice can be by any means of communication.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this coverage, our obligations are limited as follows:

a. **Primary Insurance**

This coverage is primary except when paragraph b below applies. If this coverage is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph c below.

b. **Excess Insurance**

(1) This coverage is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and that applies to an act, error or omission on other than a claims-made basis, if the other insurance has a policy period which continues after the original inception date of this coverage.

(2) When this coverage is excess, we will have no duty to defend the insured against any *suit* if any other insurer has a duty to defend the insured against that *suit*. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this coverage is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this coverage; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in paragraph 5d of this coverage.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares,

Acuity File - 058

we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limits of Insurance to the total applicable Limits of Insurance of all insurers.

6. For the purposes of the coverage provided, the following Extended Reporting Period provisions are added, or, if this coverage is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

a. You will have the right to purchase an Extended Reporting Period, as described below, if:

(1) This coverage is canceled or not renewed; or

(2) We renew or replace this coverage with insurance that:

(a) Has an inception date later than the original inception date of this coverage; or

(b) Does not apply to an act, error or omission on a claims-made basis.

b. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to *claims* for acts, errors or omissions that were first committed before the end of the policy period but not before the original inception date of this coverage. Once in effect, the Extended Reporting Period may not be canceled.

c. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

(1) The *employee benefit programs* insured;

(2) Previous types and amounts of insurance;

(3) Limits of insurance available under this coverage for future payment of damages; and

(4) Other related factors.

The additional premium will not exceed $100.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the coverage afforded for *claims* first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

d. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in paragraph 5d of this coverage under Limits of Insurance.

Paragraph 5b of this coverage will be amended accordingly. The Each Employee Limit shown in paragraph 5d will then continue to apply as set forth in paragraph 5c.

7. For the purposes of the coverage provided, the following definitions are added to the Definitions Section:

a. *"Administration"* means:

(1) Providing information to *employees,* including their dependents and beneficiaries, with respect to eligibility for or scope of *employee benefit programs;*

(2) Handling records in connection with the *employee benefit program;* or

(3) Effecting, continuing or terminating any *employee's* participation in any benefit included in the *employee benefit program.*

However, *administration* does not include handling payroll deductions.

b. *"Cafeteria plans"* means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

c. *"Claim"* means any demand, or *suit,* made by an *employee* or an *employee's* dependents and beneficiaries, for damages as the result of an act, error or omission.

Acuity File - 059

d. *"Employee benefit program"* means a program providing some or all of the following benefits to *employees,* whether provided through a *cafeteria plan* or otherwise:

(1) Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an *employee* may subscribe to such benefits and such benefits are made generally available to those *employees* who satisfy the plan's eligibility requirements;

(2) Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an *employee* may subscribe to such benefits and such benefits are made generally available to all *employees* who are eligible under the plan for such benefits;

(3) Unemployment insurance, social security benefits, workers' compensation and disability benefits;

(4) Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

(5) Any other similar benefits added thereto by endorsement.

8. For the purposes of the coverage provided, the following Definitions in the Definitions Section are replaced by the following:

a. *"Employee"* means a person actively employed, formerly employed, on leave of absence or disabled, or retired. *Employee* includes a *leased worker. Employee* does not include a *temporary worker.*

b. *"Suit"* means a civil proceeding in which damages because of an act, error or omission to which this coverage applies are alleged. *Suit* includes:

(1) An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

(2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which

the insured submits with our consent.

**M. Voluntary Property Damage**

1. With respect to the insurance provided under this coverage, paragraph 2 Exclusions of Coverage A - Bodily Injury and Property Damage Liability under Section I - Coverages is modified as followed:

a. Exclusion 2j(4) is replaced by the following:

(4) Personal property of others:

(a) Held by the insured for servicing, repair, storage or sale at premises owned, occupied or rented to the insured.

(b) Caused by the ownership, maintenance, use, loading or unloading of any auto, watercraft or transportation of property by any means.

b. Exclusion 2j(5) is deleted.

2. The insurance provided by this coverage is subject to the following provisions:

a. We will pay for *property damage* at your request even if you are not legally liable, if it is otherwise subject to this coverage.

b. *Property damage* does not include loss of use if personal property of others is not physically injured.

c. **Limits**

The most we will pay for an *occurrence* under this coverage is $2,500.

The most we will pay for the sum of all amounts paid under this coverage is an aggregate of $2,500.

The General Aggregate Limit and Each Occurrence Limit under Section III - Limits of Insurance do not apply to the insurance provided under this coverage.

d. **Settlement**

If you make any repairs to damaged property, at our request, we will pay the larger of your actual cost or 75% of your usual charge for the necessary labor and materials. Any property paid for or replaced by us may become our property at our option. Any payment made under this coverage shall not be interpreted as an admission of liability by the insured or the company.

e. **Deductible**

Our obligation to pay for a covered loss applies only to the amount of loss in

Acuity File - 060

excess of $200.

**f.  Other Insurance**

The insurance provided by this coverage is excess over any other insurance carried by the insured which applies to a loss covered by this coverage.

**N.  Increased Limits of Insurance**

1.  The General Aggregate Limit is increased to three times the Each Occurrence Limit.

2.  The Products-Completed Operations Aggregate Limit is increased to three times the Each Occurrence Limit.

3.  The Damage To Premises Rented To You Limit is increased to $250,000.

4.  The Medical Expense Limit is increased to $10,000.

The Limits of Insurance shown here do not replace and are not in addition to the Limits of Insurance shown in the Declarations.

Acuity File - 061

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

CG-7321(1-15)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

LIQUOR LIABILITY COVERAGE FORM

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

POLLUTION LIABILITY COVERAGE FORM

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a certified act of terrorism include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Acuity File - 062

EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM                    CG-7323(1-15)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

LIQUOR LIABILITY COVERAGE FORM

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

POLLUTION LIABILITY COVERAGE FORM

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

A.  The following exclusion is added:

This insurance does not apply to:

TERRORISM PUNITIVE DAMAGES

Damages arising, directly or indirectly, out of a *certified act of terrorism* that are awarded as punitive damages.

B.  The following definition is added:

*"Certified act of terrorism"* means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a *certified act of terrorism* include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

CG-7323(1-15)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 1 of 1

**Acuity File - 063**

COMMON POLICY CONDITIONS                                        IL-0017F(11-98)

All Coverage Parts included in this policy are subject to the following conditions.

A. CANCELLATION

1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

a. Ten days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. Thirty days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The First Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. INSPECTIONS AND SURVEYS

1. We have the right to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1 and 2 of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2 of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

E. PREMIUMS

The First Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Acuity File - 064

NUCLEAR ENERGY LIABILITY EXCLUSION - BROAD FORM                                    IL-0021F(3-14)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTO COVERAGE PART

COMMERCIAL GENERAL LIABILITY COVERAGE PART

DIRECTORS' AND OFFICERS' LIABILITY COVERAGE PART

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

ERRORS AND OMISSIONS COVERAGE PART

FARM COVERAGE PART

LIQUOR LIABILITY COVERAGE FORM

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

POLLUTION LIABILITY COVERAGE FORM

PRODUCT WITHDRAWAL COVERAGE PART

PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

1. The insurance does not apply:

   a. Under any Liability Coverage to *bodily injury* or *property damage:*

      (1) With respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the *hazardous properties* of *nuclear material* and with respect to which:

         (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any law amendatory thereof; or

         (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments coverage, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

   c. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material,* if:

      (1) The *nuclear material:*

         (a) Is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured;* or

         (b) Has been discharged or dispersed therefrom.

      (2) The *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured;* or

      (3) The *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear facility,* but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

2. As used in this endorsement:

   a. *"Hazardous properties"* include radioactive, toxic or explosive properties.

   b. *"Nuclear material"* means *source material, special nuclear material* or *byproduct material.*

   c. *"Source material," "special nuclear material"* and *"byproduct material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   d. *"Spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor.*

   e. *"Waste"* means any waste material:

      (1) Containing *byproducts material* other than the tailings or *wastes* produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its *source material* content; and

      (2) Resulting from the operation by any person or organization of any *nuclear facility* included under the first two paragraphs of the definition of *nuclear facility.*

   f. *"Nuclear facility"* means:

      (1) Any *nuclear reactor;*

      (2) Any equipment or device designed or used for:

         (a) Separating the isotopes of uranium or plutonium;

         (b) Processing or utilizing *spent fuel;* or

Acuity File - 065

(c) Handling, processing or packaging *waste.*

(3) Any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) Any structure, basin, excavation, prem-ises or place prepared or used for the storage or disposal of *waste;*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. *"Nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. *"Property damage"* includes all forms of radioactive contamination of property.

Acuity File - 066

## PENNSYLVANIA CHANGES - DEFENSE COSTS

IL-0120R(3-14)

This endorsement modifies insurance provided under the following:

BIS-PAK® COVERAGE PART

COMMERCIAL AUTOMOBILE COVERAGE PART

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COMMERCIAL EXCESS LIABILITY COVERAGE PART

COMMERCIAL PROPERTY COVERAGE PART - LEGAL LIABILITY COVERAGE FORM

COMMERCIAL PROPERTY COVERAGE PART- MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART

ERRORS AND OMISSIONS COVERAGE PART

LIQUOR LIABILITY COVERAGE FORM

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

PRODUCT WITHDRAWAL COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

A. The provisions of paragraph B are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Bis-Pak®, Commercial General Liability, Commercial Excess Liability, Errors And Omissions, Employment-Related Practices Liability, Liquor Liability, Owners And Contractors Protective Liability, Product Withdrawal, Products/Completed Operations Liability, and Railroad Protective Liability Coverage Forms or Parts;

2. Section II - Liability Coverage in paragraph A Coverage under the Business Auto, Garage and Motor Carrier Coverage Forms;

3. Section A - Coverage under the Legal Liability Coverage Form;

4. Coverage C - Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form; and

5. Coverage, paragraph 1, under Employee Benefits Liability Coverage Form.

Paragraph B also applies to any other provision in the policy that sets forth a duty to defend.

B. If we initially defend an insured ("*insured*") or pay for an insured's ("*insured's*") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

Acuity File - 067

PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL                    IL-0246F(3-14)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
DIRECTORS' AND OFFICERS' LIABILITY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART
LIQUOR LIABILITY COVERAGE FORM
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

A. The Cancellation Common Policy Condition is replaced by the following:

CANCELLATION

1. The First Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. Cancellation Of Policies In Effect For Less Than 60 Days

   We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. Cancellation Of Policies In Effect For 60 Days Or More

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days

before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the First Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the First Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. Nonrenewal

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the First Named Insured at least 60 days before the expiration date of the policy.

**Acuity File - 068**

2. Increase Of Premium

If we increase your renewal premium, we will mail or deliver to the First Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the First Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**Acuity File - 069**

## ASBESTOS EXCLUSION

IL-7012(1-18)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSE COVERAGE FORM

COMMERCIAL AUTO COVERAGE PART

COMMERCIAL GENERAL LIABILITY COVERAGE PART

DIRECTORS' AND OFFICERS' LIABILITY COVERAGE PART

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

ERRORS AND OMISSIONS COVERAGE PART

GARAGE COVERAGE FORM

LIQUOR LIABILITY COVERAGE FORM

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

POLLUTION LIABILITY COVERAGE FORM

PRODUCT WITHDRAWAL COVERAGE PART

PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

RESIDENTIAL CARE FACILITY LIABILITY COVERAGE PART

The following exclusion is added:

Asbestos

This insurance does not apply to any *bodily injury* or *property damage* arising out of activities related to, but not limited to, manufacture, mining, storage, distribution, installation, sale, use, exposure to, service, testing for, repair, containment or removal of asbestos, asbestos fibers, asbestos dust, or products containing asbestos.

**Acuity File - 070**

DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT                    IL-7082(12-20)

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

A.  Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the policy Declarations.

B.  Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The federal share percentage is 80%. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C.  Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Acuity File - 071

AMENDMENT TO DEFINITION OF OCCURRENCE                    IL-7092(2-11)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

The definition of Occurrence is replaced by the following:

*Occurrence* means an accident, including continuous or repeated exposure to substantially the same gen-eral harmful conditions. *Occurrence* includes:

A.  *Property damage* to *your work* if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the *property damage* to *your work* is included in the *products-completed operations hazard;*

B.  *Property damage* to property other than *your work* that arises out of *your work.*

All other terms, exclusions, limitations and conditions of the policy remain unchanged.

Acuity File - 072

**CYBER SUITE COVERAGE ENDORSEMENT**                                    IL-7149(7-20)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Throughout this Coverage Endorsement (hereinafter referred to as "Cyber Coverage"), the words "you" and "your" refer to the Named Insured(s) shown in the Schedule of this Cyber Coverage and any other person(s) or organization(s) qualifying as a Named Insured under this Cyber Coverage. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in italics have special meaning. Refer to **DEFINITIONS**.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions and any amendment to such terms incorporated by endorsement are hereby incorporated herein and shall apply to coverage as is afforded by this Cyber Coverage, unless specifically stated otherwise in an endorsement(s) attached hereto.

## A. COVERAGE

This section lists the coverages that apply if indicated in the Schedule of this Cyber Coverage.

### 1. Data Compromise Response Expenses

a. Data Compromise Response Expenses applies only if all of the following conditions are met:

(1) There has been a *personal data compromise*; and

(2) Such *personal data compromise took* place in the *coverage territory*; and

(3) Such *personal data compromise* is first discovered by you during the *policy period;* and

(4) Such *personal data compromise* is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you.

b. If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from such *personal data compromise* and are necessary and reasonable. Items **(4)** and **(5)** below apply only if there has been a notification of the *personal data compromise* to *affected individuals* as covered under item **(3)** below.

**(1) Forensic IT Review**

We will pay for a professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the *personal data compromise* and the number and identities of the *affected individuals*.

This does not include costs to analyze, research or determine any of the following:

**(a)** Vulnerabilities in systems, procedures or physical security;

**(b)** Compliance with Payment Card Industry or other industry security standards; or

**(c)** The nature or extent of *loss* or damage to data that is not *personally identifying information* or *personally sensitive information*.

If there is reasonable cause to suspect that a covered *personal data compromise* may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered *personal data compromise.* However, once it is determined that there was no covered *personal data compromise,* we will not pay for any further costs.

**(2) Legal Review**

We will pay for a professional legal counsel review of the *personal data compromise* and how you should best respond to it.

If there is reasonable cause to suspect that a covered *personal data compromise* may have occurred, we will pay for costs covered under Legal Review, even if it is eventually determined that there was no covered *personal data compromise.* However, once it is determined that there was no covered *personal data compromise*, we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the *personal data compromise* to *affected individuals*.

**(4) Services to Affected Individuals**

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.          Page **1** of **19**

Acuity File - 073

We will pay your necessary and reasonable costs to provide the following services to *affected individuals* Services **(c)** and **(d)** below apply only to *affected individuals* from *personal data compromise* events involving *personally identifying information.*

**(a) Informational Materials**

A packet of loss prevention and customer support information.

**(b) Help Line**

A toll-free telephone line for *affected individuals* with questions about the *personal data compromise*. Where applicable, the line can also be used to request additional services as listed in **(c)** and **(d)** below.

**(c) Credit Report and Monitoring**

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the *affected individual* enrolling for this service with the designated service provider.

**(d) Identity Restoration Case Management**

As respects any *affected individual* who is or appears to be a victim of *identity theft* that may reasonably have arisen from the *personal data compromise*, the services of an identity restoration professional who will assist that affected individual through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) Public Relations**

We will pay for a professional public relations firm review of, and response to, the potential impact of the *personal data compromise* on your business relationships.

This includes necessary and reasonable costs to implement public relations recommendations of such firm. This may include advertising and special promotions designed to retain your relationship with *affected individuals*. However, we will not pay for:

**(a)** Promotions provided to any of your directors or employees; or

*(b)* Promotion costs exceeding $25 per *affected individual.*

**(6) Regulatory Fines and Penalties**

We will pay for any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction.

**(7) PCI Fines and Penalties**

We will pay for any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party. PCI Fines and Penalties do not include any increased transaction costs.

## 2. Computer Attack

**a.** Computer Attack applies only if all of the following conditions are met:

**(1)** There has been a *computer attack*; and

**(2)** Such *computer attack* occurred in the *coverage territory*; and

**(3)** Such *computer attack* is first discovered by you during the *policy period;* and

**(4)** Such *computer attack* is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you.

**b.** If the conditions listed in **a.** above have been met, then we will provide you the following coverages for *loss* directly arising from such *computer attack.*

**(1) Data Restoration**

We will pay your necessary and reasonable *data restoration costs.*

**(2) Data Re-creation**

We will pay your necessary and reasonable *data re-creation costs.*

**(3) System Restoration**

We will pay your necessary and reasonable *system restoration costs.*

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.          Page **2** of **19**

Acuity File - 074

**(4) Loss of Business**

We will pay your actual *business income and extra expense loss* incurred during the *period of restoration.*

**(5) Extended Income Recovery**

If you suffer a covered *business income and extra expense loss* resulting from a *computer attack* on a *computer system* owned or leased by you and operated under your control, we will pay your actual *extended income loss.*

**(6) Public Relations**

If you suffer a covered *business income and extra expense loss,* we will pay for the services of a professional public relations firm to assist you in communicating your response to the *computer attack* to the media, the public and your customers, clients or members.

3. **Cyber Extortion**

   a. Cyber Extortion applies only if all of the following conditions are met:

      **(1)** There has been a *cyber extortion threat;* and

      **(2)** Such *cyber extortion threat* is first made against you during the *policy period;* and

      **(3)** Such *cyber extortion threat* is reported to us as soon as practicable, but in no event more than 60 days after the date it is first made against you.

   b. If the conditions listed in **a.** above have been met, then we will pay for your necessary and reasonable *cyber extortion expenses* arising directly from such *cyber extortion threat.* The payment of *cyber extortion expenses* must be approved in advance by us. We will not pay for *cyber extortion expenses* that have not been approved in advance by us. We will not unreasonably withhold our approval.

   c. You must make every reasonable effort not to divulge the existence of this Cyber Extortion coverage.

4. **Misdirected Payment Fraud**

   a. Misdirected Payment Fraud applies only if all of the following conditions are met:

      **(1)** There has been a *wrongful transfer event* against you; and

      **(2)** Such *wrongful transfer event* took place in the *coverage territory;* and

      **(3)** Such *wrongful transfer event* is first discovered by you during the *policy period;* and

      **(4)** Such *wrongful transfer event* is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you; and

      **(5)** Such *wrongful transfer event* is reported in writing by you to the police.

   b. If the conditions listed above in **a.** have been met, then we will pay your necessary and reasonable *wrongful transfer costs* arising directly from the *wrongful transfer event.*

5. **Computer Fraud**

   a. Computer Fraud applies only if all of the following conditions are met:

      **(1)** There has been a *computer fraud event* against you; and

      **(2)** Such *computer fraud event* took place in the *coverage territory;* and

      **(3)** Such *computer fraud event* is first discovered by you during the *policy period;* and

      **(4)** Such *computer fraud event* is reported to us within 60 days after the date it is first discovered by you; and

      **(5)** Such *computer fraud event* is reported in writing by you to the police.

   b. If the conditions listed in **a.** above have been met, then we will pay your necessary and reasonable *computer fraud costs* arising directly from the *computer fraud event.*

6. **Data Compromise Liability**

   a. Data Compromise Liability applies only if all of the following conditions are met:

      **(1)** During the *policy period* or any applicable Extended Reporting Period, you first receive notice of one of the following:

      **(a)** A *claim;* or

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.          Page **3** of **19**

Acuity File - 075

**(b)** A *regulatory proceeding*.

**(2)** Such *claim* or *regulatory proceeding* must arise from a *personal data compromise* that:

    **(a)** Took place during the *coverage term*; and

    **(b)** Took place in the *coverage territory*; and

    **(c)** Was submitted to us and insured under Data Compromise Response Expenses.

**(3)** Such *claim* is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on your behalf any covered:

    **(1)** *Loss* directly arising from the *claim*; or

    **(2)** *Defense costs* directly arising from a *regulatory proceeding*.

**c.** All *claims* and *regulatory proceedings* arising from a single *personal data compromise* or interrelated *personal data compromises* will be deemed to have been made at the time that notice of the first of those *claims* or *regulatory proceedings* is received by you.

**7. Network Security Liability**

**a.** Network Security Liability applies only if all of the following conditions are met:

**(1)** During the *policy period* or any applicable Extended Reporting Period, you first receive notice of a *claim* which arises from a *network security liability incident* that:

    **(a)** Took place during the *coverage term;* and

    **(b)** Took place in the *coverage territory;* and

**(2)** Such *claim* is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on your behalf any covered *loss* directly arising from the *claim*.

**c.** All *claims* arising from a single *network security liability incident* or interrelated *network security liability incidents* will be deemed to have been made at the time that notice of the first of those *claims* is received by you.

**8. Electronic Media Liability**

**a.** Electronic Media Liability applies only if all of the following conditions are met:

**(1)** During the *policy period* or any applicable Extended Reporting Period, you first receive notice of a *claim* which arises from an *electronic media liability incident* that:

    **(a)** Took place during the *coverage term*; and

    **(b)** Took place in the *coverage territory*; and

**(2)** Such *claim* is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on your behalf any covered *loss* directly arising from the *claim*.

**c.** All *claims* arising from a single *electronic media liability incident* or interrelated *electronic media liability incidents* will be deemed to have been made at the time that notice of the first of those *claims* is received by you.

**9. Identity Recovery**

**a.** Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an *identity theft* involving the personal identity of an *identity recovery insured* under this Cyber Suite Coverage; and

**(2)** Such *identity theft* took place in the *coverage territory*; and

**(3)** Such *identity theft* is first discovered by the *identity recovery insured* during the *policy period*; and

**(4)** Such *identity theft* is reported to us within 60 days after it is first discovered by the *identity recovery insured*.

**b.** If the conditions listed in a. above have been met, then we will provide the following to the *identity*

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.    Page **4** of **19**

Acuity File - 076

*recovery insured:*

**(1) Case Management Service**

We will pay for the services of an *identity recovery case manager* as needed to respond to the *identity theft*; and

**(2) Expense Reimbursement**

We will pay for reimbursement of necessary and reasonable *identity recovery expenses* incurred as a direct result of the *identity theft.*

## B. EXCLUSIONS

The following additional exclusions apply to this coverage:

We will not pay for costs or *loss* arising from the following:

1.  Nuclear reaction or radiation or radioactive contamination, however caused.
2.  War and military action including any of the following and any consequence of any of the following:
    a.  War, including undeclared or civil war;
    b.  Warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
    c.  Insurrection, rebellion, revolution, usurped power, political violence or action taken by governmental authority in hindering or defending against any of these.
3.  Failure or interruption of, or damage to, any electrical power supply network or telecommunications network not owned and operated by you including, but not limited to, the internet, internet service providers, Domain Name System (DNS) service providers, cable and wireless providers, internet exchange providers, search engine providers, internet protocol networks (and similar networks that may have different designations) and other providers of telecommunications or internet infrastructure.
4.  Any attack on, incident involving, or loss to any computer or system of computers that is not a *computer system.*
5.  Costs to research or correct any deficiency.
6.  Any fines or penalties other than those explicitly covered under Data Compromise Response Expenses.
7.  Any criminal investigations or proceedings.
8.  Your intentional or willful complicity in a covered *loss* event.
9.  Your reckless disregard for the security of your *computer system* or data, including confidential or sensitive information of others in your care, custody or control.
10. Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.
11. Any *personal data compromise, computer attack, cyber extortion threat, wrongful transfer event, computer fraud event* or *wrongful act* occurring before the *coverage term.*
12. That part of any *claim* seeking any non-monetary relief. However, this exclusion does not apply to *defense costs* arising from an otherwise insured *wrongful act.*
13. The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.
14. Any oral or written publication of material, if done by you or at your direction with knowledge of its falsity.
15. *Property damage* or *bodily injury* other than mental anguish or mental injury alleged in a *claim* covered under Electronic Media Liability.
16. The theft of a professional or business identity.
17. Any fraudulent, dishonest or criminal act by an *identity recovery insured* or any person aiding or abetting an *identity recovery insured* , or by any *authorized representative* of an *identity recovery insured*, whether acting alone or in collusion with others. However, this exclusion will not apply to the interests of an *identity recovery insured* who has no knowledge of or involvement in such fraud, dishonesty or criminal act.
18. An *identity theft* that is not reported in writing to the police.

## C. LIMITS OF INSURANCE

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.          Page **5** of **19**

Acuity File - 077

1. **Aggregate Limits**

   Except for post-judgment interest, the Cyber Suite Annual Aggregate Limit shown in the Cyber Suite Schedule is the most we will pay for all *loss* under all applicable coverage sections, except Identity Recovery, in any one *policy period* or any applicable Extended Reporting Period. The Cyber Suite Annual Aggregate Limit shown in the Cyber Suite Schedule applies regardless of the number of insured events first discovered or *claims* or *regulatory proceedings* first received during the *policy period* or any applicable Extended Reporting Period.

   The Identity Recovery Coverage is subject to the Identity Recovery Limit as shown in the Cyber Suite Schedule.

2. **Coverage Sublimits**

   a. **Data Compromise Sublimits**

      The most we will pay under Data Compromise Response Expenses for Forensic IT Review, Legal Review, Public Relations, Regulatory Fines and Penalties and PCI Fines and Penalties coverages for *loss* arising from any one *personal data compromise* is the applicable sublimit for each of those coverages shown in the Cyber Suite Schedule.

      These sublimits are part of, and not in addition to, the Cyber Suite Annual Aggregate Limit shown in the Cyber Suite Schedule. Public Relations coverage is also subject to a limit per *affected individual* as described in **A.1.b.(5)**.

   b. **Computer Attack Sublimits**

      The most we will pay under Computer Attack for Loss of Business and Extended Income Recovery coverages for *loss* arising from any one *computer attack* is the applicable Loss of Business sublimit shown in the Cyber Suite Schedule. The most we will pay under Computer Attack for Public Relations coverage for *loss* arising from any one *computer attack* is the applicable Public Relations sublimit shown in the Cyber Suite Schedule. These sublimits are part of, and not in addition to, the Cyber Suite Annual Aggregate Limit shown in the Cyber Suite Schedule.

   c. **Cyber Extortion Sublimit**

      The most we will pay under Cyber Extortion coverage for *loss* arising from one *cyber extortion threat* is the applicable sublimit shown in the Cyber Suite Schedule. This sublimit is part of, and not in addition to, the Cyber Suite Annual Aggregate Limit shown in the Cyber Suite Schedule.

   d. **Misdirected Payment Fraud Sublimit**

      The most we will pay under Misdirected Payment Fraud coverage for *loss* arising from one *wrongful transfer event* is the applicable sublimit shown in the Cyber Suite Schedule. This sublimit is part of, and not in addition to, the Cyber Suite Annual Aggregate Limit shown in the Cyber Suite Schedule.

   e. **Computer Fraud Sublimit**

      The most we will pay under Computer Fraud coverage for *loss* arising from one *computer fraud event* is the applicable sublimit shown in the Cyber Suite Schedule. This sublimit is part of, and not in addition to, the Cyber Suite Annual Aggregate Limit shown in the Cyber Suite Schedule.

   f. **Identity Recovery Sublimits**

      The following provisions are applicable only to the Identity Recovery Coverage.

      **(1)** Case Management Service is available as needed for any one *identity theft* for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Services do not reduce the annual aggregate limit for Identity Recovery.

      **(2)** Costs covered under item d. (Legal Costs) of the definition of *identity recovery expenses* are part of, and not in addition to, the annual aggregate limit for Identity Recovery.

      **(3)** Costs covered under item e. (Lost Wages) and item f. (Child and Elder Care Expenses) of the definition of *identity recovery expenses* are jointly subject to the Lost Wages and Child and Elder Care sublimit shown in the Cyber Suite Schedule. This sublimit is part of, and not in addition to, the annual aggregate limit for Identity Recovery. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the *identity theft* by the *identity recovery insured*.

      **(4)** Costs covered under item g. (Mental Health Counseling) of the definition of *identity recovery expenses* is subject to the Mental Health Counseling sublimit shown in the Cyber Suite

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.

Acuity File - 078

Supplemental Declarations. This sublimit is part of, and not in addition to, the annual aggregate limit for Identity Recovery. Coverage is limited to counseling that takes place within 12 months after the first discovery of the *identity theft* by the *identity recovery insured*.

**(5)** Costs covered under item h. (Miscellaneous Unnamed Costs) of the definition of *identity recovery expenses* is subject to the Miscellaneous Unnamed Costs sublimit shown in the Cyber Suite Schedule. This sublimit is part of, and not in addition to, the annual aggregate limit for Identity Recovery. Coverage is limited to costs incurred within 12 months after the first discovery of the *identity theft* by the *identity recovery insured* .

### 3. Application of Limits

**a.** A *computer attack, cyber extortion threat, personal data compromise, wrongful transfer event, computer fraud event* or *identity theft* may be first discovered by you in one *policy period* but it may cause insured *loss* in one or more subsequent *policy periods.* If so, all insured *loss* arising from such *computer attack, cyber extortion threat, personal data compromise, wrongful transfer event, computer fraud event* or *identity theft* will be subject to the limit of insurance applicable to the *policy period* when the *computer attack, cyber extortion threat, personal data compromise, wrongful transfer event, computer fraud event* or *identity theft* was first discovered by you.

**b.** You may first receive notice of a *claim* or *regulatory proceeding* in one *policy period* but it may cause insured *loss* in one or more subsequent *policy periods.* If so, all insured *loss* arising from such *claim* or *regulatory proceeding* will be subject to the limit of insurance applicable to the *policy period* when notice of the *claim* or *regulatory proceeding* was first received by you.

**c.** The limit of insurance for the Extended Reporting Periods (if applicable) will be part of, and not in addition to, the limit of insurance for the immediately preceding *policy period.*

**d.** Coverage for Services to Affected Individuals under Data Compromise Response Expenses is limited to costs to provide such services for a period of up to one year from the date of the notification to the *affected individuals* Notwithstanding, coverage for Identity Restoration Case Management services initiated within such one year period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

## D. DEDUCTIBLES

**1.** We will not pay for *loss* until the amount of the insured *loss* exceeds the deductible amount shown in the Cyber Suite Schedule. We will then pay the amount of *loss* in excess of the applicable deductible amount, subject to the applicable limits shown in the Cyber Suite Schedule. You will be responsible for the applicable deductible amount.

**2.** The deductible will apply to all:

**a.** *Loss* arising from the same insured event or interrelated insured events under Data Compromise Response Expenses, Computer Attack, Cyber Extortion, Misdirected Payment Fraud, or Computer Fraud.

**b.** *Loss* resulting from the same *wrongful act* or interrelated *wrongful acts* insured under Data Compromise Liability, Network Security Liability or Electronic Media Liability.

**3.** In the event that *loss* is insured under more than one coverage section, only the single highest deductible applies.

**4.** Insurance coverage under Identity Recovery is not subject to a deductible.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### 1. Bankruptcy

The bankruptcy or insolvency of you or your estate, will not relieve you or us of any obligation under this Cyber Coverage.

### 2. Defense And Settlement

**a.** We shall have the right and the duty to assume the defense of any applicable *claim* or *regulatory proceeding* against you. You shall give us such information and cooperation as we may reasonably require.

**b.** You shall not admit liability for or settle any *claim* or *regulatory proceeding* or incur any defense costs without our prior written consent.

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. used with its permission.          Page **7** of **19**

Acuity File - 079

**c.** At the time a *claim* or *regulatory proceeding* is first reported to us, you may request that we appoint a defense attorney of your choice. We will give full consideration to any such request.

**d.** If you refuse to consent to any settlement recommended by us and acceptable to the claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such *claim* or *regulatory proceeding* independently of us. Our liability shall not exceed the amount for which the *claim* or suit could have been settled if such recommendation was consented to, plus *defense costs* incurred by us, and *defense costs* incurred by you with our written consent, prior to the date of such refusal.

**e.** We will not be obligated to pay any *loss* or *defense costs,* or to defend or continue to defend any *claim* or *regulatory proceeding* after the applicable limit of insurance has been exhausted.

**f.** We will pay all interest on that amount of any judgment within the applicable limit of insurance which accrues:

**(1)** After entry of judgment; and

**(2)** Before we pay, offer to pay or deposit in court that part of the judgment within the applicable limit of insurance or, in any case, before we pay or offer to pay the entire applicable limit of insurance.

These interest payments will be in addition to and not part of the applicable limit of insurance.

**3. Due Diligence**

You agree to use due diligence to prevent and mitigate *loss* insured under this Cyber Coverage. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, *computer system* and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing *personally identifying information, personally sensitive information* or *third party corporate data,* including shredding hard copy files and destroying physical media used to store electronic data.

**4. Duties in the Event of a Claim, Regulatory Proceeding or Loss**

**a.** If, during the *policy period*, incidents or events occur which you reasonably believe may give rise to a *claim* or *regulatory proceeding* for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with a federal, state or local agency; or upon an oral *claim*, allegation or threat, you shall give written notice to us as soon as practicable and either:

**(1)** Anytime during the *policy period*; or

**(2)** Anytime during the extended reporting periods (if applicable).

**b.** If a *claim* or *regulatory proceeding* is brought against you, you must:

**(1)** Immediately record the specifics of the *claim* or *regulatory proceeding* and the date received;

**(2)** Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the *claim* or *regulatory proceeding* is first received by you;

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the *claim* or *regulatory proceeding*;

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the *claim* or *regulatory proceeding*;

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of *loss* or *defense costs* to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such *claim* or *regulatory proceeding.*

**c.** In the event of a *personal data compromise, computer attack, cyber extortion threat, wrongful transfer*

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. used with its permission.          Page **8** of **19**

Acuity File - 080

*event, computer fraud event* or *identity theft,* insured under this Cyber Coverage, you and any involved *identity recovery insured* must see that the following are done:

**(1)** Notify the police if a law may have been broken.

**(2)** Notify us as soon as practicable, but in no event more than 60 days after the *personal data compromise, computer attack, cyber extortion threat, wrongful transfer event, computer fraud event* or *identity theft.* Include a description of any property involved.

**(3)** As soon as possible, give us a description of how, when and where the *personal data compromise, computer attack, cyber extortion threat, wrongful transfer event, computer fraud event* or *identity theft* occurred.

**(4)** As often as may be reasonably required, permit us to:

    **(a)** Inspect the property proving the *personal data compromise, computer attack, cyber extortion threat, wrongful transfer event, computer fraud event* or *identity theft;*

    **(b)** Examine your books, records, electronic media and records and hardware;

    **(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

    **(d)** Make copies from your books, records, electronic media and records and hardware.

**(5)** Send us signed, sworn proof of *loss* containing the information we request to investigate the *personal data compromise, computer attack, cyber extortion threat, wrongful transfer event, computer fraud event* or *identity theft.* You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation or settlement of the *personal data compromise, computer attack, cyber extortion threat, wrongful transfer event, computer fraud event* or *identity theft.*

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any *loss* for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the *loss.*

**d.** We may examine you under oath at such times as may be reasonably required, about any matter relating to this insurance or the *claim, regulatory proceeding* or *loss,* including your books and records. In the event of an examination, your answers must be signed.

**e.** You may not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**5. Extended Reporting Periods**

**a.** You will have the right to the Extended Reporting Periods described in this section, in the event of a *termination of coverage.*

**b.** If a *termination of coverage* has occurred, you will have the right to the following:

**(1)** At no additional premium, an Automatic Extended Reporting Period of 30 days immediately following the effective date of the *termination of coverage* during which you may first receive notice of a *claim* or *regulatory proceeding* arising directly from a *wrongful act* occurring before the end of the *policy period* and which is otherwise insured by this Cyber Coverage; and

**(2)** Upon payment of the additional premium of 100% of the full annual premium associated with the relevant coverage, a Supplemental Extended Reporting Period of one year immediately following the effective date of the *termination of coverage* during which you may first receive notice of a *claim* or *regulatory proceeding* arising directly from a *wrongful act* occurring before the end of the *policy period* and which is otherwise insured by this Cyber Coverage.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 30 days after the effective date of *termination of coverage.* The additional premium for the Supplemental Extended Reporting Period will be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

This insurance, provided during the Supplemental Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Supplemental Extended Reporting Period becomes effective, whether the other insurance applies on a primary,

Acuity File - 081

excess, contingent, or any other basis.

**6. Identity Recovery Help Line**

For assistance, if Identity Recovery applies, the *identity recovery insured* should call the **Identity Recovery Help Line** at **1-866-219-0691**.

The **Identity Recovery Help Line** can provide the *identity recovery insured* with:

**a.** Information and advice for how to respond to a possible *identity theft*; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an *identity recovery insured* prior to a determination that a covered *identity theft* has occurred. Our provision of such services is not an admission of liability under the Cyber Coverage. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered *identity theft* has not occurred.

As respects Expense Reimbursement Coverage, the *identity recovery insured* must send to us, within 60 days after our request, receipts, bills or other records that support his or her *claim* for *identity recovery expenses.*

**7. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date the *loss* or *identity theft* is first discovered by you, or the date on which you first receive notice of a *claim* or *regulatory proceeding.*

**8. Legal Advice**

We are not your legal advisor. Our determination of what is or is not insured under this Cyber Coverage does not represent advice or counsel from us about what you should or should not do.

**9. Other Insurance**

If there is other insurance that applies to the same *loss*, this Cyber Coverage shall apply only as excess insurance after all other applicable insurance has been exhausted.

**10. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to *affected individuals*. We assume no responsibility under Data Compromise Response Expenses for any services promised to *affected individuals* without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under the Service Providers condition below. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of *affected individuals* to be notified, including contact information.

**b.** Information about the *personal data compromise* that may appropriately be communicated with *affected individuals.*

**c.** The scope of services that you desire for the *affected individuals*. For example, coverage may be structured to provide fewer services in order to make those services available to more *affected individuals* without exceeding the available Data Compromise Response Expenses limit of insurance.

**11. Service Providers**

**a.** We will only pay under this Cyber Coverage for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Cyber Coverage. We will not unreasonably withhold such approval.

**b.** Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

**(1)** Such alternate service provider must be approved by us;

**(2)** Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had

Acuity File - 082

suggested; and

**(3)** Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

**12. Services**

The following conditions apply as respects any services provided to you or any *affected individual* or *identity recovery insured* by us, our designees or any service firm paid for in whole or in part under this Cyber Coverage:

**a.** The effectiveness of such services depends on the cooperation and assistance of you, *affected individuals* and *identity recovery insureds*.

**b.** All services may not be available or applicable to all individuals. For example, *affected individuals* and *identity recovery insureds* who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an *identity recovery case manager* under Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Cyber Coverage. Those firms work for you.

**13. Valuation**

We will determine the value of *money* as follows:

Our payment for loss of *money* or loss payable in *money* will be, at your option, in the *money* of the country in which the *wrongful transfer event* or *computer fraud event* took place or in the United States of America dollar equivalent thereof determined at the rate of exchange published by the Wall Street Journal at the time of payment of such loss.

**F. DEFINITIONS**

**1.** "*Affected Individual*" means any person whose *personally identifying information* or *personally sensitive information* is lost, stolen, accidentally released or accidentally published by a *personal data compromise* covered under this Cyber Coverage. This definition is subject to the following provisions:

**a.** *Affected individual* does not include any business or organization. Only an individual person may be an *affected individual*.

**b.** An *affected individual* may reside anywhere in the world.

**2.** "*Authorized Representative*" means a person or entity authorized by law or contract to act on behalf of an *identity recovery insured* .

**3.** "*Authorized Third Party User*" means a party who is not an employee or a director of you who is authorized by contract or other agreement to access the *computer system* for the receipt or delivery of services.

**4.** "*Bodily Injury*" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "*Business Income and Extra Expense Loss*" means loss of Business Income and Extra Expense.

**a.** As used in this definition, Business Income means the sum of:

**(1)** Net income (net profit or loss before income taxes) that would have been earned or incurred; and

**(2)** Continuing normal and necessary operating expenses incurred, including employee and director payroll.

**b.** As used in this definition, Extra Expense means the additional cost you incur to operate your business over and above the cost that you normally would have incurred to operate your business during the same period had no *computer attack* occurred.

**6.** "*Claim*"

**a.** *Claim* means:

**(1)** A written demand for monetary damages or non-monetary relief, including injunctive relief;

**(2)** A civil proceeding commenced by the filing of a complaint;

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. used with its permission.       Page **11** of **19**

Acuity File - 083

(3) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

(4) Any other alternative dispute resolution proceeding in which such damages are claimed and to which you must submit or to which we agree you should submit to;

arising from a *wrongful act* or a series of interrelated *wrongful acts* including any resulting appeal.

    **b.** *Claim* does not mean or include:

      (1) Any demand or action brought by or on behalf of someone who is:

        **(a)** Your director;

        **(b)** Your owner or part-owner; or

        **(c)** A holder of your securities;

      in their capacity as such, whether directly, derivatively, or by class action. *Claim* will include proceedings brought by such individuals in their capacity as *affected individuals,* but only to the extent that the damages claimed are the same as would apply to any other *affected individual;* or

      **(2)** A *regulatory proceeding.*

    **c.** *Claim* includes a demand or proceeding arising from a *wrongful act* that is a *personal data compromise* only when the *personal data compromise* giving rise to the proceeding was covered under Data Compromise Response Expenses section of this Cyber Coverage, and you submitted a *claim* to us and provided notifications and services to affected individuals in consultation with us pursuant to Data Compromise Response Expenses in connection with such *personal data compromise.*

**7.** *"Computer Attack"*

    *a.* *"Computer attack"* means one of the following involving the *computer system:*

      *(1)* An *unauthorized access incident;*

      **(2)** A *malware attack;* or

      **(3)** A *denial of service attack* against a *computer system.*

    **b.** A *computer attack* ends at the earlier of:

      **(1)** The time that the active attacking behavior ceases, the time that you have regained control over the *computer system* or the time that all unauthorized creation, destruction or movement of data associated with the *computer attack* has ceased, whichever happens latest; or

      **(2)** 30 days after your discovery of the *computer attack.*

**8.** *"Computer Fraud Costs"* means:

    **a.** The amount of *money* fraudulently obtained from you. *Computer fraud costs* include the direct financial loss only.

    **b.** *Computer fraud costs* do not include any of the following:

      *(1)* Other expenses that arise from the *computer fraud event;*

      **(2)** Indirect loss, such as *bodily injury,* lost time, lost wages, *identity recovery expenses* or damaged reputation;

      **(3)** Any interest, time value or potential investment gain on the amount of financial loss; or

      **(4)** Any portion of such amount that has been or can reasonably be expected to be reimbursed by a third party, such as a financial institution.

**9.** *"Computer Fraud Event"* means:

    **a.** An *unauthorized access incident* that leads to the intentional, unauthorized and fraudulent entry of or change to data or instructions within a *computer system* owned or leased by you and operated under your control. Such fraudulent entry or change must be conducted by a person who is not an *employee, executive* or *independent contractor.* Such fraudulent entry or change must cause *money* to be sent or diverted. The fraudulent entry or change must result in direct financial loss to you.

    **b.** *Computer fraud event* does not mean or include any occurrence:

      **(1)** In which you are threatened or coerced to send money or divert a payment; or

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.      Page **12** of **19**

Acuity File - 084

**(2)** Arising from a dispute or a disagreement over the completeness, authenticity or value of a product, a service or a financial instrument.

10. *"Computer System"* means a computer or other electronic hardware that:

 **a.** Is owned or leased by you and operated under your control; or

 **b.** Is operated by a third-party service provider used for the purpose of providing hosted computer application services to you or for processing, maintaining, hosting or storing your electronic data, pursuant to a written contract with you for such services. However, such computer or other electronic hardware operated by such third party shall only be considered to be a *computer system* with respect to the specific services provided by such third party to you under such contract.

11. "*Coverage Term*" means the increment of time:

 **a.** Commencing on the earlier of the first inception date of this Cyber Coverage or the first inception date of any coverage substantially similar to that described in this Cyber Coverage and held immediately prior to this Cyber coverage; and

 **b.** Ending upon the *termination of coverage*.

12. *"Coverage Territory"* means:

 **a.** With respect to Data Compromise Response Expenses, Computer Attack, Cyber Extortion, Misdirected Payment Fraud, Computer Fraud and Identity Recovery, *coverage territory* means anywhere in the world.

 **b.** With respect to Data Compromise Liability, Network Security Liability and Electronic Media Liability, *coverage territory* means anywhere in the world, however *claims* must be brought within the United States (including its territories and possessions) or Puerto Rico.

13. *"Cyber Extortion Expenses"* means:

 **a.** The cost of a negotiator or investigator retained by you in connection with a *cyber extortion threat*; and

 **b.** Any amount paid by you in response to a *cyber extortion threat* to the party that made the *cyber extortion threat* for the purposes of eliminating the *cyber extortion threat* when such expenses are necessary and reasonable and arise directly from a *cyber extortion threat*. The payment of *cyber extortion expenses* must be approved in advance by us. We will not pay for *cyber extortion expenses* that have not been approved in advance by us. We will not unreasonably withhold our approval.

14. *"Cyber Extortion Threat"* means:

 **a.** *Cyber extortion threat* means a demand for money from you based on a credible threat, or series of related credible threats, to:

 **(1)** Launch a *denial of service attack* against the *computer system* for the purpose of denying *authorized third party users* access to your services provided through the *computer system* via the Internet;

 **(2)** Gain access to a *computer system* and use that access to steal, release or publish *personally identifying information, personally sensitive information* or *third party corporate data;*

 **(3)** Alter, damage or destroy electronic data or software while such electronic data or software is stored within a *computer system;*

 **(4)** Launch a *computer attack* against a *computer system* in order to alter, damage or destroy electronic data or software while such electronic data or software is stored within a *computer system;* or

 **(5)** Cause you to transfer, pay or deliver any funds or property using a *computer system* without your authorization.

 **b.** *Cyber extortion threat* does not mean or include any threat made in connection with a legitimate commercial dispute.

15. *"Data Re-creation Costs"*

 **a.** *Data re-creation costs* means the costs of an outside professional firm hired by you to research, re-create and replace data that has been lost or corrupted and for which there is no electronic source available or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupted.

 **b.** *Data re-creation costs* does not mean or include costs to research, re-create or replace:

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.          Page **13** of **19**

Acuity File - 085

**(1)** Software programs or operating systems that are not commercially available; or

**(2)** Data that is obsolete, unnecessary or useless to you.

16. *"Data Restoration Costs"*

    **a.** *Data restoration costs* means the costs of an outside professional firm hired by you to replace electronic data that has been lost or corrupted. In order to be considered *data restoration costs*, such replacement must be from one or more electronic sources with the same or similar functionality to the data that has been lost or corrupted.

    **b.** *Data restoration costs* does not mean or include costs to research, re-create or replace:

        **(1)** Software programs or operating systems that are not commercially available; or

        **(2)** Data that is obsolete, unnecessary or useless to you.

17. *"Defense Costs"*

    **a.** *Defense costs* means reasonable and necessary expenses consented to by us resulting solely from the investigation, defense and appeal of any *claim* or *regulatory proceeding* against you. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

    **b.** *Defense costs* does not mean or include the salaries or wages of your employees or directors, or your loss of earnings.

18. *"Denial of Service Attack"* means an intentional attack against a target computer or network of computers designed to overwhelm the capacity of the target computer or network in order to deny or impede authorized users from gaining access to the target computer or network through the Internet.

19. *"Electronic Media Incident"* means an allegation that the display of information in electronic form by you on a website resulted in:

    **a.** Infringement of another's copyright, title, slogan, trademark, trade name, trade dress, service mark or service name;

    **b.** Defamation against a person or organization that is unintended; or

    **c.** A violation of a person's right of privacy, including false light and public disclosure of private facts.

20. *"Employee"* means any natural person, other than an *executive,* who was, now is or will be:

    **a.** Employed on a full-time or part-time basis by you;

    **b.** Furnished temporarily to you to substitute for a permanent *employee* on leave or to meet seasonal or short-term workload conditions;

    **c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in paragraph **b.**; or

    **d.** Your volunteer worker, which includes unpaid interns.

21. *"Executive"* means any natural person who was, now is or will be:

    **a.** The owner of your sole proprietorship; or

    **b.** A duly elected or appointed:

        **(1)** Director;

        **(2)** Officer;

        **(3)** Managing Partner;

        **(4)** General Partner;

        **(5)** Member (if a limited liability company);

        **(6)** Manager (if a limited liability company); or

        **(7)** Trustee;

        of your business.

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.    Page **14** of **19**

Acuity File - 086

22. *"Extended Income Loss"* means your actual *business income and extra expense loss* incurred during the *extended recovery period.*

23. *"Extended Recovery Period"* means a fixed period of 180 days immediately following the end of the *period of restoration.*

24. *"Identity Recovery Case Manager"* means one or more individuals assigned by us to assist an *identity recovery insured* with communications we deem necessary for re-establishing the integrity of the personal identity of the *identity recovery insured* . This includes, with the permission and cooperation of the *identity recovery insured,* written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

25. "*Identity Recovery Expenses*" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an *identity theft* suffered by an *identity recovery insured*:

   **a. Re-Filing Costs**

   Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an *identity theft.*

   **b. Notarization, Telephone and Postage Costs**

   Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of the *identity recovery insured's* efforts to report an *identity theft* or amend or rectify records as to the *identity recovery insured's* true name or identity as a result of an *identity theft.*

   **c. Credit Reports**

   Costs for credit reports from established credit bureaus.

   **d. Legal Costs**

   Fees and expenses for an attorney approved by us for the following:

   **(1)** The defense of any civil suit brought against an *identity recovery insured.*

   **(2)** The removal of any civil judgment wrongfully entered against an *identity recovery insured.*

   **(3)** Legal assistance for an *identity recovery insured* at an audit or hearing by a governmental agency.

   **(4)** Legal assistance in challenging the accuracy of the *identity recovery insured's* consumer credit report.

   **(5)** The defense of any criminal charges brought against an *identity recovery insured* arising from the actions of a third party using the personal identity of the *identity recovery insured.*

   **e. Lost Wages**

   Actual lost wages of the *identity recovery insured* for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole workdays. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

   **f. Child and Elder Care Expenses**

   Actual costs for supervision of children or elderly or infirm relatives or dependents of the *identity recovery insured* during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the *identity recovery insured.*

   **g. Mental Health Counseling**

   Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the *identity recovery insured.*

   **h. Miscellaneous Unnamed Costs**

   Any other reasonable costs necessarily incurred by an *identity recovery insured* as a direct result of the *identity theft.*

   **(1)** Such costs include:

   **(a)** Costs by the *identity recovery insured* to recover control over his or her personal identity.

   **(b)** Deductibles or service fees from financial institutions.

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. used with its permission.     Page **15** of **19**

Acuity File - 087

    **(2)** Such costs do not include:

        **(a)** Costs to avoid, prevent or detect *identity theft* or other loss.

        **(b)** Money lost or stolen.

        **(c)** Costs that are restricted or excluded elsewhere in this Cyber Coverage or policy.

**26.** *"Identity Recovery Insured"* means the following:

    **a.** When the entity insured under this Cyber Coverage is a sole proprietorship, the *identity recovery insured* is the individual person who is the sole proprietor of the insured identity.

    **b.** When the entity insured under this Cyber Coverage is a partnership, the *identity recovery insureds* are the current partners.

    **c.** When the entity insured under this Cyber Coverage is a corporation or other form of organization, other than those described in a. or b. above, the *identity recovery insureds* are all individuals having an ownership position of 20% or more of the insured entity. However, if, and only if, there is no one who has such an ownership position, then the *identity recovery insured* will be:

        **(1)** The chief executive of the insured entity; or

        **(2)** As respects a religious institution, the senior ministerial employee.

An *identity recovery insured* must always be an individual person. If the entity insured under this Cyber Coverage is a legal entity, that legal entity is not an *identity recovery insured*.

**27.** *"Identity Theft"*

    **a.** *Identity Theft* means the fraudulent use of *personally identifying information.* This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

    **b.** *Identity theft* does not mean or include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**28.** *"Independent Contractor"* means a natural person that provides goods or services to you under terms specified in a written contract, but only while acting on behalf of, at the direction of, and under the supervision of you.

**29.** *"Loss"*

    **a.** With respect to Data Compromise Response Expenses, *loss* means those expenses enumerated in Data Compromise Response Expenses, paragraph **b.**

    **b.** With respect to Computer Attack, *loss* means those expenses enumerated in Computer Attack, paragraph **b.**

    **c.** With respect to Cyber Extortion, *loss* means *cyber extortion expenses.*

    **d.** With respect to Misdirected Payment Fraud, *loss* means *wrongful transfer costs.*

    **e.** With respect to Computer Fraud, *loss* means *computer fraud costs.*

    **f.** With respect to Data Compromise Liability, Network Security Liability and Electronic Media Liability, *loss* means *defense costs* and *settlement costs.*

    **g.** With respect to Identity Recovery, *loss* means those expenses enumerated in Identity Recovery, paragraph **b.**

**30.** *"Malware Attack"*

    **a.** *Malware attack* means an attack that damages a *computer system* or data contained therein arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers.

    **b.** *Malware attack* does not mean or include damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your *computer system* during the manufacturing process or normal maintenance.

**31.** *"Money"* means:

    **a.** *Money* means a medium of exchange in current use and authorized or adopted by a domestic or foreign government, including currency, coins, banknotes, bullion, travelers' checks, registered checks and money orders held for sale to the public.

    **b.** *Money* does not mean or include any cryptocurrency, whether or not authorized or adopted by a domestic or foreign government. Cryptocurrency includes, but is not limited to, Bitcoin, Ethereum and

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.    Page **16** of **19**

Acuity File - 088

other forms of digital, virtual or electronic currency.

32. *"Network Security Incident"* means a negligent security failure or weakness with respect to a *computer system* which allowed one or more of the following to happen:

   a. The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code;

   b. The unintended abetting of a *denial of service attack* against one or more other systems; or

   c. The unintended loss, release or disclosure of *third party corporate data.*

33. *"Period of Restoration"* means the period of time that begins 8 hours after the time that a *computer attack* is discovered by you and continues until the earliest of:

   a. The date that all data restoration, data re-creation and system restoration directly related to the *computer attack* has been completed;

   b. The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch; or

   c. If no data restoration, data re-creation or system restoration is required, the end of the *computer attack.*

34. *"Personal Data Compromise"* means the loss, theft, accidental release or accidental publication of *personally identifying information* or *personally sensitive information* as respects one or more *affected individuals* If the loss, theft, accidental release or accidental publication involves *personally identifying information,* such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

   a. At the time of the loss, theft, accidental release or accidental publication, the *personally identifying information* or *personally sensitive information* need not be at the insured premises but must be in the direct care, custody or control of:

      **(1)** You; or

      **(2)** A professional entity with which you have a direct relationship and to which you (or *an affected individual* at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, processing, transmission or transportation of such information.

   b. *Personal data compromise* includes disposal or abandonment of *personally identifying information* or *personally sensitive information* without appropriate safeguards such as shredding or destruction, provided that the failure to use appropriate safeguards was accidental and not reckless or deliberate.

   c. *Personal data compromise* includes situations where there is a reasonable cause to suspect that such *personally identifying information* or *personally sensitive information* has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

   d. All incidents of *personal data compromise* that are discovered at the same time or arise from the same cause will be considered one *personal data compromise.*

35. *"Personally Identifying Information"*

   a. *Personally identifying information* means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an *affected individual* or *identity recovery insured.* This includes, but is not limited to, Social Security numbers or account numbers.

   b. *Personally identifying information* does not mean or include information that is otherwise available to the public, such as names and addresses.

36. *"Personally Sensitive Information"*

   a. *Personally sensitive information* means private information specific to an individual the release of which requires notification of *affected individuals* under any applicable law.

   b. *Personally sensitive information* does not mean or include *personally identifying information.*

37. *"Policy Period"* means the period commencing on the effective date shown in the Cyber Suite Schedule The *policy period* ends on the expiration date or the cancellation date of this Cyber Coverage, whichever comes first.

38. *"Property Damage"* means

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.       Page **17** of **19**

Acuity File - 089

    a.  Physical injury to or destruction of tangible property including all resulting loss of use; or

    b.  Loss of use of tangible property that is not physically injured.

39. *"Regulatory Proceeding"* means an investigation, demand or proceeding alleging a violation of law or regulation arising from a *personal data compromise* brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

40. *"Settlement Costs"*

    a.  *Settlement costs* means the following, when they arise from a *claim*:

        (1) Damages, judgments or settlements; and

        (2) Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

        (3) Pre-judgment interest on that part of any judgment paid by us.

    b.  *Settlement costs* does not mean or include:

        (1) Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under Data Compromise Response Expenses;

        (2) Punitive and exemplary damages;

        (3) The multiple portion of any multiplied damages;

        (4) Taxes; or

        (5) Matters which may be deemed uninsurable under the applicable law.

    c.  With respect to fines and penalties, the law of the jurisdiction most favorable to the insurability of those fines, or penalties will control for the purpose of resolving any dispute between us and you regarding whether the fines, or penalties specified in this definition above are insurable under this Cyber Coverage, provided that such jurisdiction:

        (1) Is where those fines, or penalties were awarded or imposed;

        (2) Is where any *wrongful act* took place for which such fines, or penalties were awarded or imposed;

        (3) Is where you are incorporated or you have your principal place of business; or

        (4) Is where we are incorporated or have our principal place of business.

41. *"System Restoration Costs"*

    a.  *System restoration costs* means the costs of an outside professional firm hired by you to do any of the following in order to restore your *computer system* to its pre-*computer attack* level of functionality:

        (1) Replace or reinstall computer software programs;

        (2) Remove any malicious code; and

        *(3)* Configure or correct the configuration of your *computer system.*

    b.  *System restoration costs* does not mean or include:

        (1) Costs to increase the speed, capacity or utility of a *computer system* beyond what existed immediately prior to the *computer attack*;

        (2) Labor costs of your employees or directors;

        (3) Any costs in excess of the actual cash value of your *computer system;* or

        (4) Costs to repair or replace hardware.

42. *"Termination of Coverage"* means:

    a.  You or we cancel this coverage;

    b.  You or we refuse to renew this coverage; or

    c.  We renew this coverage on an other than claims-made basis or with a retroactive date later than the date of the first inception of this coverage or any coverage substantially similar to that described in this Cyber Coverage.

43. *"Third Party Corporate Data"*

    a.  *Third party corporate data* means any trade secret, data, design, interpretation, forecast, formula,

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc. used with its permission.    Page **18** of **19**

Acuity File - 090

method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not an insured under this Cyber Coverage which is not available to the general public and is provided to you subject to a mutually executed written confidentiality agreement or which you are legally required to maintain in confidence.

    **b.** *Third party corporate data* does not mean or include *personally identifying information* or *personally sensitive information.*

**44.** *"Unauthorized Access Incident"* means the gaining of access to a *computer system* by:

    **a.** An unauthorized person or persons; or

    **b.** An authorized person or persons for unauthorized purposes.

**45.** *"Wrongful Act"*

    **a.** With respect to Data Compromise Liability, *wrongful act* means a *personal data compromise.*

    **b.** With respect to Network Security Liability, *wrongful act* means a *network security incident.*

    **c.** With respect to Electronic Media Liability, *wrongful act* means an *electronic media incident.*

**46.** *"Wrongful Transfer Costs"* means the amount of *money* fraudulently obtained from you. *Wrongful transfer costs* include the direct financial loss only. *Wrongful transfer costs* do not include any of the following:

    **a.** Other expenses that arise from the *wrongful transfer event;*

    **b.** Indirect loss, such as *bodily injury,* lost time, lost wages, *identity recovery expenses* or damaged reputation;

    **c.** Any interest, time value or potential investment gain on the amount of financial loss; or

    **d.** Any portion of such amount that has been or can reasonably be expected to be reimbursed by a third party, such as a financial institution.

**47.** *"Wrongful Transfer Event"*

    **a.** *Wrongful transfer event* means an intentional and criminal deception of you or a financial institution with which you have an account. The deception must be perpetrated by a person who is not an *employee, executive* or *independent contractor* using email, facsimile or telephone communications to induce you or the financial institution to send or divert *money.* The deception must result in direct financial loss to you.

    **b.** *Wrongful transfer event* does not mean or include any occurrence:

        **(1)** In which you are threatened or coerced to send money or divert a payment; or

        **(2)** Arising from a dispute or disagreement over the completeness, authenticity or value of a product, a service or a financial instrument.

ALL OTHER PROVISIONS OF THIS POLICY APPLY.

IL-7149(7-20) © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.        Page **19** of **19**

Acuity File - 091

# CYBER SUITE SCHEDULE

**IL-7151(7-20)**

Policy Number: X53010
Named Insured: CHARTER HOMES BUILDING COMPANY

Cyber Coverage Effective
Date: 2022-10-01

## CYBER SUITE

| | |
|---|---|
| **Annual Aggregate Limit:** | $100,000 |
| **Deductible Per Occurrence:** | $1,000 |
| **DATA COMPROMISE RESPONSE EXPENSES** | **Included** |
| **Sublimits Per Occurrence** | |
| Forensic IT Review: | $50,000 |
| Legal Review: | $50,000 |
| Public Relations: | $5,000 |
| Regulatory Fines and Penalties: | $50,000 |
| PCI Fines and Penalties: | $50,000 |
| **COMPUTER ATTACK** | **Included** |
| **Sublimits Per Occurrence** | |
| Loss of Business: | $50,000 |
| Public Relations: | $5,000 |
| **CYBER EXTORTION** | Included |
| **Sublimit Per Occurrence:** | $10,000 |
| **MISDIRECTED PAYMENT FRAUD** | Included |
| **Sublimit Per Occurrence:** | $10,000 |
| **COMPUTER FRAUD** | Included |
| **Sublimit Per Occurrence:** | $10,000 |
| **DATA COMPROMISE LIABILITY** | **Included** |
| **NETWORK SECURITY LIABILITY** | **Included** |
| **ELECTRONIC MEDIA LIABILITY** | **Included** |

## IDENTITY RECOVERY COVERAGE

| | |
|---|---|
| **Annual Aggregate Limit Per _Identity Recovery Insured:_** | **$25,000** |
| **Deductible Per Occurrence:** | **None** |
| **Sublimits Per Occurrence** | |
| Lost Wages and Child and Elder Care Expenses: | $5,000 |
| Mental Health Counseling: | $1,000 |
| Miscellaneous Unnamed Costs: | $1,000 |

© 2018, The Hartford Steam Boiler Inspection and Insurance company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.

IL-7151(7-20)

Acuity File - 092

**PENNSYLVANIA CHANGES – CYBER SUITE COVERAGE**  IL-7164(7-20)

This endorsement changes the policy. Please read it carefully.

This endorsement modifies the insurance provided under the following:

**Cyber Suite Coverage**

1. **C. LIMITS OF INSURANCE, 1. Aggregate Limits** is deleted and replaced with the following:

   1. **Aggregate Limits**

      Except for pre- and post-judgment interest, the Cyber Suite Annual Aggregate Limit shown in the Cyber Suite Schedule is the most we will pay for all *loss* under all applicable coverage sections, except Identity Recovery, in any one *policy period* or any applicable Extended Reporting Period. The Cyber Suite Annual Aggregate Limit shown in the Cyber Suite Schedule applies regardless of the number of insured events first discovered or *claims* or *regulatory proceedings* first received during the *policy period* or any applicable Extended Reporting Period.

      The Identity Recovery Coverage is subject to the Identity Recovery Limit as shown in the Cyber Suite Schedule.

2. **E. ADDITIONAL CONDITIONS, 2. Defense And Settlement**, paragraph **f.** is deleted and replaced with the following:

   f. We will pay all interest on that amount of any judgment within the applicable limit of insurance which accrues:

      **(1)** Before entry of judgment; and

      **(2)** After entry of judgment but before we pay, offer to pay or deposit in court that part of the judgment within the applicable limit of insurance or, in any case, before we pay or offer to pay the entire applicable limit of insurance.

      These interest payments shall be in addition to and not part of the applicable limit of insurance.

3. **E. ADDITIONAL CONDITIONS, 5. Extended Reporting Periods**, paragraph **b.(2)** is deleted and replaced with the following:

   **(2)** Upon payment of an additional premium of 100% of the full annual premium associated with the relevant coverage, a Supplemental Extended Reporting Period of one year immediately following the effective date of the *termination of coverage* during which you may receive notice of a *claim* or *regulatory proceeding* arising directly from a *wrongful act* occurring before the end of the *policy period* and which is otherwise insured by this Cyber Suite Coverage.

      To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days after the effective date of *termination of coverage*. The additional premium for the Supplemental Extended Reporting Period will be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

      This insurance, provided during the Supplemental Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Supplemental Extended Reporting Period becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

4. **F. DEFINITIONS, 40. *Settlement Costs***, paragraph **a.** is deleted and replaced with the following:

   a. *Settlement costs* means the following, when they arise from a *claim*:

      **(1)** Damages, judgments or settlements; and

**IL-7164(7-20)** © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.        Page **1** of **2**

Acuity File - 093

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order.

**IL-7164(7-20)** © 2018, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.          Page **2** of **2**

Acuity File - 094

## NOTICE OF CANCELLATION ENDORSEMENT

IL-7002(10-90)

All Coverage Parts included in this policy are subject to the following condition:

If we cancel this policy, for any reason other than nonpayment of premium, we will mail advance notice to the person(s) or organization(s) as shown in the Schedule.

### SCHEDULE

| Person or Organization (Name and Address) | Advance Notice (Days) |
|---|---|
| QEI CONSTRUCTION GROUP LLC<br>3003 N FRONT ST # 201<br>HARRISBURG PA 17110 | 30 |
| REITNOUER HOLDINGS LLC<br>4001 READING CREST AVE<br>READING PA 19605 | 30 |
| ECI CONSTRUCTION LLC<br>124 W CHURCH ST<br>PO BOX 459<br>DILLSBURG PA 17019 | 30 |
| REMCO INC<br>195 HEMPT RD<br>MECHANICSBURG PA 17050 | 30 |
| AMERICAN WATER WORKS SERVICE<br>COMPANY INC C/O PICS AUDITING LLC<br>17701 COWAN STE 140<br>IRVINE CA 92614 | 30 |
| ECI CONSTRUCTION LLC &<br>WILLIGEROLD & MACAVOY ARCHITECTS<br>PO BOX 459<br>DILLSBURG PA 17019 | 30 |
| MEMBERS 1ST HUMMELSTOWN<br>297 E MAIN ST<br>HUMMELSTOWN PA 17036 | 30 |
| THE FARFIELD COMPANY<br>312 E MEADOW VALLEY RD<br>PO BOX 387<br>LITITZ PA 17543 | 30 |
| LOBAR INC<br>1 OLD MILL RD<br>DILLSBURG PA 17019 | 30 |
| PROTECH MECHANICAL CONTRACTORS<br>INC<br>1913 MCFARLAND DR<br>LANDISVILLE PA 17538 | 30 |
| POOLE ANDERSON CONSTRUCTION<br>LLC<br>2121 OLD GATESBURG RD 200<br>STATE COLLEGE PA 16801 | 30 |
| PENNSY SUPPLY INC<br>2400 THEA DR<br>HARRISBURG PA 17110 | 30 |
| HORST EXCAVATING<br>320 GRANITE RUN DR<br>PO BOX 3310<br>LANCASTER PA 17604 | 30 |
| MIDSTATE MECHANICAL &<br>ELECTRICAL<br>PO BOX 459<br>DILLSBURG PA 17019 | 30 |

Acuity File - 095

| Person or Organization<br>(Name and Address) | Advance Notice<br>(Days) |
| --- | --- |
| BRUBACHER EXCAVATING INC<br>825 READING RD<br>PO BOX 528<br>BOWMANSVILLE PA 17507 | 30 |
| BELL MOUNTAIN LAND DEVELOPMENT<br>CORPORATION<br>7 OAKWOOD DR<br>SCRANTON PA 18504 | 30 |
| NEW GARDEN TOWNSHIP<br>299 STARR RD<br>LANDENBERG PA 19350 | 30 |
| THOMPSON THRIFT CONSTRUCTION<br>C/O MYCOI<br>1075 BROAD RIPPLE AVE # 313<br>INDIANAPOLIS IN 46220 | 30 |
| ALLAN MYERS MATERIALS PA INC<br>DBA ALLAN MYERS MATERIALS<br>1805 BERKS RD<br>WORCESTER PA 19490 | 30 |
| PAUL RISK ASSOCIATES INC<br>11 W STATE ST<br>QUARRYVILLE PA 17566 | 30 |
| SORDONI CONSTRUCTION SERVICES<br>INC<br>45 OWEN ST<br>FORTY FORT PA 18704 | 30 |
| TOWNSHIP OF MANHEIM<br>1840 MUNICIPAL DR<br>LANCASTER PA 17601 | 30 |
| MANBEL DEVCO I LIMITED<br>PARTNERSHIP<br>200 OLD FORGE LN STE 200<br>KENNETT SQUARE PA 19348 | 30 |
| RJ WATERS & ASSOCIATES INC<br>200 OLD FORGE LN STE 200<br>KENNETT SQUARE PA 19348 | 30 |
| TARGET CORPORATION<br>33 S 6TH ST # CC-2505<br>MINNEAPOLIS MN 55402 | 30 |
| BRENEMAN SITE CONSTRUCTION LLC<br>PO BOX 51<br>LAMPETER PA 17537 | 30 |
| BELMONT CONDOMINIUM<br>ASSOCIATION<br>200 OLD FORGE LN STE 200<br>KENNETT SQUARE PA 19348 | 30 |
| HIGH CONSTRUCTION COMPANY<br>1853 WILLIAM PENN WAY<br>LANCASTER PA 17601 | 30 |
| EAST MARLBORO ASSOCIATES<br>C/O RJ WATERS & ASSOCIATES INC<br>200 OLD FORGE LN STE 201<br>KENNETT SQUARE PA 19348 | 30 |
| VISION MECHANICAL INC<br>135 JUNIATA ST<br>READING PA 19611 | 30 |

Acuity File - 096

| Person or Organization (Name and Address) | Advance Notice (Days) |
|---|---|
| LOBAR CONSTRUCTION MANAGEMENT INC PO BOX 432 DILLSBURG PA 17019 | 30 |

**MANUSCRIPT ENDORSEMENT**                                                    IL-8000(1-90)

This endorsement modifies insurance provided under the following:

WHO IS AN INSURED IS AMENDED TO INCLUDE THE FOLLOWING
ADDITIONAL NAMED INSUREDS:
- FH PROPERTIES II LP
- FH II GP LLC
- FH PARTNERS II LP
- FH PARTNERS II GP LLC

ADDITIONAL NAMED INSUREDS:
INDIGO HOLDINGS
GREENFIELD COMMONS LLC
VILLAGE HOMES AT SOMERSET INC
VILLAGE HOMES AT WESTWOOD GLEN INC
ARCONA WEST NEIGHBORHOOD ASSOCIATION

BOW FHI LLC

Acuity File - 097

# "EXHIBIT H"



COMMERCIAL EXCESS LIABILITY
COVERAGE PART

## Renewal Declarations

First Named Insured and Address:

CHARTER HOMES BUILDING COMPANY
322 N ARCH ST
LANCASTER PA 17603

Agency Name and Number:

HORST INSURANCE
7735-AB

| Policy Number: | X53010 | |
|---|---|---|
| Policy Period: | Effective Date: | 10-01-22 |
| | Expiration Date: | 10-01-23 |

In return for the payment of the premium and subject to all the terms of the policy, we agree to provide the insurance coverage as stated in the same.

12:01 A.M. standard time at your mailing address shown in the declarations

This policy is nonparticipating with regard to paying dividends to the policyholder.

### COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART

| Form Number | Form Title | Premium |
|---|---|---|
| CU-7008(11-05) | Asbestos Exclusion | |
| CU-7010(3-03) | Nuclear Energy Liability Exclusion Endorsement | |
| CU-7037(5-05) | Commercial Excess Liability Coverage Form | |
| CU-7054(3-03) | Fungi or Bacteria Exclusion | |
| CU-7057(1-04) | Electronic Data Liability Exclusion | |
| CU-7067(3-03) | War Liability Exclusion | |
| CU-7072(1-15) | Conditional Exclusion of Terrorism (Relating to Disposition of Fed. Act) | |
| CU-7085(1-15) | Cap on Losses from Certified Acts of Terrorism | $3,847.00 |
| CU-7087(1-15) | Exclusion of Punitive Damages Related to a Certified Act of Terrorism | |
| CU-7095(9-10) | Pennsylvania Changes - Cancellation and Nonrenewal | |
| CU-7097(2-11) | Amendment to Definition of Occurrence | |
| CU-7098(11-15) | Revision of Other Insurance Condition For Additional Insureds - Auto Status | $5,208.00 |
| CU-7127(11-16) | Public or Livery Passenger Conveyance and On-Demand Deliver Services Exclusion | |
| CU-7140(10-20) | Cyber Suite Exclusion | |
| CU-7142(9-20) | Communicable Disease Exclusion | |
| IL-0120R(3-14) | Pennsylvania Changes - Defense Costs | |
| IL-7002(10-90) | Notice of Cancellation Endorsement | |
| IL-7082(12-20) | Disclosure Pursuant to Terrorism Risk Insurance Act | |
| IL-8000(1-90) | Manuscript Endorsement | |

Advance Endorsement Premium                                            $9,055.00

Policy Number:   X53010                    Effective Date:    10-01-22

PREMIUM SUMMARY

Advance Premium                                                    $384,670.00

Advance Endorsement Premium                                         $9,055.00

Total Advance                                                      $393,725.00

ADDITIONAL NAMED INSUREDS

WHO IS AN INSURED includes the following Additional Named Insureds:

VILLAGE HOME BUILDERS INC
STONEBRIDGE BUILDERS INC
STONEBRIDGE RESIDENTIAL LLC
CHARTER HOMES AT DARTMOUTH GREEN INC
CHARTER HOMES AT MILL CREEK INC
CHARTER HOMES AT STONE CREEK INC
CHARTER HOMES AT VERSANT INC
CHARTER HOMES AT SOMERSET INC
CHARTER HOMES AT WESTWOOD GLEN INC
CHARTER HOMES AT LANCASTER INC
CHARTER HOMES AT HARRISBURG INC
CHARTER HOMES AT YORK INC
CHARTER HOMES AT CHANTICLEER INC
CHARTER HOMES AT GRANDVIEW INC
CHARTER HOMES VERDANDA INC
CHARTER HOMES AT WEST CREEK INC
CHARTER HOMES AT THE PRESERVE INC
CHARTER HOMES AT SAGE HILL INC
CHARTER HOMES AT STRASBURG INC
CHARTER HOMES AT SPRINGWOOD INC
CHARTER HOMES AT FLORIN HILL INC
CHARTER HOMES AT WINSLETT INC
CHARTER HOMES AT WESTWOOD GREEN INC
CHARTER HOMES AT THE LAKES INC
HEMPFIELD VALLEY PARTNERSHIP
BAY PROPERTIES LP
BLC PROPERTIES LP
CHARTER PROPERTIES
CYGNET PARTNERS LP
CYGNET DEVELOPMENT LLC
CHARTER COMMUNITIES LLC
GREENFIELD COMMUNITIES LLC
CHARTER PROPERTIES LLC
CHARTER HOMES DEVELOPMENT CO
RESERVE PARTNERS INC
CHARTER MATERIAL COMPANY
THE STONE BRIDGE PARTNERSHIP
CSB PARTNERS LP
CSB GENERAL LLC
THE PRESERVE AT HAMPDEN
THE FLORIN HILL PARTNERSHIP
CH&N SUPPLY CO
CHARTER COLORS
CHARTER HOMES AT WALDEN INC
CFH GENERAL LLC
JUI INC
CHARTER LAND EXCHANGE LLC
CYGNET MORTGAGE LLC

Policy Number:   X53010                    Effective Date:   10-01-22

ADDITIONAL NAMED INSUREDS

CHARTER HOMES BUILDING CO T/A MILL CREEK GENERAL STORE
CHARTER HOMES AT EVERGREEN INC
CFH PARTNERS LP
HAMPTON CHASE LP
REGENT SETTLEMENTS LP
CHARTER HOMES AT FAIR HILL INC
CHARTER EXCAVATION
CH&N CONSTRUCTION
CYGNET REAL ESTATE INC
CYGNET REAL ESTATE
CHARTER HOMES & NEIGHBORHOODS
CHARTER HOMES AT HERSHEY INC
REGENT HOME MORTGAGE LLC
CHARTER HOMES AT KENDALE INC
BOWDES LLC
BOW FH INVESTORS LP
RB FHI LLC
CHARTER HOMES AT SPRING HILL INC
CH&N CONSTRUCTION INC
EATON MORTGAGE LLC
CHARTER HOMES AT ARCONA INC
CHARTER HOMES AT CROSSROADS INC
CHARTER HOMES AT MERIDIAN INC
CDH GENERAL LLC
CDH PARTNERS LP
CHAL LLC
ARCONA LAND COMPANY
CHARTER LAND EXCHANGE LP
CHARTER HOMES AT MANCHESTER INC
CHARTER HOMES AT HIGHLANDS INC
CHARTER HOMES AT FAIRMONT INC
CHARTER HOMES AT HIGHPOINT INC
CHARTER HOMES AT LAUREL HILL INC
WALDEN CROSSROADS PROPERTIES LP
WCP PARTNERS LP
WCP GP LLC
WCP PARTNERS GP LLC
CHARTER HOMES AT ARCADIA INC
CHARTER HOMES DEVELOPMENT VII INC
CHARTER HOMES DEVELOPMENT VIII INC
CHARTER HOMES AT WHISPERING PINES INC FKA CHARTER HOMES
CHARTER HOMES AT CALVERT HILL INC
CHARTER HOMES AT WEST WINDING INC
CHARTER HOMES AT THE POINT INC
CH&N SITE CONSTRUCTION INC
CHARTER HOMES AT WOODSIDE INC
CHARTER HOMES AT SUMMIT INC
CHARTER HOMES DEVELOPMENT PROPERTIES XVIII INC
CHARTER HOMES AT CRESCENT INC
CHARTER HOMES DEVELOPMENT PROPERTIES XX INC
CHARTER HOMES DEVELOPMENT PROPERTIES XXI INC
CHARTER HOMES DEVELOPMENT PROPERTIES XXII INC
CHARTER HOMES AT ARCONA STRAND INC
HUNDINGTON INVESTMENTS LLC
GRANDVIEW LANE PROPERTIES LP
GL PARTNERSHIP LP
GLP GP LLC
GL PARTNERS GP LLC

CU-7000(8-18)                                              09/16/22      Page 3 of 6

ADDITIONAL NAMED INSUREDS

CHARTER HOMES AT WOODBRIDGE INC
CHARTER HOMES AT ELMHURST INC
CH&N EXCAVATION
ARCONA STRAND LLC
CHARTER HOMES AT HASTINGS INC
CP MANAGEMENT SERVICES INC
ARCONA ROAD PROPERTIES LP
ARP PARTNERS LP
ARP GP LLC
ARP PARTNERS GP LLC
ROCHESTER ROAD INVESTMENT COMPANY
MRP9.3 LLC
CHARTER HOMES AT BELMONT INC
COLLIER LAND INVESTMENT COMPANY INC
ARCONA ROAD PROPERTIES II LP
ARP PARTNERS II LP
ARP PARTNERS II GP LLC
ARP II GP LLC
CH+N GENERAL CONSTRUCTION
HASTINGS PROPERTIES I LP
HP I GP LLC
CHARTER HOMES AT MEEDER INC
HP PARTNERS I LP
HP PARTNERS I GP LLC
ROCHESTER ROAD PROPERTIES I LP
RRP I GP LLC
RRP PARTNERS I LP
RRP PARTNERS I GP LLC
ARCONA COMMONS PROPERTIES I LP
ACP I GP LLC
ACP PARTNERS I LP
ACP PARTNERS I GPLLC
IDEA COFFEE ARCONA LLC
ARS PARTNERS LP
AR PARTNERS GP LLC
CYGNET PROPERTIES
CP MANAGEMENT INC
MEEDER PROPERTIES I LP
MP PARTNERS I LP
MP I GP LLC
MP PARTNERS I GP LLC
SCP GP LLC
SCP PARTNERS LP
SCP PARTNERS GP LLC
SITE CONSTRUCTION PROPERTIES LP
CYGNET GENERAL CONSTRUCTION LLC
CHARTER HOMES AT TATTERSALL INC
CHARTER HOMES AT RIVERBEND INC
TATTERSALL NEIGHBORHOOD ASSOCIATION INC
ALL PRIOR NAMES OR NAME VERSIONS OF ANY
ADDITIONAL NAMED INSURED ENTITIES LISTED
RIVERBEND NEIGHBORHOOD ASSOCIATION INC
CYGNET PARTNERS II LP
CP II GP LLC
CP PARTNERS II LP
CP PARTNERS II GP LLC
CHARTER HOMES DEVELOPMENT PROPERTIES XXIII INC
CHARTER HOMES DEVELOPMENT PROPERTIES XXIV INC

CU-7000(8-18)

Policy Number:  X53010                     Effective Date:  10-01-22

ADDITIONAL NAMED INSUREDS

    CHARTER HOMES DEVELOPMENT PROPERTIES XXV INC
    CHARTER HOMES DEVELOPMENT PROPERTIES XXVI INC
    CHARTER HOMES DEVELOPMENT PROPERTIES XXVII INC
    ARCONA PROPERTIES I LP
    AP I GP LLC
    AP PARTNERS I LP
    AP PARTNERS I GP LLC
    HASTINGS PROPERTIES II LP
    HP PARTNERS II LP
    HP PARTNERS II GP LLC
    HP II GP LLC
    CRESCENT STRAND PARTNERS LLC
    CS BOW PARTNERS LLC
    CRESCENT NEIGHBORHOOD ASSOCIATION INC

LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate | $17,000,000 |
| Products-Completed Operations Aggregate | $17,000,000 |
| Each Occurrence | $17,000,000 |

PREMIUM COMPUTATION

Not Subject to Audit

| | |
|---|---|
| Estimated Advance Premium | $384,670.00 |

SCHEDULE OF UNDERLYING INSURANCE - GENERAL LIABILITY

Policy Number:  CG-X53010
Name of Insurer:  ACUITY, A Mutual Insurance Company
Policy Period:  10-01-22 To 10-01-23

Occurrence Coverage

Limits or Amounts of Insurance

| | |
|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $3,000,000 |
| Products-Completed Operations Aggregate Limit | $3,000,000 |
| Personal and Advertising Injury Limit (Any One Person or Organization) | $1,000,000 |
| Each Occurence Limit | $1,000,000 |

SCHEDULE OF UNDERLYING INSURANCE - AUTOMOBILE LIABILITY

Policy Number:  CA-X53010
Name of Insurer:  ACUITY, A Mutual Insurance Company
Policy Period:  10-01-22 To 10-01-23

Limits or Amounts of Insurance

| | |
|---|---|
| Bodily Injury and Property Damage Combined Single Limit (Each Accident) | $1,000,000 |

CU-7000(8-18)

Policy Number:   X53010

Effective Date:   10-01-22

SCHEDULE OF UNDERLYING INSURANCE - EMPLOYERS' LIABILITY

Policy Number:  WC10101706
Name of Insurer:  LACKAWANNA CASUALTY CO
Policy Period:  10-01-22 To 10-01-23

Limits or Amounts of Insurance

| | |
|---|---|
| Bodily Injury by Accident (Each Accident) | $1,000,000 |
| Bodily Injury by Disease (Policy Limit) | $1,000,000 |
| Bodily Injury by Disease (Each Employee) | $1,000,000 |

# COMMERCIAL EXCESS LIABILITY COVERAGE FORM

## Index of Policy Provisions

Page

SECTION I - COVERAGES......................................2
    Insuring Agreement..........................................2
    Exclusions.....................................................2
    Investigation or Settlement of Claims ..............3
    or Defense of Insured Against Suits
    Coverage Extension.........................................4

SECTION II - LIMIT OF INSURANCE.......................4

SECTION III - CONDITIONS...................................5
    Appeals.........................................................5

Page

Bankruptcy of Underlying Insurer......................5
Duties in the Event of Occurrence, ..................5
Claim or Suit
Maintenance of Underlying Insurance..............5
Other Insurance.............................................5
Policy Period..................................................6

SECTION IV - DEFINITIONS...................................6

## COMMERCIAL EXCESS LIABILITY COVERAGE FORM

This policy contains both a Products-Completed Operations Aggregate Limit and a General Aggregate Limit of Insurance. These are described in Section II - Limit of Insurance.

Other provisions in this policy restrict coverage. Read the entire policy and any *underlying insurance* carefully to determine rights, duties and what is covered and not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under any *underlying insurance*. The words "we," "us" and "our" refer to the Company providing this insurance.

The words "this insurance" mean the liability insurance provided under this policy.

The word "insured" means any person or organization qualifying as such under any *underlying insurance.*

Other words and phrases that appear in italics have special meaning. Refer to Section IV - Definitions of this policy.

## SECTION I - COVERAGES

1.  Insuring Agreement

    a.  We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance,* that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

        We will also pay those sums that the insured becomes legally obligated to pay as damages because of *injury* or damage to which the insurance provided under the Coverage Extension applies as set forth in paragraph 4 below.

    b.  We have the right to participate in the investigation or settlement of claims or the defense of the insured against suits seeking damages because of *injury* or damage to which this insurance may apply. We have a duty to investigate or settle such claims or to defend the insured against such suits when the applicable Limit of Insurance of the *underlying insurance* has been used up by payment of judgments, settlements and any cost or expense subject to such limit.

        We will have the right and duty to participate in the investigation and settlement of claims or the defense of the insured against suits seeking damages because of *injury* or damage to which the insurance provided under the Coverage Extension may apply.

        This right or duty to defend is limited as set forth in paragraph 3 below.

        However, we will have no duty to defend the insured against any suit seeking damages for *injury* or damage to which this insurance does not apply.

    c.  The amount we will pay for damages is limited as described in Section II - Limit of Insurance.

    d.  This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the *underlying insurance,* except:

        (1) We have no obligation under this insurance with respect to any claim or suit that is settled without our consent; and

        (2) With respect to any provisions to the contrary contained in this insurance.

2.  Exclusions

    The exclusions that apply to the *underlying insurance* apply to this insurance. Also, this insurance does not apply to damages because of:

    a.  *Injury* or damage to premises rented to you or temporarily occupied by you with permission of the owner.

    b.  Any duty to pay expenses under any medical payments coverage.

    c.  Any duty to reimburse an insurer as provided by the terms of the Endorsement For Motor Carrier Policies of Insurance For Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980 or under the terms of any similar endorsement required by Federal or state statute.

    d.  Any duty payable only because of the attachment of the Endorsement For Motor Carrier Policies of Insurance For Public Liability or any similar endorsement required by Federal or state statute.

    e.  Any duty imposed by law under any automobile no-fault, uninsured motorist, underinsured motorist, workers' compensation, disability benefits or unemployment compensation law or any similar law.

    f.  Any duty imposed by law under the following:

        (1) Section 130, Civil Liability, of Title I (Truth in Lending Act) of the Consumer Credit Protection Act (Public Law

CU-7037(5-05)

90-321; 82 Stat. 146 et. seq.);

(2) Title IV (Odometer Requirements) of the Motor Vehicle Information and Cost Savings Act (Public Law 92-513; 86 Stat. 961); or

(3) Employee's Retirement Income Security Act (E.R.I.S.A.) of 1974 as now or hereafter amended.

g. *Injury* or damage to personal property in the care, custody or control of the insured.

This exclusion does not apply to liability assumed under a sidetrack agreement.

h. *Injury* or damage sustained by an employee, former employee, prospective employee or their beneficiaries or legal representatives and caused by any negligent act, error or omission of the insured, or any other person for whose acts the insured is legally liable, in the administration of any employee benefit program. Administration includes giving counsel to employees, interpreting, handling of employee records, and effecting enrollment, termination or cancellation of employees.

i. Any obligation to pay any claim or claims made against you or any of your officers, directors or trustees, individually or collectively, by reason of a wrongful act in their respective capacities as officers, directors or trustees.

As used in this exclusion, "wrongful act" means any actual or alleged error, misstatement or misleading statement, act or omission, or neglect or breach of duty made or committed by your directors, officers or trustees.

j. Any obligation arising out of an act, error or omission of an insured:

(1) While performing the duties of an insurance agent in your garage operations; or

(2) In your garage operations as a result of title paper preparation.

As used in this exclusion:

(1) "Insurance agent" means a person or organization who is duly licensed as an insurance agent by the regulatory authority of the state in which the insured's principal place of business is located.

(2) "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. Garage operations includes the ownership, maintenance or use of the autos indicated in Section I of the Garage Coverage Form as covered autos.

Garage operations also includes all operations necessary or incidental to a garage business.

(3) "Title paper preparation" means the preparation of official title papers for registering an auto sold by you. This includes the designation of a lienholder who holds a financial interest in the auto.

(4) "Auto" means a land motor vehicle, trailer or semitrailer.

k. Any obligation imposed due to the application of any statute permitting a customer to return an auto sold by an insured, if the auto fails to perform satisfactorily.

As used in this exclusion, "auto" means a land motor vehicle, trailer or semitrailer.

l. *Injury* or damage your customer becomes legally obligated to pay which arise out of the use of your covered auto. This exclusion applies only if your business is shown in the Declarations of the *underlying insurance* as an auto dealership.

However, if your customer becomes legally obligated to pay for *injury* or damage which arise out of their use of your covered auto and if there is:

(1) No other valid and collectible insurance (whether primary, excess or contingent) available to your customer, we will pay up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(2) Other valid and collectible insurance (whether primary, excess or contingent) available to the customer but it is less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, we will pay only for the amount by which the compulsory or financial responsibility law limits exceed the limits of the other insurance.

3. Investigation or Settlement of Claims or Defense of Insured Against Suits

a. When we have the duty to defend, we will pay for all *defense expense* once our duty to defend begins. We may investigate any claim or suit.

If we exercise our right to defend when there is no duty, we will pay only that *defense expense* we incur.

If we provide a defense, we may investigate any claim or suit at our discretion. We may settle such claim or suit within the Limit of Insurance available at the time of the settlement.

b. Our right or duty to defend ends when we

Acuity File - 318

have used up the Limits of Insurance available in the payment of any judgments or settlements as provided under Section II - Limit of Insurance. This applies both to claims and suits pending at the time and those filed thereafter.

c. When we control the investigation or settlement of a claim or the defense of the insured against a suit, we will pay for the *defense expense.* If by mutual agreement or court order the insured assumes control before the applicable Limit of Insurance available is used up, we will reimburse the insured for reasonable *defense expense.*

d. As soon as the Limit of Insurance available is used up, you will then arrange to assume control of the investigation or settlement of all such claims or the defense of you or any other insured against such suits when our right or duty to investigate, settle or defend them ends.

e. We will assist the insured in the transfer of control of the investigation or settlement of claims or the defense of the insured against suits under c or d above. Until such transfer is completed, we will take on behalf of any insured those steps that we think proper:

(1) To avoid a default in any claim or suit; or

(2) To the continued investigation or

settlement of a claim or defense of the insured against a suit.

You agree that if we take such steps:

(1) We do not waive or give up any of our rights under this insurance; and

(2) You will reimburse us for any *defense expense* that arises out of such steps if the applicable Limit of Insurance available has been used up.

f. Any payment for *defense expense* will not reduce the Limits of Insurance.

4. Coverage Extension

a. The terms of this policy are extended as follows:

If *underlying insurance* provides coverage for the use of watercraft you do not own, in addition to watercraft ashore on premises you own or rent, the coverage provided by this policy is extended to cover any watercraft you do not own that is:

(1) Less than 75 feet long; and

(2) Not being used to carry persons or property for a charge;

even if these nonowned watercraft are not insured in the *underlying insurance.*

b. We will only pay for damages up to the limits of insurance.

## SECTION II - LIMIT OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below define the most we will pay under the terms of this insurance regardless of the number of:

a. Insureds;

b. Claims made or suits brought;

c. Persons or organizations making claims or bringing suits.

2. The General Aggregate Limit is the most we will pay for all damages under Section I - Coverages, other than damages arising out of:

a. The *products-completed operations hazard;* or

b. The ownership, operation, maintenance, use, loading or unloading, or entrustment to others, of an auto.

The General Aggregate Limit applies separately to:

a. Each location owned by or rented to you. A location is a premises involving the same or connecting lots, or a premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad; and

b. Each of your projects away from a location owned by or rented to you.

Each payment we make for such damages reduces by the amount of the payment, the General Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further damages of these kinds.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Section I - Coverages because of damages arising out of the *products-completed operations hazard.* Each payment we make for such damages reduces, by the amount of the payment, the Products-Completed Operations Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further damages of these kinds.

4. Subject to 2 and 3 above, or with respect to *injury* or damage arising out of the ownership, operation, maintenance, use, loading or unloading, or entrustment to others of an auto, the Each Occurrence Limit is the most we will pay for the sum of damages under Section I - Coverages because of all *injury* and damage arising out of any one *occurrence.*

5. The limits of this policy apply separately to

CU-7037(5-05)

each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

## SECTION III - CONDITIONS

We have no duty to provide coverage under this policy unless you and any other involved insured have fully complied with the Conditions contained in this policy and those contained in any *underlying insurance.*

If any of the following conditions are contrary to Conditions contained in the *underlying insurance,* the provisions contained in this policy apply.

1. Appeals

   In the event the *underlying insurer* elects not to appeal a judgment in excess of the limits of the *underlying insurance,* we may elect to make such appeal. If we so elect, we shall be liable, in addition to the applicable Limit of Insurance for all *defense expenses* we incur.

2. Bankruptcy of Underlying Insurer

   In the event of bankruptcy or insolvency of any *underlying insurer,* this policy shall not replace such *underlying insurance.* This policy applies as if the *underlying insurance* was valid and collectible.

3. Duties in the Event of Occurrence, Claim or Suit

   a. You must see to it that we are notified as soon as practicable of an *occurrence* or offense which may result in a claim. To the extent possible notice should include:

      (1) How, when and where the *occurrence* or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any *injury* or damage arising out of the *occurrence* or offense.

   b. If a claim or suit is received by any insured you must:

      (1) Immediately record the specifics of the claim or suit and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a suit;

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or the defense of the insured against the suit;

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of *injury* or damage to which this insurance may also apply; and

      (5) Notify us immediately of any judgment or settlement of any claim or suit brought against any insured.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

4. Maintenance of Underlying Insurance

   a. You agree to maintain the *underlying insurance* in full force and effect during the term of this policy. You agree to inform us within 10 days of any replacement of that *underlying insurance* by the same or another company. If there is any change in the replacement *underlying policy* in hazard, policy limits or coverage, including any terms, conditions and endorsements, we will only be liable under this insurance to the same extent as if there had been no change in, or replacement of, *underlying insurance.*

   b. In the event that any *underlying insurance* is cancelled or not renewed and not replaced, you must notify us within 10 days. We will not be liable under this insurance for more than we would have been liable if that *underlying insurance* had not terminated if you do not request cancellation of this policy effective the same date that the *underlying insurance* was cancelled.

   c. Reduction or exhaustion of the *aggregate limit* of any *underlying insurance* by payments for judgments or settlements will not be a failure to maintain *underlying insurance* in full force and effect.

   d. No statement contained in this Condition limits our right to cancel or not renew this policy.

5. Other Insurance

   This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except

CU-7037(5-05)

other insurance written specifically to be excess over this insurance.

6. Policy Period

This insurance will respond to *injury* or damage that occurs, or arises from an offense committed, during the policy period of this insurance shown in the Declarations.

## SECTION IV - DEFINITIONS

1. *"Aggregate limit"* means the maximum amount stated in the policy for which the insurer will be liable, regardless of the number of covered claims.

2. *"Defense expense"* means payments allocated to the investigation or settlement of a specific claim or the defense of the insured against a specific suit, including:

   a. Attorney fees and all other litigation expenses.

   b. The cost of bonds to appeal a judgment or award in our defense of the insured against any suit.

   c. Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which bodily injury liability coverage provided by *underlying insurance* applies.

   d. The cost of bonds to release attachments. This is only for bond amounts within the Limit of Insurance available.

   e. Reasonable expenses incurred by the insured at our request to assist us in the investigation or settlement of the claim or the defense of the insured against the suit. This includes actual loss of earnings up to $100 a day because of time off from work.

   f. Cost taxed against the insured in the suit.

   g. Interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of Section II - Limits of Insurance.

   *Defense expense* does not include:

   a. Salaries and expenses of our employees or the insured's employees, other than:

      (1) That portion of our employed attorneys' fees, salaries and expenses allocated to a specific claim or suit; and

      (2) The expenses described in e above.

   b. Fees and expenses of independent adjusters we hire.

3. *"Injury"* means bodily injury, property damage, personal injury or advertising injury as defined in the *underlying insurance.*

4. *"Occurrence"* means:

   a. With respect to bodily injury to persons other than your employees and property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

   b. With respect to bodily injury to your employees arising out of and in the course of their employment by you, the accident or disease which causes the bodily injury; and

   c. With respect to offenses committed by the insured resulting in personal injury or advertising injury, all such injury sustained by any one person or organization.

5. *"Occurrence limit"* means any specific limit, other than an *aggregate limit,* applicable to any *underlying insurance,* regardless of whether such limit is subject to an *aggregate limit* in the *underlying policy.*

6. *"Products-completed operations hazard":*

   a. Includes all *injury* occurring away from premises you own or rent and arising out of *your product* or *your work* except:

      (1) Personal injury or advertising injury as defined in the *underlying insurance;*

      (2) Products that are still in your physical possession; or

      (3) Work that has not yet been completed or abandoned. However, *your work* will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed;

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include *injury* arising out of:

      (1) The transportation of property, unless the *injury* or damage arises out of a condition in or on a vehicle not owned

or operated by you, and that condition was created by the loading or unloading of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment, or abandoned or unused materials; or

(3) Products or operations for which the classification in the General Liability *underlying policy* or in our General Liability manual or rules includes products or completed operations.

7. *"Underlying insurance"* means the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance in the Declarations, for the limits and periods indicated. It includes any policies issued to replace those policies during the term of this insurance, provided that you have notified us within 10 days of the replacement, and the replacement policies provide:

a. At least the same policy limits;

b. The same hazards insured against, except as modified by general program revisions; and

c. The same coverage, including all terms, conditions and endorsements.

8. *"Underlying insurer"* means any insurer who issues a policy of *underlying insurance.*

9. *"Underlying policy"* means a policy providing *underlying insurance.*

10. *"Your product"* means:

a. Any goods or products other than real property, manufactured, sold, handled,

distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*Your product* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product;* and

b. The providing of or failure to provide warnings or instructions.

*Your product* does not include vending machines or other property rented to or located for the use of others but not sold.

11. *"Your work"* means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

*Your work* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work;* and

b. The providing of or failure to provide warnings or instructions.

Intentionally left blank

ASBESTOS EXCLUSION

CU-7008(11-05)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following exclusion is added:

Asbestos

1. This insurance does not apply to *injury,* including but not limited to, physical or mental injury, mental anguish or shock, sickness, disease, occupational disease, disability or death, or damage to property arising out of activities related to, but not limited to, manufacture, mining, storage, distribution, installation, sale, use, exposure to, service, testing for, repair, containment or removal of asbestos, asbestos fibers, asbestos dust, or products containing asbestos.

2. The following definition applies:

   *"Injury"* means bodily injury or property damage as defined in the *underlying insurance.*

Acuity File - 324

NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT                          CU-7010(3-03)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

1.  This insurance does not apply to:

    a.  Any claim or accident:

        (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the *hazardous properties* of *nuclear material* and with respect to which:

            (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any law amendatory thereof; or

            (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

    b.  Any claim or accident resulting from the *hazardous properties* of *nuclear material,* if:

        (1) The *nuclear material:*

            (a) Is at any *nuclear facility* owned by, or operated by or on behalf of, an insured; or

            (b) Has been discharged or dispersed therefrom;

        (2) The *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (3) The claim or accident arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear facility,* but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

2.  As used in this endorsement:

    a.  *"Hazardous properties"* include radioactive, toxic or explosive properties.

    b.  *"Nuclear material"* means *source material, special nuclear material* or *by-product material.*

    c.  *"Source material," "special nuclear material"* and *"by-product material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    d.  *"Spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor.*

    e.  *"Waste"* means any waste material:

        (1) Containing *by-products material* other than the tailings or *wastes* produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its *source material* content; and

        (2) Resulting from the operation by any person or organization of any *nuclear facility* included under the first two paragraphs of the definition of *nuclear facility.*

    f.  *"Nuclear facility"* means:

        (1) Any *nuclear reactor;*

        (2) Any equipment or device designed or used for:

            (a) Separating the isotopes of uranium or plutonium;

            (b) Processing or utilizing *spent fuel;* or

            (c) Handling, processing or packaging *waste;*

        (3) Any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

        (4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste;*

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g.  *"Nuclear reactor"* means any apparatus de-signed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h.  *"Property damage"* includes all forms of radioactive contamination of property.

## FUNGI OR BACTERIA EXCLUSION

CU-7054(3-03)

The endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

1. The following exclusion is added to Paragraph 2, Exclusions of Section I - Coverages:

   a. *Injury* or damage which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any *fungi* or bacteria that are, are on, or are contained in, a good or product intended for consumption.

2. The following definition is added to the Definitions Section:

   *"Fungi"* means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

ELECTRONIC DATA LIABILITY EXCLUSION

CU-7057(1-04)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

1. The following exclusion is added to item 2 Exclusions under Section I - Coverages:

   This insurance does not apply to *property damage* because of loss of *electronic data*.

2. The following definition is added to Section IV - Definitions:

   *"Electronic data"* means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

3. For the purposes of the exclusion listed in item 1 above, the following definition is added:

*"Property Damage"* means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it; or

c. Loss of *electronic data*. Loss of *electronic data* means loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate such data, resulting from physical injury to tangible property. All such loss of *electronic data* shall be deemed to occur at the time of the *occurrence* that caused it.

For the purposes of this exclusion, *electronic data* is not tangible property.

CU-7057(1-04)

Acuity File - 328

WAR LIABILITY EXCLUSION

CU-7067(3-03)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following exclusion is added:

This insurance does not apply to:

*Injury* or damage, however caused, arising, directly or indirectly, out of:

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Acuity File - 329

CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)                CU-7072(1-15)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

A. Applicability Of The Provisions Of This Endorsement

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form; or

b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

(1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

(2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

(3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

a. Supersede any terrorism endorsement already endorsed to this policy that addresses *certified acts of terrorism* and/or *other acts of terrorism*, but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date

when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses *certified acts of terrorism* and/or *other acts of terrorism*, will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are shown in italics:

1. *"Terrorism"* means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. *"Any injury or damage"* means any injury or damage covered under any Coverage Form or underlying insurance to which this en-

**Acuity File - 330**

dorsement is applicable, and includes but is not limited to *bodily injury, property damage, personal and advertising injury, injury* or *environmental damage* as may be defined in any applicable Coverage Form or underlying insurance.

C.  The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for *any injury or damage* caused directly or indirectly by *terrorism,* including action in hindering or defending against an actual or expected incident of *terrorism. Any injury or damage* is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of *terrorism*:

1.  The *terrorism* is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2.  Radioactive material is released, and it appears that one purpose of the *terrorism* was to release such material; or

3.  The *terrorism* is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the *terrorism* was to release such materials; or

5.  The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the *terrorism* and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6.  Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a.  Physical injury that involves a substantial risk of death; or

    b.  Protracted and obvious physical disfigurement; or

    c.  Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of *terrorism* which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C5 or C6 are exceeded.

With respect to this Exclusion, Paragraphs C5 and C6 describe the threshold used to measure the magnitude of an incident of *terrorism* and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of *terrorism,* there is no coverage under this Coverage Form.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Form.

CU-7072(1-15)

Acuity File - 331

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM                    CU-7085(1-15)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

*"Certified act of terrorism"* means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a *certified act of terrorism* include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Form.

CU-7085(1-15)

Acuity File - 332

EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM                                                    CU-7087(1-15)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

A. The following exclusion is added:

This insurance does not apply to:

TERRORISM PUNITIVE DAMAGES

Damages arising, directly or indirectly, out of a *certified act of terrorism* that are awarded as punitive damages.

B. The following definition is added:

*"Certified act of terrorism"* means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a *certified act of terrorism* include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Form.

CU-7087(1-15)

PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL                    CU-7095(9-10)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

The following is added to Section III - Conditions:

Cancellation

1. The First Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. Cancellation Of Policies In Effect For Less Than 60 Days

   We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. Cancellation Of Policies In Effect For 60 Days Or More

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e. Material failure to comply with policy terms,

conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the First Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the First Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first-class mail. Proof of mailing will be sufficient proof of notice.

Nonrenewal

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the First Named Insured at least 60 days before the expiration date of the policy.

Increase Of Premium

If we increase your renewal premium, we will mail or deliver to the First Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the First Named Insured's last known address. If notice is mailed, it will be by registered or first-class mail. Proof of mailing will be sufficient proof of notice.

Acuity File - 334

## AMENDMENT TO DEFINITION OF OCCURRENCE

CU-7097(2-11)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The definition of Occurrence is replaced by the following:

"*Occurrence*" means:

a. With respect to bodily injury to persons other than your employees and property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *Occurrence* includes:

(1) *Property damage* to *your work* if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the *property damage* to *your work* is included in the *products-completed operations hazard*;

(2) *Property damage* to other than *your work* that arises from *your work*.

b. With respect to bodily injury to your employees arising out of and in the course of their employment by you, the accident or disease which causes the bodily injury; and

c. With respect to offenses committed by the insured resulting in personal injury or advertising injury, all such injury sustained by any one person or organization.

All other terms, exclusions, limitations and conditions of the policy remain unchanged.

REVISION OF OTHER INSURANCE CONDITION FOR ADDITIONAL INSUREDS - AUTOMATIC STATUS - PRIMARY OR PRIMARY AND NONCON-TRIBUTORY

CU-7098(11-15)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

1. The amended Other Insurance condition in paragraph 2 below applies only to persons or organizations qualifying as additional insureds under the *underlying insurance,* subject to all other terms and conditions of this policy not modified by this endorsement.

2. Solely with respect to the insurance afforded to persons or organizations described in paragraph 1 above, the Other Insurance condition in Section III - Conditions is replaced by the following:

Other Insurance

a. Excess Insurance

Unless provision (1) or (2) in paragraph b below applies, this insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance.

b. Primary Insurance

(1) If you have agreed in writing in a contract or agreement prior to an *occurrence,* claim, or suit, to provide insurance to the additional insured on a primary basis, then after:

(a) The *underlying insurance* applicable to that contract or agreement; and

(b) All other applicable insurance providing coverage on a primary or similar basis (except insurance available to the additional insured where they are a Named Insured);

are exhausted, this insurance will be primary.

(2) If you have agreed in writing in a contract or agreement prior to an *occurrence,* claim, or suit, to provide insurance to the additional insured that is both primary and noncontributory, then after:

(a) The *underlying insurance* applicable to that contract or agreement; and

(b) All other applicable insurance providing coverage on a primary or similar basis (except insurance available to the additional insured where they are a Named Insured);

are exhausted, this insurance will be primary and we will not seek contribution from or require exhaustion of other insurance available to the additional insured where they are a Named Insured.

(3) The most we will pay for a person or organization as primary insurance under paragraphs (1) and (2) above will be the lesser of:

(a) The Limits of Insurance shown in the Declarations of this policy and as described in Section II - Limit of Insurance; or

(b) The amount of insurance you are required to provide the additional insured in the written contract or agreement, less any amount paid by *underlying insurance.*

PUBLIC OR LIVERY PASSENGER CONVEYANCE AND ON-DEMAND
DELIVERY SERVICES EXCLUSION

CU-7127(11-16)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

A. The following exclusion is added to paragraph 2 Exclusions of Section I - Coverage:

Any *covered auto* while being used:

(1) As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a *covered auto* is being used by an insured who is logged into a *transportation network platform* as a driver, whether or not a passenger is *occupying* the *covered auto*; or

(2) By an insured who is logged into a *transportation network platform* as a driver to provide *delivery services*, whether or not the goods, items or products to be delivered are in the *covered auto*.

B. If Excess Uninsured Bodily Injury and/or Underinsured Motorists Coverage is attached, then this insurance does not apply to:

Public Or Livery Passenger Conveyance And On-demand Delivery Services

Any *covered auto* while being used:

a. As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a *covered auto* is being used by an insured who is logged into a *transportation network*

*platform* as a driver, whether or not a passenger is *occupying* the *covered auto*; or

b. By an insured who is logged into a *transportation network platform* or *delivery network platform* as a driver to provide *delivery services*, whether or not the goods, items or products to be delivered are in the *covered auto*.

C. Additional Definitions

As used in this endorsement:

1. *"Delivery network platform"* means an online-enabled application or digital network used to connect customers:

a. With drivers; or

b. With local vendors using drivers;

for the purpose of providing prearranged *delivery services* for compensation. A *delivery network platform* does not include a *transportation network platform*.

2. *"Delivery services"* includes courier services.

3. *"Occupying"* means in, upon, getting in, on, out or off.

4. *"Transportation network platform"* means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

Acuity File - 337

## CYBER SUITE EXCLUSION

CU-7140(10-20)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

This insurance does not apply to damages covered under the Cyber Suite Coverage endorsement, if attached to the underlying policy.

**Acuity File - 338**

COMMUNICABLE DISEASE EXCLUSION

CU-7142(9-20)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

**A.** The following exclusion is added to paragraph 2, Exclusions of Section I - Coverages.

    **2.** Exclusions

    This insurance does not apply to damages because of:

    Communicable Disease

    *Injury* or damage arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege the negligence or other wrongdoing in the:

a. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

b. Testing for a communicable disease;

c. Failure to prevent the spread of the disease; or

d. Failure to report the disease to authorities.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Acuity File - 339

## PENNSYLVANIA CHANGES - DEFENSE COSTS

IL-0120R(3-14)

This endorsement modifies insurance provided under the following:

BIS-PAK® COVERAGE PART

COMMERCIAL AUTOMOBILE COVERAGE PART

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COMMERCIAL EXCESS LIABILITY COVERAGE PART

COMMERCIAL PROPERTY COVERAGE PART - LEGAL LIABILITY COVERAGE FORM

COMMERCIAL PROPERTY COVERAGE PART- MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART

ERRORS AND OMISSIONS COVERAGE PART

LIQUOR LIABILITY COVERAGE FORM

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

PRODUCT WITHDRAWAL COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

A. The provisions of paragraph B are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Bis-Pak®, Commercial General Liability, Commercial Excess Liability, Errors And Omissions, Employment-Related Practices Liability, Liquor Liability, Owners And Contractors Protective Liability, Product Withdrawal, Products/Completed Operations Liability, and Railroad Protective Liability Coverage Forms or Parts;

2. Section II - Liability Coverage in paragraph A Coverage under the Business Auto, Garage and Motor Carrier Coverage Forms;

3. Section A - Coverage under the Legal Liability Coverage Form;

4. Coverage C - Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form; and

5. Coverage, paragraph 1, under Employee Benefits Liability Coverage Form.

Paragraph B also applies to any other provision in the policy that sets forth a duty to defend.

B. If we initially defend an insured ("*insured*") or pay for an insured's ("*insured's*") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

**Acuity File - 340**

DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

IL-7082(12-20)

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

A.  Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the policy Declarations.

B.  Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The federal share percentage is 80%. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C.  Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible. under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Acuity File - 341

## NOTICE OF CANCELLATION ENDORSEMENT

IL-7002(10-90)

All Coverage Parts included in this policy are subject to the following condition:

If we cancel this policy, for any reason other than nonpayment of premium, we will mail advance notice to the person(s) or organization(s) as shown in the Schedule.

### SCHEDULE

| Person or Organization (Name and Address) | Advance Notice (Days) |
| --- | --- |
| QEI CONSTRUCTION GROUP LLC 3003 N FRONT ST # 201 HARRISBURG PA 17110 | 30 |
| REITNOUER HOLDINGS LLC 4001 READING CREST AVE READING PA 19605 | 30 |
| ECI CONSTRUCTION LLC 124 W CHURCH ST PO BOX 459 DILLSBURG PA 17019 | 30 |
| REMCO INC 195 HEMPT RD MECHANICSBURG PA 17050 | 30 |
| AMERICAN WATER WORKS SERVICE COMPANY INC C/O PICS AUDITING LLC 17701 COWAN STE 140 IRVINE CA 92614 | 30 |
| ECI CONSTRUCTION LLC & WILLIGEROLD & MACAVOY ARCHITECTS PO BOX 459 DILLSBURG PA 17019 | 30 |
| MEMBERS 1ST HUMMELSTOWN 297 E MAIN ST HUMMELSTOWN PA 17036 | 30 |
| LOBAR INC 1 OLD MILL RD DILLSBURG PA 17019 | 30 |
| PROTECH MECHANICAL CONTRACTORS INC 1913 MCFARLAND DR LANDISVILLE PA 17538 | 30 |
| POOLE ANDERSON CONSTRUCTION LLC 2121 OLD GATESBURG RD 200 STATE COLLEGE PA 16801 | 30 |
| PENNSY SUPPLY INC 2400 THEA DR HARRISBURG PA 17110 | 30 |
| HORST EXCAVATING 320 GRANITE RUN DR PO BOX 3310 LANCASTER PA 17604 | 30 |
| MIDSTATE MECHANICAL & ELECTRICAL PO BOX 459 DILLSBURG PA 17019 | 30 |
| BELL MOUNTAIN LAND DEVELOPMENT CORPORATION 7 OAKWOOD DR SCRANTON PA 18504 | 30 |

| Person or Organization (Name and Address) | Advance Notice (Days) |
|---|---|
| THOMPSON THRIFT CONSTRUCTION C/O MYCOI 1075 BROAD RIPPLE AVE # 313 INDIANAPOLIS IN 46220 | 30 |
| ALLAN MYERS MATERIALS PA INC DBA ALLAN MYERS MATERIALS 1805 BERKS RD WORCESTER PA 19490 | 30 |
| PAUL RISK ASSOCIATES INC 11 W STATE ST QUARRYVILLE PA 17566 | 30 |
| SORDONI CONSTRUCTION SERVICES INC 45 OWEN ST FORTY FORT PA 18704 | 30 |
| TOWNSHIP OF MANHEIM 1840 MUNICIPAL DR LANCASTER PA 17601 | 30 |
| MANBEL DEVCO I LIMITED PARTNERSHIP 200 OLD FORGE LN STE 200 KENNETT SQUARE PA 19348 | 30 |
| RJ WATERS & ASSOCIATES INC 200 OLD FORGE LN STE 200 KENNETT SQUARE PA 19348 | 30 |
| TARGET CORPORATION 33 S 6TH ST # CC-2505 MINNEAPOLIS MN 55402 | 30 |
| BRENEMAN SITE CONSTRUCTION LLC PO BOX 51 LAMPETER PA 17537 | 30 |
| BELMONT CONDOMINIUM ASSOCIATION 200 OLD FORGE LN STE 200 KENNETT SQUARE PA 19348 | 30 |
| HIGH CONSTRUCTION COMPANY 1853 WILLIAM PENN WAY LANCASTER PA 17601 | 30 |
| EAST MARLBORO ASSOCIATES C/O RJ WATERS & ASSOCIATES INC 200 OLD FORGE LN STE 201 KENNETT SQUARE PA 19348 | 30 |
| VISION MECHANICAL INC 135 JUNIATA ST READING PA 19611 | 30 |
| LOBAR CONSTRUCTION MANAGEMENT INC PO BOX 432 DILLSBURG PA 17019 | 30 |

**MANUSCRIPT ENDORSEMENT**                                    IL-8000(1-90)

This endorsement modifies insurance provided under the following:

WHO IS AN INSURED IS AMENDED TO INCLUDE THE FOLLOWING
ADDITIONAL NAMED INSUREDS:
- FH PROPERTIES II LP
- FH II GP LLC
- FH PARTNERS II LP
- FH PARTNERS II GP LLC

ADDITIONAL NAMED INSUREDS:
INDIGO HOLDINGS
GREENFIELD COMMONS LLC
VILLAGE HOMES AT SOMERSET INC
VILLAGE HOMES AT WESTWOOD GLEN INC
ARCONA WEST NEIGHBORHOOD ASSOCIATION

BOW FHI LLC

# "EXHIBIT I"

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ACUITY, A MUTUAL  INSURANCE COMPANY**<br>**2800 South Taylor Drive**<br>**Sheboygan,  WI 53081** | : <br> : <br> : <br> : | **NO. 25-1976** |
| | : | |
| **PLAINTIFF** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **PELEUS INSURANCE COMPANY**<br>**8720 Stoney Point Pky, Ste 400**<br>**Richmond, VA 23235** | : <br> : <br> : <br> : | |
| **and** | : | |
| | : | |
| **NAUTILUS INSURANCE COMPANY**<br>**7233 East Butherus Drive**<br>**Scottsdale, AZ 85260-2410** | : <br> : <br> : <br> : | |
| **DEFENDANTS** | : | **DECLARATORY JUDGMENT** |

**<u>ORDER</u>**

AND NOW, THIS _____ day of _____, 20_____, upon consideration

and judgment upon Plaintiff's Declaratory Judgment Complaint, the Court declares:

1.      Peleus Insurance Company has an obligation to defend and

indemnify the CH&N entities in the underlying Cooney personal

injury litigation;

2.      Nautilus Insurance Company has an obligation to defend and

indemnify the CH&N entities as an excess insurer in the underlying

personal injury Cooney litigation;

3.      The "other insurance" clauses contained in the Acuity CGL policy and the Acuity excess liability policy are mutually repugnant with the "other insurance" provision contained in the Peleus Insurance Company policy.

4.      Because of this mutual repugnance, Acuity Insurance and Peleus Insurance Company are co-primary insurers to the CH&N entities in the underlying Cooney litigation each responsible for 50% of defense and indemnity of the CH&N entities up to the exhaustion of their respective limits.

5.      Acuity and Nautilus Insurance Company are co-excess insurers responsible for defense and indemnification of the CH&N defendants in the underlying Cooney litigation, responsible to provide defense and indemnification at 50% each up to exhaustion of the applicable policy limits.

6.      Defendant Peleus Insurance must reimburse Acuity 50% of all prior defense expenses incurred by Acuity, currently $621,658.75 and continuing, and 50% of the $7 million dollar indemnity obligation incurred by Acuity in defending the CH&N entities in the underlying Coney litigation, up to the total Peleus policy limit of $3 million.

7.      Defendant Nautilus must reimburse Acuity for 50% of any net remainder of any  defense expenses, and the $7 million indemnity obligation incurred by Acuity not covered by the Peleus policy.