IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACUITY | : | CIVIL ACTION |
| *A MUTUAL INSURANCE COMPANY* | : | |
| | : | No. 25-1976 |
| v. | : | |
| | : | |
| PELEUS INSURANCE COMPANY, et al. | : | |
| | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                     **March 31, 2026**

This is an insurance coverage dispute among three insurers, each of which issued a policy (or policies) to nonparty Charter Homes Building Company ("Charter Homes").  Plaintiff Acuity, A Mutual Insurance Company, has provided coverage to a group of related companies (the "CH&N Entities")[1] for an underlying personal injury action under the policies it issued to Charter Homes, subject to a reservation of rights.  Acuity brings this action against Defendants Peleus Insurance Company and Nautilus Insurance Company, seeking a declaratory judgment that the policies Peleus and Nautilus issued to Charter Homes also provide coverage for the underlying action against the CH&N Entities.  Peleus has filed a motion to dismiss, arguing Acuity's Amended Complaint fails to allege facts sufficient to show the CH&N Entities are "Insureds" entitled to coverage under the Peleus policy.  Nautilus has joined in the motion, as the excess policy it issued to Charter Homes follows the Peleus policy.  Because the Court agrees the Amended Complaint fails to state a plausible claim that the CH&N Entities qualify as insureds, it will grant the motion and dismiss Acuity's Amended Complaint with prejudice.

---

[1] The CH&N Entities are CH&N Construction Inc., CH&N Site Construction, Inc., and CH&N Supply Co.

**BACKGROUND**[2]

The coverage issues in this case arise out of an underlying personal injury action filed in June 2023 against the three CH&N Entities and two other companies.  *See Cooney v. Buck Motorsports Park LLC*, Civil No. 23-2346 (E.D. Pa. filed June 22, 2023) (the "*Cooney* action").[3] Acuity provided a defense to the CH&N entities for the *Cooney* action, subject to reservation of rights, under the Commercial General Liability and Commercial Excess Liability policies it issued to Charter Homes, on which the CH&N Entities were listed as "Additional Named Insureds."  Am. Compl. ¶¶ 1 & n.1, 37; *id.* Ex. G, ECF No. 14-3 at 105-07; *id.* Ex. H, ECF No. 14-3 at 195-96.[4] Acuity also provided indemnity for the CH&N Entities' participation in the settlement of the *Cooney* action.  *Id.* ¶ 38.  As of the filing of the Amended Complaint, Acuity had incurred nearly $8 million in defense costs and indemnity.  *Id.* ¶¶ 37-39.[5]

Charter Homes has also attempted to obtain a defense and indemnification for the CH&N Entities in the *Cooney* action from Peleus and Nautilus under policies those insurers issued to Charter Homes, on which Charter Homes is the named insured.  *Id.* ¶ 26; *id.* Ex. B, ECF No. 14-3

---

[2] In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded factual allegations of complaint and may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The following factual recitation is based on the factual allegations in Acuity's Amended Complaint and the exhibits thereto.

[3] The *Cooney* action was a negligence action brought by a plaintiff who was seriously injured while attending a mega truck race event at a motor park designed and constructed by the CH&N Entities.  *See* Am. Compl. Ex. A, ECF No. 14-3.

[4] Because the Exhibits to the Amended Complaint were filed as a single document, the Court adopts the pagination supplied by the ECF system in citing to page numbers of Exhibits.

[5] According to the Amended Complaint, Acuity incurred these defense and indemnity obligations primarily on behalf of CH&N Site Construction, Inc.  *See* Am. Compl. ¶¶ 37-38.

at 25; *id.* Ex. C, ECF No. 14-3 at 62. According to the Amended Complaint, Charter Homes and the CH&N Entities are related entities. *Id.* ¶ 19. Charter Homes owns the trademark for the CH&N Entities and shares the same registered office address as those entities. *Id.* ¶¶ 20-21, 24; *id.* Ex. D, ECF No. 14-3 at 81-85; *id.* Ex. E, ECF No. 14-3 at 87-88. The Amended Complaint also alleges that Charter Homes and the CH&N Entities "share common ownership and/or control" by the same individual, Robert P. Bowman, who is identified in records maintained by the Pennsylvania Department of State as the President, Secretary, and Treasurer of Charter Homes and as the President of two of the CH&N Entities (CH&N Site Construction, Inc. and CH&N Supply Co.). *Id.* ¶ 24; *id.* Ex. E, ECF No. 14-3 at 87-88.

The Peleus and Nautilus policies are both "claims made" policies that were in effect for the period from June 21, 2023 to June 21, 2024, during which *Cooney* action was filed. *Id.* ¶¶ 8, 16. The Peleus policy is a "Real Estate Developer's PROtect$^{SM}$ Professional Liability Insurance Policy" with limits of $3 million per claim and in the aggregate. *Id.* ¶ 8; *id.* Ex. B, ECF No. 14-3 at 25. The policy provides coverage for

> all amounts in excess of the Deductible and up to the Limit of Liability that the **Insured** becomes legally obligated to pay as **Damages and Defense Costs** resulting from a **Claim** first made and reported in writing during the **Policy Period** or Extended Reporting Period, if applicable, arising out of a **Wrongful Act** committed before the end of **Policy Period** and on or after the Retroactive Date, if any, shown in the Declarations.

*Id.* Ex. B, ECF No. 14-3 at 28. The Nautilus policy is an "Excess Liability Insurance" policy that provides coverage once the Peleus policy has been exhausted, in accordance with the provisions of the Peleus policy, subject to an aggregate limit of $2 million. *Id.* ¶¶ 16-18; *id.* Ex. C, ECF No. 14-3 at 62. Because the Nautilus policy "appl[ies] in conformance with the provisions of" the Peleus policy, *id.* ¶ 18; *id.* Ex. C, ECF No. 14-3 at 78, only the terms of the Peleus policy are discussed herein.

In May 2024, Peleus denied Charter Homes' request for coverage on the ground that the CH&N Entities do not fall within the definition of an "Insured" under the Peleus policy. *Id.* ¶¶ 26-27; *id.* Ex. F, ECF No. 14-3 at 93. The Peleus policy defines the term "Insured" to include the following:

1. the **Named Insured** and any **Subsidiary**;

2. any past, present or future owner, principal, officer, director, partner, stockholder, shareholder, member, manager or employee of the **Named Insured** or any **Subsidiary** for **Real Estate Development Services** rendered on behalf of the **Named Insured** or any **Subsidiary**; [or]

   . . .

5. all joint ventures entered into, but only for liability arising out of **Real Estate Development Services** performed by any **Insured** as a participant in a joint venture project.

*Id.* Ex. B, ECF No. 14-3 at 32-33.

In denying coverage, Peleus noted it had concluded the CH&N Entities did not qualify as "Insureds" under the Peleus policy because, among other reasons, none of the CH&N Entities is a "Subsidiary" of Charter Homes, none of the CH&N Entities is a joint venture and none was performing "Real Estate Development Services" as a participant in a joint venture project with respect to the motor park, and none of the CH&N Entities was a member of Charter Homes. *Id.* Ex. F, ECF No. 14-3 at 93; *see also id.* ¶ 29. Acuity alleges these statements, as well as Peleus's denial of coverage, are incorrect. *Id.* ¶¶ 28-29.

In April 2025, Acuity filed this action, and in July 2025, after the *Cooney* action settled, Acuity filed an Amended Complaint. Acuity seeks a declaratory judgment that the Peleus and Nautilus policies provide coverage for the CH&N Entities for the *Cooney* action and that Peleus and Nautilus have an obligation to defend and indemnify the CH&N entities in that action. Acuity also seeks a declaration that the "other insurance" clauses in the Acuity policies are "mutually

4

repugnant" to the "other insurance" clauses in the Peleus and Nautilus policies such that Acuity and Peleus are "co-primary insurers" with "each responsible for 50% of defense and indemnity of the CH&N entities up to the exhaustion of their respective limits," and Acuity and Nautilus are "co-excess insurers" with each "responsible to provide defense and indemnification at 50% each up to exhaustion of the applicable policy limits." *Id.* at 26-27.  Finally, Acuity seeks a declaration that Peleus must reimburse it 50% of the defense expenses and indemnity obligation it incurred, up to the Peleus policy limit of $3 million, and Nautilus must reimburse it for 50% of any net remainder of the defense expenses and indemnity obligation incurred by Acuity and not covered by the Peleus policy. *Id.* at 27.

Peleus, joined by Nautilus, moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Acuity has failed to plead facts sufficient to show the CH&N Entities are insureds entitled to coverage under the Peleus policy.  Acuity opposes the motion.

**LEGAL STANDARD**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although this standard does not impose a "probability requirement," it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

5

In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (citations omitted). At the motion to dismiss stage, the court may consider "only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belechick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (recognizing a claim is based on a document if the document is "integral to or explicitly relied upon in the complaint" (emphasis omitted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997))).

"Under Pennsylvania law, the interpretation of a contract of insurance is a matter of law for determination by the court."[6] *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 293 (3d Cir. 2012) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). The court's "primary goal in interpreting a policy . . . is to ascertain the parties' intentions as manifested by the policy's terms." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). When policy language is clear and unambiguous, the court must "give effect to that language," construing words of common usage "according to their natural, plain, and ordinary sense." *Id.* (citations omitted). If the court finds a particular term ambiguous, "the policy provision is to be construed in favor of the insured and against the insurer, the drafter

---

[6] Peleus argues—and Acuity does not dispute—that the policies at issue in this case are governed by Pennsylvania law.

of the agreement." *Sweeney*, 689 F.3d at 293 (quoting *Standard Venetian Blind Co.*, 469 A.2d at 566).

**DISCUSSION**

Peleus argues the Amended Complaint should be dismissed because the facts alleged do not support a plausible inference that the CH&N Entities are "Insureds" under the Peleus policy. Acuity maintains the Amended Complaint sets forth a plausible claim that the CH&N Entities qualify as insureds (1) as "Subsidiaries" of Charter Home, (2) as "joint venture partners" with Charter Home in the performance of "Real Estate Development Services," and (3) based on an exception to the policy's "insured services" exclusion discussed below.[7]  Because the Court agrees the Amended Complaint fails to plausibly allege the CH&N Entities are entitled to coverage under any of these theories, the motion to dismiss will be granted.

As to the first argument, while the Peleus policy defines the term "Insured" to include "any Subsidiary" of the "Named Insured," the Amended Complaint does not plausibly allege the CH&N Entities fall within the policy's definition of "Subsidiary."  Under that definition, a "Subsidiary" includes "any entity in which more than 50% of the outstanding voting securities or voting rights representing the present right to vote for election of directors, officers, or any equivalent[ ]executives, is owned or controlled by the **Named Insured**, either directly or indirectly on or before the effective date of the policy."[8]  Am. Compl. Ex. B, ECF No. 14-3 at 35.

---

[7] Although the Amended Complaint also alleges Peleus's denial of coverage letter erroneously stated the CH&N Entities are not members of Charter Homes, Am. Compl. ¶ 29, Acuity does not contend the CH&N Entities qualify as Insureds as "member[s] . . . of the **Named Insured**" under paragraph 2 of the policy definition.  *Id.* Ex. B, ECF No. 14-3 at 32-33.

[8] Acuity does not contend the CH&N Entities qualify as "Subsidiaries" under any other part of the policy definition.

Although the Amended Complaint alleges, upon information and belief, that CH&N Entities qualify as "covered 'Subsidiaries'" of Charter Homes, *id.* ¶¶ 22-23, it does not allege Charter Homes (the Named Insured) owns or controls more than 50% of the outstanding voting securities or voting rights of any of the CH&N Entities.  Acuity instead argues the CH&N Entities' status as subsidiaries can be reasonably inferred from other allegations regarding the relationship between Charter Home and CH&N Entities—i.e., the fact that Charter Homes owns the trademark/word mark for the CH&N Entities, shares the same registered office as the CH&N Entities, and is owned and/or controlled by same individual who owns and/or controls the CH&N Entities.  *Id.* ¶¶ 20-21, 24.  Acuity reasons that fact that same individual (Bowman) controls Charter Homes and the CH&N Entities supports the reasonable inference that Bowman "could use Charter Homes to . . . control the CH&N entities."  Pl.'s Opp'n 10, ECF No. 21; *see also id.* at 8 ("If A controls B, and A controls C, then B can most assuredly control C, because A controls **both** B and C.").  Acuity cites no authority in support of this argument, which runs counter to the principle that a "sole shareholder and the corporation . . . are distinct and separate legal entities" and must be treated as such.  1 *Fletcher Cyclopedia of the Law of Corporations* § 25.10 (2025); *see also Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995) (reciting the "general rule" that "a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person").

Moreover, case law supports Peleus's position.  In *C.S. McCrossan Inc. v. Federal Insurance Company*, 932 F.3d 1142, 1145-46 (8th Cir. 2019), the Eighth Circuit Court of Appeals considered whether one company qualified as a subsidiary of another under a policy containing a definition of "Subsidiary" similar to the one in the Peleus policy.  The McCrossen policy defined "Subsidiary" as "any entity while more than fifty percent (50%) of the outstanding securities

representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**." *Id.* at 1145. The issue was whether Stewart, an entity wholly owned not by McCrossen (the Parent Organization) but by a "McCrossan individual" qualified as a subsidiary under the policy. *Id.* Rejecting Stewart's claim of subsidiary status, the court observed: "The policy's language calls for ownership and control by McCrossan. Ownership and common management by McCrossan individuals, even McCrossan board members, does not meet this test." *Id.* The same is true here. The Peleus policy requires that an entity be directly or indirectly owned or controlled by Charter Homes for the entity to qualify as a subsidiary. Ownership and control of the CH&N Entities by a Charter Homes individual—even the same individual who owns and controls Charter Homes— does not satisfy this test.

As to the remaining facts alleged regarding the relationship between Charter Home and the CH&N Entities, Acuity does not explain how the companies' shared registered home office address supports a plausible inference that Charter Homes (as opposed to Bowman) owns or controls the CH&N Entities. Nor does Charter Homes' ownership of the trademark/word mark for CH&N Site Construction imply a parent-subsidiary relationship between the parties. *See Wallack v. Idexx Labs., Inc.*, No. 11-2996, 2015 WL 5943844, at *10-11 (S.D. Cal. Oct. 13, 2015) (recognizing that ownership of a trademark used by a "related company" does not require a "formal type of relationship such as parent-subsidiary relationship or a partnership or a familial relationship"); *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:51 (5th ed. 2026) (noting the Lanham Act's "related company" provision does not require that the companies "be 'related' by some form of stock ownership, such as are parent and

subsidiary corporations"). Finally, while Acuity argues the CH&N Entities' subsidiary status is better addressed at the summary judgment stage, Acuity must plead facts supporting a reasonable inference that the CH&N Entities meet the policy's definition of "Subsidiary" to "unlock the doors of discovery" on this issue. *See Iqbal*, 556 U.S. at 678-79. Acuity has not done so here.

Acuity next argues the CH&N Entities qualify as insureds under the joint venture portion of the policy definition, which provides that the term "Insured" includes "all joint ventures entered into, but only for liability arising out of **Real Estate Development Services** performed by any **Insured** as a participant in a joint venture project." Am. Compl. Ex. B, ECF No. 14-3 at 33. The policy does not define the term "joint venture." The term "Real Estate Development Services" is defined, in relevant part, as:

> the following services performed by or on behalf of any **Insured** in the course of improvement of real property, whether alone or as part of a partnership, joint venture, syndication, or other arrangement:
>
> 1. the construction of buildings or other structures on such real property, including: conceptual land planning; requesting and securing zoning changes; performing environmental studies; construction of horizontal infrastructure such as roads and utilities; property tear-down or re-development; creating capital expenditure projections; performing financial management and reporting; obtaining necessary capital, including giving market condition projections, promotion and advertising; determining surface and subsurface conditions; determining cultural and historic conditions; projecting LEED ratings; preparation, transmittal, and awarding of design and construction bid packages; management, coordination, and supervision of design and construction; and identification and obtaining of applicable permits, variances, consents, easements, and other rights;
>
>   . . . .

*Id.*, ECF No. 14-3 at 54 (endorsement amending definition).

Acuity argues the Amended Complaint plausibly alleges the CH&N entities are insureds by virtue of their status as "joint venture partners of Charter Homes" in "real estate development services." Pl.'s Opp'n 11. This Court disagrees. As Peleus notes, the Amended Complaint says

nothing about a joint venture between Charter Homes and the CH&N Entities. While the Amended Complaint provides considerable detail about the allegations against the CH&N Entities in the *Cooney* action—including their involvement in the allegedly negligent design and construction of the barrier system at the motor park where the underlying plaintiff was injured, *see* Am. Compl. ¶ 36—it includes no allegations linking Charter Homes in any way to the work done by the CH&N Entities. Acuity argues the CH&N Entities' status as joint venture partners of Charter Homes can be inferred from Bowman's "common ownership and control of all the entities." Pl.'s Opp'n at 11. Acuity provides no support for this contention, and has failed to plead any facts suggesting the existence of a joint venture between the parties under Pennsylvania law.[9]

In addition, even assuming the work performed by the CH&N Entities at the motor park falls within the policy's definition of "Real Estate Development Services," a joint venture is an insured under the policy "only for liability arising out of **Real Estate Development Services** *performed by any* **Insured** as a participant in a joint venture project." Am. Compl. Ex. B, ECF

---

[9] Acuity suggests that because the policy does not define "joint venture," the term is ambiguous and should be construed in favor of the insured. "A policy term is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense." *Nautilus Ins. Co. v. Gardner*, No. 04-1858, 2005 WL 664358, at *4 (E.D. Pa. Mar. 21, 2005). A term is not ambiguous merely because the policy does not define it. *Id.* On the contrary, "[e]ven if a term is not defined in an insurance policy, [the] term is not ambiguous where it possesses a clear legal or common meaning that may be supplied by the court." *Id.* Under Pennsylvania law, a "joint venture arises by express or implied contract and is established by factors including (1) contribution by the parties to the joint venture, (2) profit sharing between the parties, (3) 'joint proprietary interest and right of mutual control over the subject matter of the enterprise' and (4) 'a single business transaction rather than a general and continuous transaction.'" *Mull v. Gotham Distrib. Corp.*, No. 24-6083, 2025 WL 2712215, at *4 (E.D. Pa. Sept. 22, 2025) (quoting *McRoberts v. Phelps*, 138 A.2d 439, 443-44 (Pa. 1958)). While these factors "are not strictly applied," *id.*, the Amended Complaint does not address any of them. Moreover, even if the term "joint venture" were ambiguous, Acuity offers no reasonable interpretation of the term under which the existence of a joint venture could be plausibly inferred from the facts alleged in Amended Complaint.

No. 14-3 at 33 (italics added).  The Amended Complaint does not allege Charter Homes performed any work at the motor park.  For these reasons, the Amended Complaint does not state a plausible claim that the CH&N Entities are insureds under the joint venture provision of the policy definition.

Finally, Acuity argues the Amended Complaint plausibly alleges the CH&N Entities are insureds based on an exception to the following policy exclusion:

SECTION IV – EXCLUSIONS

This policy does not apply to any **Claim**:

. . .

C.  arising out of any **Insured's** services provided on behalf of or capacity as an officer, director, partner, owner, member, manager or employee of any corporation, partnership, association or any other business enterprise or[ ]charitable organization of any kind or nature other than:

1.  the **Named Insured**;

2.  any entity other than the **Named Insured**:

a.  that is managed, or controlled by any **Insured**;

b.  in which any **Insured**, individually or collectively, has an ownership interest in excess of 49%; or

c.  which wholly or partly owns, operates or manages the **Named Insured**.

*Id.* Ex. B, ECF No. 14-3 at 36-37.

Acuity argues that under the exception to this exclusion, "the policy ***does*** apply to any claim arising out of the services of the named insured, as well as . . . any entity other than the named insured which is 1.) managed or controlled by any insured; or 2.) in which any insured, individually or collectively, has an ownership interest in excess of 49%." Pl.'s Opp'n 13.  Again, the Court disagrees.  First, as Peleus notes, "exceptions to policy exclusions cannot create or

expand insurance coverage." *Unitrin Direct Ins. Co. v. Esposito*, 751 F. App'x 213, 215 (3d Cir. 2018); *see also Rock Ridge Ins. Co. v. Krukowski*, No. 24-3861, 2026 WL 777421, at *6 (E.D. Pa. Mar. 19, 2026) (explaining that exceptions to exclusions "operate only to limit the applicability of the specific exclusion to which they apply: they do not operate to create coverage where it otherwise does not exist"). Thus, the exclusion cannot confer insured status on an entity that does not otherwise qualify as an "Insured" under the policy. Moreover, the Amended Complaint does not plead facts supporting a plausible claim that the exception to the so-called "insured services" exclusion applies in any event. According to the exception, the policy applies to "any **Claim** . . . arising out of any **Insured's** services provided on behalf of . . . any corporation, partnership, association, or any other business enterprise or[ ]charitable organization" that is an entity "managed or controlled by any **Insured**" or "in which any insured, individually, has an ownership interest in excess of 49%." *See* Am. Compl. Ex. B, ECF No. 14-3 at 36-37. Yet the Amended Complaint does not plausibly allege the "Claim" in this case (i.e., the underlying *Cooney* action) arose out of services provided by Charter Homes or that Charter Homes (as opposed to Bowman) managed and controlled CH&N Entities or had a more than 49% ownership interest in the CH&N entities.

Because the Amended Complaint fails to state a plausible claim that the CH&N Entities qualify as insureds under any of the theories advanced by Acuity, the motion to dismiss will be granted. *See Smallwood v. Ace Prop. & Cas. Ins. Co.*, No. 23-67, 2024 WL 1742240, at *4 (E.D. Va. Apr. 23, 2024) (granting motion to dismiss insurance coverage declaratory judgment action where facts alleged did not support plaintiff's claim to insured status under the policy).

Acuity argues any dismissal of the Amended Complaint should be without prejudice, noting the "common practice" in this district is to grant leave to amend when entering a Rule

12(b)(6) dismissal.  Pl.'s Opp'n 15.  "[T]he pleading philosophy of the [Federal Rules of Civil Procedure] counsels in favor of liberally permitting amendments to a complaint." *In re Allergan ERISA Litig.*, 975 F.3d 348, 356 n.13 (3d Cir. 2020) (quoting *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013)); *see also* Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely give[n] . . . when justice so requires").  But leave to amend need not be granted when amendment would be futile.  *In re Viatris Inc. Sec. Litig.*, No. 24-2977, 2025 WL 3224941, at *4 (3d Cir. Nov. 6, 2025).  Although Acuity requests leave to amend, it has not produced a draft amendment so as to permit the Court to determine whether amendment would be futile.  More importantly, Acuity has offered "no hint as to how [it] would further amend [its] complaint" to establish the CH&N Entities' status as insureds; instead it only defends the sufficiency of the existing factual and evidentiary support it has provided.  *See In re Allergan*, 975 F.3d at 357.  Because Acuity has not provided any explanation as to how it would amend its complaint to state a plausible claim, leave to amend will be denied.[10]  *See City of Warren Police & Fire Ret. Sys. v.*

_____

[10] Notably, in support of its motion to dismiss, Peleus has produced emails from Charter Homes's Chief Financial Officer confirming that "NONE of the three defendant entities, CH&N Construction, Inc., CH&N Site Construction, Inc. or CH&N Supply Co. are subsidiaries of Charter Homes Building Company."  Def.'s Ex. 7, ECF No. 19-9; *see also* Def.'s Ex. 4, ECF No. 19-6 (asserting, in response to the question whether each of the CH&N Entities is a subsidiary of Charter Homes: "Neither is a subsidiary of CHBC").  The emails are part of the correspondence between Peleus and Charter Homes leading up to the formal denial of coverage Peleus issued on May 8, 2024.  Acuity's claims in this case are based on the May 8, 2024 declination of coverage letter, which is both referenced in and attached to the Amended Complaint, and the Court may therefore consider that letter at the motion to dismiss stage.  Peleus argues the Court may also consider Charter Homes's emails and the rest of the coverage correspondence because the declination of coverage letter incorporates Peleus's prior letters to Charter Homes and states the denial of coverage is based on information provided by Charter Homes in those communications, making them integral to the complaint.  Acuity does not respond to Peleus's argument on this point.

Because the Court finds the Amended Complaint fails to state a plausible claim that the CH&N Entities qualify as insureds independent of the additional coverage correspondence produced by Peleus, the Court need not definitively resolve this issue.  The Court notes, however, that at a minimum, the Charter Homes emails support the denial of leave to amend on futility grounds.

*Prudential Fin., Inc.*, 70 F.4th 668, 683 (3d Cir. 2023) (leave to amend properly denied where plaintiff "did not propose any additional facts" that would cure pleading deficiency); *In re Allergan*, 975 F.3d at 358 (affirming the denial of leave to amend where plaintiffs "not only failed to include a draft complaint with their request for leave" but also "failed to say anything at all about how they intended to amend their pleading"); *accord In re Viatris*, 2025 WL 3224941, at *4.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.